**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NOVARTIS VACCINES & DIAGNOSTICS, INC.,<br><br>*Plaintiff*,<br><br>*v.*<br><br>MEDIMMUNE, LLC,<br>BIOGEN IDEC, INC., AND<br>ALEXION PHARMACEUTICALS, INC.,<br><br>*Defendants*. | C.A. No. 11-CV-84 (SLR) |

# NOVARTIS VACCINES & DIAGNOSTICS'S MEMORANDUM OF LAW IN OPPOSITION TO ALEXION'S MOTION TO DISMISS FOR IMPROPER JOINDER

MORRIS JAMES LLP
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
Kenneth L. Dorsney (#3726)
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 654-1888
rherrmann@morrisjames.com

*Attorneys for Plaintiff,*
*Novartis Vaccines & Diagnostics, Inc.*

Of Counsel:

Evan R. Chesler (*pro hac vice*)
David Greenwald (*pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

## Table of Contents

Preliminary Statement....................1

Statement of Facts....................3

A. The Claimed Inventions....................3

B. Use of Lonza's Expression Vectors in the Production of Biologic Drugs....................4

C. Defendants' Acts of Infringement. ....................4

Argument....................5

I. Each Defendant Is Properly Joined....................6

A. Novartis's Claims of Infringement Are Logically Related....................6

B. Novartis's Claims Against All Three Defendants Share Many Common Questions of Law and Fact. ....................8

C. Alexion Is Not Prejudiced by Joinder....................9

II. Even if Alexion Were Not Properly Joined as a Defendant, Dismissal Would Not Be the Appropriate Remedy....................10

A. If Joinder of Alexion Were Improper, the Appropriate Remedy Would Be Claim Severance Under Rule 21 and Consolidation Under Rule 42....................11

B. The Court May Appropriately Defer Decision on Separate Trials....................12

Conclusion....................13

## Table of Authorities

**Page(s)**

**Cases**

*A. C. Aukerman Co. v. R. L. Chaides Constr. Co.*,
960 F.2d 1020 (Fed. Cir. 1992)........................................................................ 11

*B & R Plastics, Inc. v. Kikkerland Design, Inc.*,
No. 08-CV-02646, 2009 WL 3698528 (D. Colo. Nov. 2, 2009)..........................................6-7

*Baker v. Barnard Constr. Co.*,
860 F. Supp. 779 (D.N.M. 1994)........................................................................ 12

*DirecTV, Inc. v. Leto*,
467 F.3d 842 (3d Cir. 2006)........................................................................ 11

*eSpeed, Inc. v. Brokertec USA, L.L.C.*,
No. 03-CV-612, 2004 U.S. Dist LEXIS 13486 (D. Del June 15, 2004).......................... 2, 5, 8

*Mosley v. General Motors Corp.*,
497 F.2d 1330 (8th Cir. 1974)........................................................................2, 5-6

*Mymail, Ltd. V. Am. Online, Inc.*,
223 F.R.D. 455 (E.D. Tex. 2004)........................................................................ 6

*New Jersey Mach., Inc. v. Alford Indus., Inc.*,
No. 89-CV-1879, 1991 WL 340196 (D.N.J. Oct. 7, 1991)........................................ 6

*Oracle Corp. v. epicRealm Licensing, LP*,
No. 06-CV-414, 2007 WL 901543 (D. Del. Mar. 26, 2007)........................................ 12

*Paine, Webber, Jackson & Curtis, Inc.*,
564 F. Supp. 1358 (D. Del. 1983)........................................................................ 7

*Philips Elecs. N. Am. Corp. v. Contec Corp.*,
220 F.R.D. 415 (D. Del 2004)........................................................................ 7

*Sprint Commc'ns. Co., L.P. v. Theglobe.com*,
233 F.R.D. 615 (D. Kan. 2006)........................................................................ 8, 12

*In re TMI Litigation*,
193 F.3d 613 (3d Cir. 1999)........................................................................ 12

*U.S. Steel Corp. v. United States*,
730 F.2d 1465 (Fed. Cir. 1984)........................................................................ 10

*United Mine Workers v. Gibbs*,
383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)........................................ 5

*United States v. Dentsply Int'l, Inc.*,
190 F.R.D. 140 (D. Del. 1999) ........................................ 12

