**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

Mary W. Bourke
Partner

TEL (302) 888-6305
FAX (302) 252-4208
EMAIL mbourke@cblh.com
REPLY TO Wilmington Office

WILMINGTON, DE

The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

November 17, 2011

**VIA CM/ECF and HAND DELIVERY**
Honorable Mary Pat Thynge
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

> Redacted Version of DI 79-
> Filed UNDER SEAL

Re:  *Novartis Vaccines & Diagnostics, Inc. v. MedImmune, LLC, et al.,*
C.A. No. 11-084-SLR (D. Del.)

Dear Magistrate Judge Thynge:

On behalf of Defendants MedImmune, LLC ("MedImmune"), Biogen Idec Inc. ("Biogen Idec"), and Alexion Pharmaceuticals, Inc. ("Alexion"), we move to compel discovery from Plaintiff Novartis Vaccines and Diagnostics, Inc. ("Novartis") on three topics: (1) discovery relevant to Defendants' affirmative defense of laches; (2) discovery relating to communications regarding Lonza; and (3) foreign counterparts of the patent-in-suit.

1. **Novartis Should Be Compelled to Provide Discovery Relevant to Laches**

Novartis and/or its identified predecessor-in-interest Chiron Corporation ("Chiron") knew or reasonably should have known of: (1) MedImmune's manufacture of the accused Synagis® product at least as of that product's commercial sale in 1998; (2) Biogen Idec's commercial manufacture of the accused Tysabri® product at least as of 2004; and (3) Alexion's commercial manufacture of the accused Soliris® product at least as of 2006. Yet Novartis did not file a lawsuit against the Defendants until 2011. In light of Novartis' delay in bringing suit, the Defendants have asserted affirmative defenses of unenforceability due to laches.

Novartis has refused to provide discovery on this defense, objecting to it "as premature because it seeks information, relevant, if at all, only to the issue of damages (laches), which has been bifurcated for purposes of discovery and trial." (*See* Ex. 1, Novartis Objections to Joint RFP Nos. 91, 98-103, 128-130, Ex. 2, MedImmune RFP Nos. 10, 12, 16, 19-20, 24-26 and Ex. 3, REDACTED

The Scheduling Order limited bifurcation to willfulness and damages. (D.I. 36 at 1 as ordered on August 4th). Laches is an equitable defense distinct from damages and has not been bifurcated here. Laches would preclude enforcing the patent-in-suit to recover from the Defendants for acts that occurred prior to suit, if the Defendants establish that Novartis or Chiron

Honorable Mary Pat Thynge
November 17, 2011
Page 2

unreasonably delayed filing suit and that delay prejudiced the Defendants. *A.C. Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992); *see also Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1273 (Fed. Cir. 1999) (precluding future relief for products sold prior to filing suit). Laches thus is an equitable partial defense to infringement under 35 U.S.C. § 282, not a mere limitation on damages. *Avocent Redmond Corp. v. United States*, 93 Fed. Cl. 399, 403 (Fed. Cl. 2010); *A.C. Aukerman*, 960 F.2d at 1028-29.

This Court's Scheduling Order makes explicit that discovery in the first phase of this case "will be needed" on liability, including both the enforceability of the patent-in-suit and "defendants' affirmative defenses." The Court's order allowing discovery on Defendants' affirmative defenses in the first phase of this case requires Novartis to provide discovery on the affirmative defense of laches.

This is consistent with the purpose of bifurcation: to avoid costly discovery on issues that may become narrowed or irrelevant after the resolution of liability. *See e.g., Bosch LLC v. Pylon Mfg. Corp.*, No. 08-542, 2009 WL 2742750, at *1 (D. Del. Aug. 26, 2009) (Robinson, J.). Bifurcation of Defendants' affirmative defense of laches would have been illogical and would have undermined judicial economy. Laches is a liability issue concerning the conduct of the patentee, not a calculation of monetary damages. Before damages discovery even begins, it is logical first to establish liability (otherwise a determination of damages is unnecessary), and second, to determine the specific time period over which any such damages should be calculated. As a result, this matter is more likely to be resolved—through either settlement or a court determination—prior to expending time and money on a trial concerning damages.