**Rules**

Fed. R. Civ. P. 20 ........................................ 1-2, 5-6

Fed. R. Civ. P. 21 ........................................ 2, 10, 11

Fed. R. Civ. P. 42 ........................................ 2, 11-12

Plaintiff Novartis Vaccines & Diagnostics, Inc., ("Novartis") respectfully submits this memorandum of law in opposition to Defendant Alexion's Motion to Dismiss for Improper Joinder.[1]

**Preliminary Statement**

This case concerns Defendants' infringement of U.S. Patent No. 5,688,688 (the "'688 Patent"), which is directed to the use of "expression vectors" derived from genetic material of the human cytomegalovirus and "expression systems" incorporating such vectors. Each Defendant infringes the '688 Patent by using or causing to be used in the manufacturing of its respective biologic drugs[2] an expression system marketed by non-party Lonza as the GS Gene Expression System™ (the "Lonza System"). Because the expression vectors associated with the Lonza System include each of the four basic elements of the vectors claimed in the '688 Patent, each Defendants' use of the Lonza System to manufacture its respective drug infringes claims of the '688 Patent. Novartis believes discovery in this case will show that the expression vectors used by each Defendant are, in all relevant respects, identical, which is why Novartis has named all three Defendants in the same complaint.

Defendant Alexion moves to be dismissed from this action, or to have the claim against it severed, on the ground that Defendants' acts of infringement are not sufficiently related to meet the requirements for permissive joinder under Federal Rule of Civil Procedure 20. In short, Alexion contends joinder is improper because the only connection that exists among the

[1] Alexion's opening brief in support of its motion to dismiss is referred to herein as "Alexion Br."; documents cited to herein are attached to the Declaration of Joseph E. Lasher ("Lasher Decl."), dated July 25, 2011.

[2] Alexion makes or causes to be made the biologic drug Soliris® (eculizumab); Defendant MedImmune, LLC ("MedImmune") makes or causes to be made the biologic drug Synagis® (palivizumab); and Defendant Biogen IDEC, Inc. ("Biogen") makes or causes to be made the biologic drug Tysabri® (natalizumab).

three Defendants is that they are accused of infringing the same patent. This argument, which is the central premise of Alexion's motion, is simply incorrect.[3] Contrary to Alexion's assertion that the Defendants' infringing activities are "based upon three different methods of manufacture of three different drug products," each Defendant is alleged to infringe the '688 Patent in essentially the same way: by using virtually identical expression vectors obtained from the same supplier, Lonza. *See* D.I. 27 at ¶¶ 16, 21, 26.

Such a connection is more than sufficient to satisfy the liberal standard of Rule 20, which requires only that a "logical relationship" exist among defendants' activities giving rise to the claims. *See eSpeed, Inc. v. Brokertec USA, L.L.C.*, No. 03-CV-612, 2004 U.S. Dist LEXIS 13486, at *11-12 (D. Del June 15, 2004) (quoting *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)). This case is one in which all three Defendants use the same infringing vector, manufactured by the same company, to produce their respective products. Assessment of the infringement/validity of the patent-in-suit will turn exclusively upon the internal structure (*i.e.*, nucleotide sequence) of that vector, and not upon the differences among Defendants' respective products. Separate proceedings along separate discovery tracks would be inferior to the coordination naturally achieved through the present joinder.

Even if Alexion were improperly joined, dismissal of Alexion as a party to this action would not be an appropriate remedy, as it would waste judicial time and resources and could cause significant prejudice to Novartis. Rather, if the Court finds that joinder of Alexion is improper, the Court should sever the claim against Alexion under Rule 21, then exercise its

[3] Alexion also contends that joinder is improper because Novartis's original complaint failed to allege any connection among Defendants' acts of infringement. *See* D.I. 21 Alexion Br. 5-6. This argument is moot, however, as Novartis's First Amended Complaint, filed July 22, 2011, clearly identifies the common thread—use of the same infringing expression system, obtained from the same supplier—among Defendants' infringing activities. *See* D.I. 27 ¶¶ 16, 21, 26.

discretion under Rule 42 to consolidate Novartis's claims against all three Defendants. In light of both the similarities that exist among each Defendant's infringement and the Defendants' assertions of nearly identical affirmative defenses and counterclaims, the many common issues of law and fact will vastly outnumber the separate, particularly during the initial liability phase. Thus, not only would consolidation of the cases be proper, it would greatly promote judicial economy.