Issues relevant to laches in this case center around Novartis' activities in asserting its patent, such as when and how Novartis learned of the alleged infringement, and why Novartis waited years before bringing suit. The discovery Defendants seek to compel clearly is relevant. For example, Defendants request documents and information concerning Novartis' or Chiron's first awareness of alleged infringement by the Defendants (Ex. 1, RFP Nos. 98-103 and [REDACTED] and documents concerning Novartis' decision to bring suit against the Defendants and its delay in serving the Complaint after this action was filed (Ex. 1, RFP Nos. 128-130). These issues also relate to the liability issues of infringement and validity, and Defendants should be permitted to take the full range of discovery needed to defend themselves. For these reasons, Defendants respectfully request that the Court compel Novartis to provide discovery to the Defendants on their affirmative defenses of laches in response to Joint RFP Nos. 91, 98-103 and 128-130 (Ex. 1), MedImmune RFP Nos. 10, 12, 16, 19-20 and 24-26 (Ex. 2), and [REDACTED].

## 2. Novartis Should Be Compelled to Produce Documents Relating To Lonza

Novartis is improperly refusing to produce certain communications with and concerning non-party Lonza even though Novartis' complaint and third-party discovery requests allege that Lonza is relevant to this case.

Honorable Mary Pat Thynge
November 17, 2011
Page 3

In its Amended Complaint, Novartis alleged that the "[u]se of the expression vectors associated with Lonza GS Expression System™, or use of an expression system into which such vectors are incorporated, infringes one or more claims of the '688 Patent." (D.I. 27 at ¶ 15). Novartis also alleged that each of the Defendants' accused products "is manufactured in the United States using the Lonza GS Expression System™." (D.I. 27 at ¶¶ 16, 21, 26). On August 18, 2011, Novartis notified Defendants that it had served subpoenas on Lonza Inc. and Lonza Biologics Inc. (D.I. 49). On October 3, 2011, Novartis filed a request to take discovery from Lonza plc under the Hague Convention. (D.I. 63).

Despite Novartis' allegations regarding, and discovery requests to, Lonza, Novartis refuses to provide full disclosure of its communications regarding Lonza. In RFP Nos. 111 and 112, Defendants asked Novartis to produce documents concerning communications to or from Novartis or Chiron regarding Lonza, Celltech (a Lonza predecessor), any Lonza vector, or the GS System. Novartis objected to these requests as overbroad and refused to produce responsive documents. The parties discussed Novartis' refusal during a meet and confer teleconference and, in subsequent correspondence, Novartis informed Defendants that it would only produce responsive documents relating to communications between Chiron/Novartis and Lonza/Celltech relating to the GS Expression System or the '688 patent and would not produce documents related to post-2009 settlement discussions with Lonza. (Ex. 4).

Novartis' attempt to restrict discovery to communications between Chiron/Novartis and Lonza/Celltech is inappropriate. Defendants' document requests ask for documents concerning communications between Chiron/Novartis and any other entity—not just Celltech/Lonza—regarding specified topics: Lonza, Celltech, any Lonza vector, and the Lonza GS System. As established above, Novartis itself placed Lonza and the GS Expression System at issue in this litigation and cannot now withhold discovery regarding those topics. If Chiron/Novartis discussed Lonza or the GS Expression System with an entity other than Celltech/Lonza, those discussions could be highly relevant to Novartis' allegations. Novartis' overbreadth objection is unfounded as the requests are focused on communications concerning particular topics.

As for the post-2009 communications with Lonza, contrary to Novartis' contention, discovery regarding such communications is "appropriate" and Novartis' characterization of its post-2009 discussions with Lonza as "settlement discussions" does not permit Novartis to withhold such discovery. In the course of these discussions, Novartis may very well have addressed the scope of the claims of the patent-in-suit, the validity and alleged infringement of the claims, and Novartis' delay in filing suit. Furthermore, Lonza's refusal to license the patent-in-suit may evidence the industry's lack of acquiescence in the patent, a factor that is relevant to obviousness. *See Stratoflex, Inc. v. Aeroquip.*, 713 F.2d 1530, 1539 (Fed. Cir. 1983); *see also In re Mahurkar*, 831 F. Supp. 1354, 1378-79 (N.D. Ill. 1993). In short, these discussions could lead to the discovery of relevant evidence on a variety of topics and are an appropriate area of inquiry.