## Statement of Facts

### A. The Claimed Inventions

The '688 Patent discloses and claims, among other things, gene expression systems for the expression of proteins ("polypeptides") in mammalian cells. Critical to the development of the claimed inventions was the discovery that expression vectors containing a particular genetic regulatory sequence found within the human cytomegalovirus perform significantly better—*i.e.*, result in higher levels of protein expression—than expression vectors lacking that regulatory sequence. Using that discovery, the inventors conceived of the particular combination of genetic elements that comprise the expression vectors and host cell expression systems incorporating such vectors that are the subjects of the issued claims. Claim 1, reproduced below, is illustrative:

> 1. A non-human mammalian host cell expression system for improved expression comprising a non-human mammalian host cell with a vector for expression of a polypeptide in a mammalian cell comprising a first polynucleotide sequence that comprises:
> (a) an upstream SV40 origin of replication;
> (b) a downstream SV40 polyadenylation region;
> (c) a transcription regulatory region from human cytomegalovirus immediate early region HCMV IE1, wherein the transcription regulatory region includes the first HCMV IE1 intron proximal to the 3' end of the HCMV IE1 promoter, is interposed between the SV40 origin of replication and the SV40 polyadenylation region, and is capable of directing the

    > transcription of a polypeptide coding sequence operably linked downstream from the transcription regulatory region; and
> (d) the polypeptide coding sequence encoding a heterologous polypeptide operably linked downstream of the transcription regulatory region.

**B. Use of Lonza's Expression Vectors in the Production of Biologic Drugs**

Expression vectors are critical to the production of biologic protein drugs, such as those manufactured by Defendants. In simple terms, an expression vector is an instrument of biotechnology, comprised of DNA, that is used in conjunction with a living cell to cause the cell to make copies of a particular protein (the "protein of interest") that is encoded by a portion of the vector. When a vector is incorporated into a such a "host cell," the cell essentially becomes a factory for producing the protein of interest.

Non-party Lonza manufactures and sells a commercial gene expression system—the GS Gene Expression System (the "Lonza Expression System")—that makes use of the same technology claimed in the '688 Patent. A typical expression vector used in the Lonza Expression System includes each of the four primary elements of the claimed inventions: (a) an upstream SV40 origin of replication; (b) a downstream SV40 polyadenylation region; (c) a transcriptional regulatory region from the HCMV immediate early region IE1, inclusive of the promoter, enhancer and first intron; and (d) a polypeptide coding sequence encoding a heterologous polypeptide. Accordingly, use of the expression vectors associated with the Lonza Expression System, or use of Lonza's Expression System into which such vectors are incorporated, infringes one or more claims of the '688 Patent.

**C. Defendants' Acts of Infringement.**

As alleged in Novartis's amended complaint, the Lonza Expression System is used in the manufacture of each of the Defendants' drugs. *See* D.I. 27 at ¶¶ 16, 21, 26; *see also* Lasher Decl. Ex. A at 2 ("The GS Gene Expression System has proven its commercial viability

and is currently being used to make 7 licensed products . . . [including] Synagis [and] Soliris.”); Ex. B at 34 (“The biggest driver for royalty income for the proprietary GS Expression System is Biogen/Elan’s arthritis therapy Tysabri, which is based on the GS System.”). In other words, each Defendant uses or causes another entity to use the same infringing Lonza System, as well as the infringing vectors associated with that system, to manufacture its respective drug. It is expected that the only significant difference among the expression vectors used by Defendants will be the sequence of one element—*i.e.*, the DNA sequence that codes for the protein that comprises each Defendant’s drug. That difference will be irrelevant to the question of infringement, however, because the claims require only that the encoded protein be derived from a source other than the human cytomegalovirus (“HCMV”) genome. Defendants’ drugs, which are all humanized antibodies derived from mice, satisfy that limitation.

**Argument**

The Federal Rules of Civil Procedure strongly encourage joinder of claims, parties, and remedies. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Under Rule 20, parties may be joined as defendants if (i) “any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences” and (ii) “any question of law or fact common to all defendants will arise in the action.” Fed. R. Civ. P. 20(a)(2). Rule 20 has been interpreted liberally “to permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding.” *eSpeed, Inc. v. Brokertec USA, L.L.C.*, No. 03-CV-612, 2004 U.S. Dist LEXIS 13486, at *11-12 (D. Del June 15, 2004) (quoting *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)). In particular, the term “transaction or occurrence” is construed generously to promote judicial economy and to allow logically related claims to be tried within a single proceeding. *See Mosley*, 497 F.2d 1333 (“’Transaction’ is a

word of flexible meaning . . . [that] may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."). Thus, to determine whether claims arise from the same series of transactions or occurrences, courts ask only whether the claims are "logically related." *See B & R Plastics, Inc. v. Kikkerland Design, Inc.*, No. 08-CV-02646, 2009 WL 3698528, at *3 (D. Colo. Nov. 2, 2009).