Federal Rule of Evidence 408 does not preclude discovery or use of settlement discussions, but only limits their admissibility for purposes of liability, or determining an amount of a claim. Indeed, a number of district courts have found that settlement-related documents must be produced upon showing that the documents are relevant and likely to lead to the

Honorable Mary Pat Thynge
November 17, 2011
Page 4

discovery of admissible evidence. *See Wyeth v. Orgenus Pharma Inc.*, No. 09-3235, 2010 WL 4117157, at *4 (D.N.J. Oct. 19, 2010) (compelling production of settlement agreements); *Key Pharm., Inc. v. ESI-Lederle, Inc.*, No. 96-1219, 1997 WL 560131, at *3 (E.D. Pa. Aug. 29, 1997) ("[D]efendant has met its burden of showing that the settlement agreement . . . is relevant and likely to lead to the discovery of admissible evidence. Federal Rule of Evidence 408 'is not an absolute ban on the admissibility of evidence that falls within its scope.'" (citations omitted)); *see also Valiante v. VCA Animal Hosps., Inc.*, No. 09-cv-2115, 2011 WL 219672, at *2 (D. Conn. Jan. 20, 2011) ("While Rule 408 of the Federal Rules of Evidence limits the introduction at trial of evidence regarding settlement negotiations, it only applies to the admissibility of evidence at trial, not to discovery.").

Similarly, the allegations that responsive documents are subject to a nondisclosure agreement does not relieve Novartis of the obligation to produce them pursuant to proper discovery requests. *See, e.g., Wyeth*, 2010 WL 4117157, at *4 (compelling production of license and settlement agreements despite third party confidentiality concerns).

### 3. Novartis Should Be Compelled to Produce Documents Relating to Foreign Counterparts to the Patents-in-Suit

In Requests for Production Nos. 17, 64, and 72 Defendants requested documents concerning the foreign counterpart applications to the '688 patent and to particular patent applications in the family of the '688 patent. Novartis objected to each of these requests as irrelevant, to No. 17 as "unduly broad," and to No. 72 as "unduly burdensome." (Ex. 1). In an effort to compromise, Defendants requested that Novartis produce documents relating to foreign counterpart applications that contain claims or disclosures that relate to the '688 patent claims and/or invention, or provide a representation regarding the content of such applications to justify Novartis' claim that they are irrelevant. (Ex. 5).

The disclosures in foreign counterpart applications and statements made by Novartis about those disclosures may lead to admissible evidence regarding claim construction, non-infringement, and invalidity. *See, e.g., Inventio AG v. Thyssenkrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375, 385 (D. Del. 2009) (stating that "foreign patent application files meet the threshold of relevancy required under Rule 26" and granting motion to compel); *Tanabe Seiyaku Co. v. U.S. Int'l Trade Comm'n*, 109 F.3d 726, 733 (Fed. Cir. 1997) (representations to foreign patent offices relevant to infringement). As to Novartis' claim of burden, it is far less burdensome for Novartis to identify these documents—some of which may not be publicly available and presumably are in Novartis' or its attorneys' files—than for the Defendants to locate them.

Respectfully Submitted,

/s/ Mary W. Bourke

Mary W. Bourke

Honorable Mary Pat Thynge
November 17, 2011
Page 5

Enclosures

cc:  Evan R. Chesler (via e-mail with enclosures)
     David Greenwald (via e-mail with enclosures)
     Teena-Ann V. Sankoorikal (via e-mail with enclosures)
     Richard K. Herrmann (via e-mail with enclosures)
     Mary B. Matterer (via e-mail with enclosures)
     Kenneth L. Dorsney (via e-mail with enclosures)
     Gerald J. Flattmann, Jr. (via e-mail with enclosures)
     Christine Willgoos (via e-mail with enclosures)
     Brian E. Farnan (via e-mail with enclosures)
     Donald R. Ware (via e-mail with enclosures)
     Jeremy A. Younkin (via e-mail with enclosures)
     Collins J. Seitz, Jr. (via e-mail with enclosures)
     Alyssa D. Kappler (via e-mail with enclosures)
     Anthony Michael (via e-mail with enclosures)
     Petra Scamborova (via e-mail with enclosures)
     Sarah S. Burg (via e-mail with enclosures)
     Daniel M. Attaway (via e-mail with enclosures)
     Charles E. Lipsey (via e-mail with enclosures)
     Linda Wadler (via e-mail with enclosures)
     Kakoli Caprihan (via e-mail with enclosures)
     Marcus Kretzschmar (via e-mail with enclosures)
     Elliot Olstein (via e-mail with enclosures)

4550357