**I. Each Defendant Is Properly Joined.**

**A. Novartis's Claims of Infringement Are Logically Related.**

Each Defendant infringes the '688 Patent in essentially the same way: by using virtually identical expression vectors obtained from the same supplier, Lonza. Accordingly, Novartis will likely introduce the same or similar evidence—relating to the infringing Lonza System—against each Defendant. Such a connection is more than sufficient to satisfy the liberal standard of Rule 20, which requires only that a "logical relationship" exist among the defendants' activities giving rise to the claims. *See B & R Plastics*, 2009 WL 3698528, at *3 (finding joinder of unrelated defendants appropriate where each accused infringer sold the same infringing products and each obtained materials from the same importer). Indeed, where several defendants are accused of infringing the same patent, joinder is proper so long as there is any connection or substantial similarity among the machines alleged to infringe the patents in suit. *See Mymail, Ltd. V. Am. Online, Inc.*, 223 F.R.D. 455, 457 (E.D. Tex. 2004) (more significant than whether the defendants are related is whether there exists "any connection or substantial similarity between the machines" alleged to infringe the patent-in-suit); *New Jersey Mach., Inc. v. Alford Indus., Inc.*, No. 89-CV-1879, 1991 WL 340196, at *2 (D.N.J. Oct. 7, 1991) (granting motion to sever where defendants showed that the accused machines were "different and distinct from each other").

Alexion contends that Defendants' acts of infringement fail to satisfy the "common transaction or occurrence" requirement because the only connection that exists among Defendants is their alleged infringement of the same patent. *See* D.I. 21 Alexion Br. 3-5. This argument fails, however, because it disregards the significant connection that flows from Defendants' use of the same infringing Lonza System. Similarly, Alexion's assertion that its "product bears no relationship to those of the other two defendants" is irrelevant to whether joinder is proper. *See* D.I. 21 Alexion Br. at 2. It is not the Defendants' products that are alleged to infringe the '688 Patent; rather, it is the (virtually identical) expression system each Defendant uses to manufacture its respective drug that gives rise to liability. *See* D.I. 27 at ¶¶ 16, 21, 26. Thus, there is a substantial connection among Defendants' infringement because each Defendant uses the same infringing expression system, obtained from the same supplier. *See* *B & R Plastics*, 2009 WL 3698528, at *3.

In support of its motion, Alexion relies upon two District of Delaware decisions that state that a mere allegation that unrelated defendants have infringed the same patent is not sufficient, without more, to satisfy the common transaction or occurrence test. *See* D.I. 21 Alexion Br. 3-4 (citing *Paine, Webber, Jackson & Curtis, Inc.*, 564 F. Supp. 1358, 1371 (D. Del. 1983), and *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 418 (D. Del 2004)). Those cases are inapposite, however, because, unlike Defendants in this case, the defendants in neither *Paine* nor *Philips* had anything in common other than their alleged infringement of the same patent. *See Paine*, 564 F. Supp. at 1371 (dismissing an accused infringer's third party complaint where there was "no allegation that the acts of infringement [were] connected in any manner"); *Philips*, 220 F.R.D. at 418 (granting motion to sever where defendants sold different infringing machines, manufactured by two different companies, and the only connection between

defendants was "that they may have infringed the same patents"). Here, by contrast, Defendants are alleged to have infringed the same patent through use of the same expression system made by the same company.

**B. Novartis's Claims Against All Three Defendants Share Many Common Questions of Law and Fact.**

Because each Defendant uses (or causes to be used) the same Lonza System in the manufacture of its drug, the factual and legal issues related to each Defendants' acts of infringement are expected to overlap significantly. *See eSpeed, Inc. v. Brokertec USA, L.L.C.*, 2004 U.S. Dist LEXIS 13486, *10. In particular, because the Lonza expression vectors used by Defendants are expected to be, in all relevant respects, identical, there will exist many questions of fact related to infringement common to Novartis's claims against each Defendant. The same claim construction issues are likely to arise with respect to the claims Novartis asserts against each Defendant. Many common issues of fact and law will arise also because each Defendant asserts largely the same affirmative defenses and counterclaims in response to Novartis's allegations of infringement. *See* D.I. 19 Alexion Ans. at 5-9; D.I. 17 Biogen Ans. at 5-8; D.I. 14 MedImmune Ans. at 5-8. In light of this significant overlap, it is highly likely that each Defendant will assert similar theories of invalidity or unenforceability. In addition, Defendants will likely propound highly redundant discovery requests to Novartis unless the claims proceed according to a single schedule, with a scheduling order that imposes reasonable limitations on redundant requests.

Failure to coordinate the cases for discovery—whether through permissive joinder or, as discussed in Section II, *infra*, through consolidation under Rule 42—would require Novartis's fact and expert witnesses to sit for multiple depositions, even though each Defendant will naturally wish to pursue many similar lines of questioning. *See Sprint Comm'ns. Co., L.P.*

*v. Theglobe.com*, 233 F.R.D. 615, 617 (D. Kan. 2006) (where multiple defendants accused of patent infringement assert similar defenses, joinder is proper, in part, because "witnesses should not be deposed more than once on identical issues"). Because this invention relates to work performed during the 1980s, all of the inventors and nearly all of those involved in prosecution of the patent no longer work for Novartis, so what would ordinarily be a risk of multiplicative discovery of party witnesses is in reality a risk of multiplicative discovery of third parties. And that risk is likely to be exacerbated by the additional third party discovery, including foreign discovery (*e.g.*, Lonza), that both sides may seek. Under these circumstances, allowing Alexion's case to proceed on a separate track would operate to the considerable detriment of these many individuals and entities with no current tie to any party.

Similarly, failure to coordinate Defendants' discovery requests would require Novartis to answer similar, but not identical, requests from Alexion alone according to a schedule not in synch with that required for its responses to the other two Defendants' requests. Production of the same documents in two different cases, though it perhaps does not present quite so stark a set of inefficiencies, nonetheless is inferior to a regime under which all Defendants receive the same productions from Novartis at the same time, using the same document numbering system. And the duplicative expenditure of judicial and attorney time associated with having separate conferences, scheduling orders, and Markman proceedings is a cost that should be avoided unless there is a good reason to incur it, one of the primary inefficiencies the rule permitting joinder seeks to avoid.

### C. Alexion Is Not Prejudiced by Joinder.

There is no practical reason to disturb the existing joinder of Defendants (which only one of the three joined Defendants seeks to disturb). Alexion's arguments that it will suffer undue prejudice from joinder (or consolidation), *see* D.I. 21 Alexion Br. at 7, are not persuasive.

Alexion's purported concern that it may be required to disclose sensitive business and research information and strategies in the course of discovery to the other Defendants can be remedied by entry of an appropriate confidentiality order, *see U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed. Cir. 1984), permitting the parties to protect highly sensitive materials with designations that restrict access to attorneys. *Id.* Because neither MedImmune's nor Biogen's defenses to liability should turn upon evidence from Alexion, Novartis anticipates that MedImmune's and Biogen's counsel will not have any occasion or need to share Alexion's confidential documents with their clients.

Alexion's concerns that the jury will be confused by the issues of microbiology and biotechnology that this case presents are similarly overstated. Because each Defendant uses the same infringing Lonza System to make its respective drug, the "complicated scientific issues" that the jury must decide to resolve Novartis's claims of infringement against each Defendant will be almost entirely identical. *See* D.I. 21 Alexion Br. at 7. Accordingly, neither Alexion nor the other Defendants will suffer prejudice from trying Novartis's claims together. Indeed, this is a reason to have a single liability trial, not a separate one, as it will allow for the more efficient presentation of the relevant scientific background principles to a single jury.

## II. Even if Alexion Were Not Properly Joined as a Defendant, Dismissal Would Not Be the Appropriate Remedy.

Even if Alexion were not properly joined, dismissal of Alexion from this action would be inappropriate because it could result in significant prejudice to Novartis.

While a court has discretion to remedy misjoinder by either dismissing a party from the case or severing the claims against that party into a separate action, the discretion to dismiss a party is not unfettered—it may be exercised only "on just terms." Fed. R. Civ. P. 21. It is an abuse of discretion to dismiss a defendant from a case where doing so would prejudice a

substantial right of the plaintiff's. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (holding the district court abused its discretion by remedying misjoinder by dismissing a defendant from the case where the plaintiff was barred by statute of limitations from filing a second complaint).

Significantly, when a court dismisses a defendant under Rule 21, that defendant is dismissed from the complaint without prejudice and the initial complaint, as against that defendant, is treated "as if it never existed." *Id.* As a result, the clock for time-based defenses is not tolled by the filing of the initial complaint. *Id.* Dismissing a defendant from an action in which time-based defenses are asserted would therefore amount to an abuse of discretion because it would prejudice a substantial right of the plaintiff's. *Id.* Here, each Defendant asserts the affirmative defense of laches to Novartis's claims of infringement. *See* D.I. 19 Alexion Ans.¶ 35; D.I. 14 MedImmune Ans. ¶ 25; D.I. 17 Biogen Ans. ¶ 31. Because laches is a time-based defense, it is possible that dismissing Alexion and requiring Novartis to file a new complaint could affect Novartis's ability to recover damages to which it would otherwise be entitled. *See A. C. Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (discussing laches). It makes no sense to require Novartis to file a second complaint against Alexion when this Court has discretion under Rule 21 simply to sever the claim against Alexion for separate trial. Indeed, Alexion fails to advance a single argument for why dismissal, rather than severance, is the appropriate remedy.

**A. If Joinder of Alexion Were Improper, the Appropriate Remedy Would Be Claim Severance Under Rule 21 and Consolidation Under Rule 42.**

If the Court were to sever the claim against Alexion, it should nonetheless, at the same time, exercise its discretion under Rule 42(a) to consolidate the severed claim against Alexion so as to avoid the considerable duplication of effort that would result from preparing and

trying the cases separately. *See Baker v. Barnard Constr. Co.*, 860 F. Supp. 779, 780 (D.N.M. 1994) (noting that even if the defendant had been misjoined, the court would have exercised its discretion and consolidated the cases against each defendant); *In re TMI Litigation*, 193 F.3d 613, 724 (3d Cir. 1999). Pursuant to Rule 42, a court has broad discretion to consolidate actions involving a common question of law or fact. *See, e.g., Oracle Corp. v. epicRealm Licensing, LP*, No. 06-CV-414, 2007 WL 901543, *5 (D. Del. Mar. 26, 2007). While the decision to consolidate cases is discretionary, courts typically determine whether consolidation is appropriate by balancing considerations of efficiency, expenses and fairness. *See United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 142-43 (D. Del. 1999). Those considerations clearly militate here in favor of consolidation.[4]

**B. The Court May Appropriately Defer Decision on Separate Trials.**

Indeed, because the only practical effect of an (unnecessary) severance, followed by immediate consolidation, would be to leave open the possibility of separate trials, the more expedient course, as a simple matter of case management, may be for the Court to defer ruling on Alexion's motion and assess the need/desirability of a separate trial for Alexion later. *See Sprint Comm'ns. Co., L.P. v. Theglobe.com, Inc.*, 233 F.R.D. at 618 (denying motion to sever made prior to close of discovery as premature, noting that it would be appropriate to revisit the issue at the final pretrial conference). It goes without saying that deferring resolution of Alexion's motion until after the close of discovery will allow the Court to assess the commonality of facts and legal issues with a much more developed record, putting the Court in a better position to assess whether to try the claim against Alexion together with the claims against Biogen and

[4] Notably, Defendant Biogen IDEC, Inc. agrees that, in the event the Court grants Alexion's motion to sever, it would be appropriate to consolidate the cases for pretrial discovery and claim construction purposes. *See* D.I. 26.

MedImmune. Because the only source of prejudice Alexion identifies as flowing from coordinated fact and expert discovery—access of other defendants to sensitive business information—may be, and generally is, addressed through a standard confidentiality order, there would not appear to be any disadvantage to such a mode of proceeding.

**Conclusion**

For the foregoing reasons, Alexion's motion for dismiss for improper joinder should be denied.

*/s/ Richard K. Herrmann*
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
rherrmann@morrisjames.com

*Attorneys for Plaintiff, Novartis Vaccines & Diagnostics, Inc.*

Of Counsel:

Evan R. Chesler
David Greenwald
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: July 25, 2011