# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NOVARTIS VACCINES & DIAGNOSTICS, INC.,

                   *Plaintiff*,

        *v.*

MEDIMMUNE, LLC,
BIOGEN IDEC, INC., AND
ALEXION PHARMACEUTICALS, INC.,

                   *Defendants*.

C.A. No. 11-CV-84 (SLR)

REDACTED PUBLIC VERSION

**Letter to The Honorable Mary Pat Thynge from Richard Herrmann
Regarding Motion to Compel**

Dated: November 17, 2011
Redacted version filed:  December 5, 2011

Richard K. Herrmann (#405)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
rherrmann@morrisjames.com
*Attorneys for Plaintiff,*
*Novartis Vaccines & Diagnostics, Inc.*



Richard K. Herrmann
302.888.6816
rherrmann@morrisjames.com

November 17, 2011

**VIA E-FILING AND HAND DELIVERY**
The Honorable Mary Pat Thynge                    REDACTED PUBLIC VERSION
USDC for the District of Delaware
844 North King Street
Wilmington, DE  19801

RE:   ***Novartis Vaccines & Diagnostics, Inc. v. MedImmune, LLC, et al.***
      **D.Del., C.A. No. 11-84-SLR**

Your Honor:

Plaintiff, Novartis Vaccines & Diagnostics (NVD) respectfully submits this letter in support of its motion to compel Defendants' responses to three interrogatories (5, 7, and 2), and certain requests for production of documents and things ("RFPs") served August 19, 2011. Defendants served objections on September 26.  A one-hour meet-and-confer was conducted on October 26.

This case concerns Defendants' infringement of U.S. Patent No. 5,688,688 (the "'688 Patent"), which is directed to the use of genetic material (*i.e.*, DNA, which is comprised of sequences of nucleotides (*e.g.*, "ATTCGA. . . ")), derived from the human cytomegalovirus ("HCMV") to direct the production of a desired protein.  When these specific sequences are taken up by and/or incorporated within the genetic material of a mammalian cell, the cell becomes essentially a factory for producing that protein.  Cells modified in this way ("host cells") are used in the production of pharmaceutical proteins, such as the drugs (Soliris, Synagis, and Tysabri) manufactured by Defendants.

**Nucleotide Sequence Information**

At the outset of case, NVD served 10 interrogatories and Defendants served 9.  Of those, Plaintiff declined to answer only one (because it sought information related to damages discovery, which has been bifurcated).  By contrast, Alexion declined to answer 7, MedImmune declined to answer 8, and Biogen declined to answer 9.  (After the October 26 meet-and-confer, each Defendant answered a few more, but the majority still remain unanswered.)

**NVD Interrogatory No. 5:**  Because analysis of infringement of each of the 24 claims of the '688 patent turns upon comparison of the nucleotide sequences of a transcriptional regulatory region described in the patent with sequences present in the cells ("host cells") Defendants are using to manufacture their respective drugs, both parties served interrogatories requesting certain nucleotide sequence information.

Defendants asked for "the nucleotide sequence" of three vectors identified in the claims of the '688 Patent," Plaintiffs answered that Interrogatory on September, supplying the full sequences of two, and identifying scientific articles disclosing the complete sequence of the

Morris James LLP

third.  (*See* Exhibit 1).

NVD asked, in Interrogatory No. 5, for "the nucleotide sequence of the Expression Vector [ ] used to manufacture" each Defendant's accused drug.  As set forth at greater length in NVD's prior, recent submissions in this action, "Expression Vectors" (which the discovery requests defined) is simply the DNA that Defendants put into the host cells to get the host cells to produce the accused drugs.  Interrogatory No. 5 asked simply for the sequence of that DNA.

No Defendant has answered Interrogatory No. 5.  (*See* Exhibit 2).

Both sides consider sequence information to be a proper subject for interrogatories: both sides served interrogatories seeking it.  And there can be no question that the data requested in Interrogatory No. 5 is central to the assessment of infringement.  If the nucleotide sequences of the expression vectors incorporated into the host cells Defendants use to produce their drugs are identical or reasonably similar to the nucleotide sequences claimed in the patent, then Defendants' use of these sequences infringes the '688 Patent.  If they do not, the use does not infringe.  Thus, sequence analysis is the central issue in the current liability phase.

Defendants possess this sequence information, and have never contended otherwise.  Among other things, the FDA requires "detailed information regarding the *vector* and genetic elements should be provided, *including a description of the source and function of the component parts of the vector, e.g. origins of replication, antibiotic resistance genes, promoters, enhancers.*"  FDA, *Guidance for Industry for the Submission of Chemistry, Manufacturing, and Controls Information for a Therapeutic Recombinant DNA-Derived Product or a Monoclonal Antibody Product for In Vivo Use* (1996).  And even if there were not this regulatory requirement or if it could be satisfied through provision of information other than sequence, it is, frankly, inconceivable that Defendants would market a drug without exquisitely detailed knowledge of the genetic machinery they are using to produce that drug.

Nor is there meaningful burden associated with compiling this information.  We are confident that Defendants and their counsel have had access to and analyzed this this information since the case was first filed, for there is no other way a Defendant could assess its own potential liability under the claims of the patent-in-suit or responsibly respond to/verify interrogatory contentions.  Indeed, it was precisely to perform their own sequence comparisons that Defendants propounded their own interrogatory for vector sequence information (which NVD answered immediately). There would be no other reason for them to request it.

During the meet-and-confer, certain defendants undertook to produce excerpts of their Biologics License Application ("BLA") (the application to the FDA to market a protein drug) containing the vector description the FDA requires.  But this assurance, which did not come with any commitment as to timing of production, is not enough to put NVD on an equal, fair footing with Defendants, or to guarantee that NVD will receive the sequence information it needs.  Although we believe it is likely that the BLA will contain the relevant information, we are not certain of that, nor are we certain it will be present in a format amenable to the analysis NVD's experts will need to undertake.  But even assuming that the information in the BLA is sufficient, it is simply unfair to require NVD to wait for months before receiving relevant excerpts containing complete sequence information from the BLA, not verified by any

MorrisJames LLP

The Honorable Mary Pat Thynge
November 17, 2011
Page 3

Defendant, while Defendants and their experts have been able since September, by virtue of NVD's no-nonsense approach to responding to Defendants' interrogatories, to analyze the infringement issues presented by the Complaint and the very detailed answers to infringement contention interrogatories that NVD served.

**Documents/Sample Containing Relevant Nucleotide Sequences (RFPs 1, 2, 8, 24, 25, 32):**  As a supplement to and check upon the information requested in Interrogatory No. 5, NVD also requested documents believed to contain the same sequence information sought through that interrogatory.  For example, Document Request No. 2 sought the nucleotide sequence of the expression vector whose sequence was sought in Interrogatory No. 5, and Document Request No. 1 sought schematic diagrams of that same vector.  Although each defendant objected somewhat differently, none clearly committed to produce the requested sequence information.  Biogen objected altogether.  Alexion responded merely that it would produce "documents sufficient to demonstrate the commercial manufacturing process" of its drug, whatever that means.  And MedImmune undertook to produce "portions of its IND and BLA concerning the *genetic materials used to create the cell line*" used to manufacture its drug, which might include the requested information.  Or it might not.  Biogen is even more vague.  In a letter after the October 26 meet-and-confer, it undertook to produce "portions of the Tysabri BLA regarding the *cell line* used to produce Tysabri," which does not necessarily include any genetic information at all.

As a critical backup, NVD also has requested a "sequenceable sample of the Expression Vector" used to manufacture each of Defendants' drugs.  By this, NVD simply requests a sample of either the DNA present within the host cells being used by each Defendant to manufacture its drug or a sample of the host cells themselves, from which DNA (including that of the incorporated Expression Vectors) can be extracted and sequenced.  Although NVD does not wish to incur the expense and difficulty of sequencing the DNA itself, and will not need to do so if a complete, truthful answer to Interrogatory No. 5 is provided immediately, Defendants' refusal to provide that answer leaves it no choice but to insist upon this belt-and-suspenders work-around.

<u>**Transfection Dates/Locations (Interrogatory No. 7)**</u>

Two of the claims of the patent-in-suit are method claims that are infringed by, among other things, "introducing the vector into a host cell."  *See, e.g.*, Claims 16, 24.  There is no question that Defendants or their agents "introduced a vector into a host cell" to create the cell lines they now use.  (There is no other way the DNA encoding their respective drugs could have gotten into the cell, thereby enabling the cell to produce Defendants' respective drugs.)  To assess, however, whether that act of introduction (which molecular biologists call "transfection") occurred within the United States within the six years before this suit was filed, NVD asked Defendants to state the dates and locations of the transfection of the cell line that is being used to produce the accused drugs.  Biogen has refused to answer this interrogatory altogether.  MedImmune stated that the "cell line used to manufacture Synagis was created at least as early as    REDACTED    " but would not state (i) where; (ii) whether that creation included the necessary transfection step; and (iii) whether subsequent transfections occurred and, if so, where and when.  Alexion has undertaken to produce documents containing responsive information, but it is far from clear that the burden to NVD of extracting the

The Honorable Mary Pat Thynge
November 17, 2011
Page 4

requested information from those Alexion documents (whatever they are), which are likely to be very complex, is "substantially the same" as the burden to Alexion.  FRCP 33(d).  This information is plainly relevant to assessment of infringement of Claims 16 and 24, and its provision in response to Interrogatory No. 7 should be compelled (*see* Exhibit 3).

**Licenses with Lonza (Alexion only)**

As set forth in NVD's highly detailed response to Defendants' infringement contention interrogatories (*see* Exhibit 4), NVD has strong reason to believe that all three Defendants infringe by using the Lonza GS Expression System to manufacture their respective products.  To confirm that belief, NVD requested in RFP No. 4 "supply agreements and licensing agreements concerning Lonza or Lonza Intellectual property." REDACTED                                    Alexion has stated only that it will produce documents "sufficient to show the commercial manufacturing process of Soliris" (*see* Exhibit 5). NVD seeks an order compelling Alexion to produce its licenses and supply agreements with Lonza.

**Disclosure of Persons With Relevant Knowledge (Interrogatory No. 1)/Initial Disclosures**

In their initial Rule 26 disclosures, NVD identified 16 individuals or entities, not including any persons presently or formerly employed by Defendants.

In their initial Rule 26 disclosures, Defendants identified between 25 and 32 individuals and entities.  But of those many individuals disclosed, Biogen disclosed only *one* present or former employee, MedImmune disclosed only *one former* employee, and Alexion disclosed only *three*.  Over 90% of the persons Defendants disclosed were persons affiliated with and already known to NVD.  Even though the Defendants' accused products are among their best-selling products (and, in the case of Alexion, its only product), no defendant can identify more than 3 people it employs who know about the genetic material used to produce it.  And according to MedImmune, no present MedImmune employee knows anything on that subject.

To address modestly this gross discovery imbalance, NVD served as its first Interrogatory the request for the names of two individuals "most knowledgeable about the structure, sequence, and derivation of the Expression Vector used to manufacture Your Accused Drug."  MedImmune declined to answer this Interrogatory fully, identifying only the same, single former employee it had identified in its Rule 26 disclosures (*see* Exhibit 6).   NVD seeks an order compelling MedImmune to respond to this Interrogatory No. 1.  NVD seeks also an order compelling all Defendants to supplement their Rule 26 disclosures appropriately.

Respectfully,

*/s/ Richard K. Herrmann*

Richard K. Herrmann - I.D. No. 405
*rherrmann@morrisjames.com*

cc:     All defense counsel of record

# Exhibit 1

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# Exhibit 2

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# Exhibit 3

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# Exhibit 4

## Specific Objections

NVD, through its attorneys, and for its Response to Defendants' Second Joint Interrogatories (Nos. 8-9), states as follows:

### REQUEST NO. 8:

Separately for each Defendant, identify every claim of the '688 patent that Novartis contends is infringed by that Defendant's accused product and/or its manufacture, and describe in detail, on a claim-by-claim and claim element-by-claim element basis, the factual and legal bases for all of Novartis' allegations of infringement of any such claim of the '688 patent. This detailed description should include, without limitation, a claim chart showing the presence or absence of each claim element of each asserted claim of the' 688 patent in each accused product or its manufacture, and an identification of any document, information, or tangible item that supports, refutes, or otherwise concerns Novartis' contentions, and the three individuals most knowledgeable about such factual and legal bases.

### Response to Request No. 8:

NVD objects that this Interrogatory comprises not fewer than 6 distinct interrogatories.

NVD objects to this interrogatory because it requests NVD's contentions and is therefore premature.  In addition, this interrogatory requires construction of the patent claims, and the court has not yet construed the claims.  NVD will supplement its answer to this interrogatory after Defendants and third parties have responded fully to the discovery requests served upon them, which has not yet occurred.

NVD provides the following analysis to the extent some facts are currently available.

Based on information and belief, all three defendants use the Lonza GS

Expression System to express the drugs accused of infringement in this action, namely Synagis,

Tysabri and Soliris.[1]

| No. | Claim Text | Support for Infringement |
|-----|-----------|--------------------------|
| 1 | A non-human mammalian host cell expression system for improved expression | Synagis, Tysabri and Soliris are all expressed in non-human mammalian host cells.<br><br>**Synagis**<br>"Palivizumab is produced by recombinant DNA technology in a mammalian cell (NSO)[2] suspension culture." (December 16, 2009 Synagis Product Monograph at 19).<br><br>**Tysabri**<br>"TYSABRI (natalizumab) is a recombinant humanized IgG4κ monoclonal antibody produced in murine myeloma cells." (Tysabri prescribing information at 16, paragraph 11 "DESCRIPTION").<br><br>**Soliris**<br>"Soliris is a formulation of eculizumab which is a recombinant humanized monoclonal IgG$_{2/4}$κ antibody produced by murine myeloma cell culture and purified by standard bioprocess technology." (Soliris prescribing information at 3, paragraph 11 "DESCRIPTION"). |
| | comprising a non-human mammalian host cell with a vector for expression of a polypeptide in a mammalian cell | The non-human mammalian host cells are combined with the Lonza GS expression vector for Synagis, Tysabri and Soliris. |

---

[1]     *See* the article entitled "The GS Gene Expression System™ - the Cornerstone of Lonza's Mammalian Cell Culture Business" at 2, attached as Ex. A to the July 25, 2011 Declaration of Joseph E. Lasher filed in this action ("The GS Gene Expression System has proven its commercial viability and is currently being used to make 7 licensed products . . . [including] Synagis [and] Soliris"), and excerpts from a UBS Investment Research Report on Lonza Group AG, dated August 21, 2009 at 34, attached as Ex. B to the same Lasher Declaration ("The biggest driver for royalty income for the proprietary GS Expression System is Biogen/Elan's arthritis therapy Tysabri, which is based on the GS System").

[2]     See Ex. A of Lasher Declaration at 2, stating "Alongside the GS expression vectors the system also includes host cell lines suitable for use in manufacturing processes: NS0 (murine derived) and CHO (hamster derived)."

| No. | Claim Text | Support for Infringement |
|---|---|---|
| | comprising a first polynucleotide sequence that comprises: a) an upstream SV40 origin of replication; | *See* Fig. 1 of S. Kalwy, J. Rance, and R. Young *Molec. Biotechnol.* 34: 151-56 (2006), showing the SV40 origin of replication contained within the SV40E promoter of the vector. |
| | b) a downstream SV40 polyadenylation region; | *See* Fig. 1 of S. Kalwy, J. Rance, and R. Young *Molec. Biotechnol.* 34: 151-56 (2006), showing the SV40 polyadenylation region contained within the vector. |
| | c) a transcription regulatory region from human cytomegalovirus immediate early region HCMV IEI, | *See* Fig. 1 of S. Kalwy, J. Rance, and R. Young *Molec. Biotechnol.* 34: 151-56 (2006), showing the human cytomegalovirus major immediate early (hCMV-MIE) promoter contained within the vector. |
| | wherein the transcription regulatory region includes the first HCMV IEI intron proximal to the 3' end of the HCMV IEI promoter, | *See* S. Kalwy, J. Rance, and R. Young *Molec. Biotechnol.* 34: 151-56 (2006) at 152, stating that gene expression is "driven by the human cytomegalovirus major immediate early (hCMV-MIE) promoter, which includes the first intron of the hCMV-MIE gene." |
| | is interposed between the SV40 origin of replication and the SV40 polyadenylation region, and | *See* Fig. 1 of S. Kalwy, J. Rance, and R. Young *Molec. Biotechnol.* 34: 151-56 (2006), showing the hCMV-MIE promoter interposed between the SV40 origin of replication and the SV40 polyadenylation region. |
| | is capable of directing the transcription of a polypeptide coding sequence operably linked downstream from the transcription regulatory region, and | *See* S. Kalwy, et al., *Cell Technology for Cell Products*, R. Smith (ed.), 19–28 (2007) at 20, stating "Lonza's GS-expression vectors utilise a strong promoter, the human CMV-MIE promoter (hCMV) to drive [transcription of] the gene(s) of interest...." |
| | d) the polypeptide coding sequence encoding a heterologous polypeptide operably linked downstream of the transcription regulatory region. | Synagis, Tysabri and Soliris are heterologous polypeptides in that the polypeptide coding sequences are not derived from CMV or SV40 sequences. |
| 2 | The non-human mammalian host cell expression system of claim 1, wherein the polynucleotide sequence further comprises a linker that comprises a restriction site for insertion of the coding region of a polypeptide. | NVD requires further discovery to determine whether the coding regions for Synagis, Tysabri and Soliris were cloned into a restriction site in a linker. |
| 3 | The non-human mammalian host cell expression system of claim 2, wherein the restriction site is a Sall site. | NVD requires further discovery to determine whether the coding regions for Synagis, Tysabri and Soliris were cloned into a Sal1 restriction site. |

4

| No. | Claim Text | Support for Infringement |
|---|---|---|
| 4 | A vector for expression of a polypeptide in a mammalian cell | *See* Claim 1. |
| | comprising a first polynucleotide sequence that comprises: a) an upstream SV40 origin of replication; | |
| | b) a downstream SV40 polyadenylation region; and | |
| | c) a transcription regulatory region from human cytomegalovirus immediate early region HCMV IEI, | |
| | wherein the transcription regulatory region includes the first HCMV IEI intron proximal to the 3' end of the HCMV IEI promoter, | |
| | is interposed between the SV40 origin of replication and the SV40 polyadenylation region, and | |
| | is capable of directing the transcription of a polypeptide coding sequence operably linked downstream from the transcription regulatory region, | |
| | wherein the SV40 polyadenylation region comprises the SV40 polyadenylation sequence present in plasmid pSV7d. | NVD requires further discovery to determine whether the SV40 polyadenylation region in the vector used to express Synagis, Tysabri and Soliris is comprised of the SV40 polyadenylation sequence present in plasmid pSV7d. |
| 5 | A vector for expression of a polypeptide in a mammalian cell | *See* Claim 1. |
| | comprising a first polynucleotide sequence that comprises: a) an upstream SV40 origin of replication; | |
| | b) a downstream SV40 polyadenylation region: and | |
| | c) a transcription regulatory region from human cytomegalovirus immediate early region HCMV IEI, | |
| | wherein the transcription regulatory region includes the first HCMV IEI intron proximal to the 3' end of the HCMV IEI promoter, | |
| | is interposed between the SV40 origin of replication and the SV40 polyadenylation region, and | |

| No. | Claim Text | Support for Infringement |
|---|---|---|
| | is capable of directing the transcription of a polypeptide coding sequence operably linked downstream from the transcription regulatory region, | |
| | wherein the SV40 origin of replication comprises the SV40 origin of replication sequence present in plasmid pSVT2. | NVD requires further discovery to determine whether the SV40 origin of replication in the vector used to express Synagis, Tysabri and Soliris is comprised of the SV40 origin of replication sequence present in plasmid pSVT2. |
| 6 | The non-human mammalian host cell expression system of claim 1, further comprising a selectable marker. | Synagis, Tysabri and Soliris each use a vector that contains a glutamine synthetase ("GS") selectable marker. *See* S. Kalwy, et al., *Cell Technology for Cell Products*, R. Smith (ed.), 19–28 (2007) at 20, stating "expression of the GS selectable marker is driven by a weaker promoter." |
| 7 | The non-human mammalian host cell expression system of claim 5, wherein the selectable marker is a polynucleotide sequence that encodes ampicillin resistance. | NVD requires further discovery to determine whether the vector used to express Synagis, Tysabri and Soliris contains a selectable marker that encodes ampicillin resistance. |
| 8 | The non-human mammalian host cell expression system of claim 1, further comprising a bacterial origin of replication. | NVD requires further discovery to determine whether the vector used to express Synagis, Tysabri and Soliris contains a bacterial origin of replication. |
| 9 | A vector for expression of a polypeptide in a mammalian cell | *See* Claim 1. |
| | comprising a first polynucleotide sequence that comprises: a) an upstream SV40 origin of replication; | |
| | b) a downstream SV40 polyadenylation region; and | |
| | c) a transcription regulatory region from human cytomegalovirus immediate early region HCMV IE1, | |
| | wherein the transcription regulatory region includes the first HCMV IEI intron proximal to the 3′ end of the HCMV IEI promoter, | |
| | is interposed between the SV40 origin of replication and the SV40 polyadenylation region, and | |

6

| No. | Claim Text | Support for Infringement |
|---|---|---|
| | is capable of directing the transcription of a polypeptide coding sequence operably linked downstream from the transcription regulatory region, | |
| | wherein the polynucleotide sequence comprises the HCMV sequences present in plasmid pCMV6ARV120tpa, ATCC Accession No. 68249. | NVD requires further discovery to determine whether the transcription regulatory region polynucleotide sequence of the vector used to express Synagis, Tysabri and Soliris comprises the HCMV sequences present in plasmid pCMV6ARV120tpa, ATCC Accession No. 68249. |
| 10 | The non-human mammalian host cell expression system of claim 2, further comprising a coding region that encodes a polypeptide, inserted at the restriction site. | NVD requires further discovery to determine whether the coding regions for Synagis, Tysabri and Soliris were cloned into a restriction site in a linker. |
| 11 | The non-human mammalian host cell expression system of claim 10, further comprising a region encoding a signal sequence effective in directing the secretion of the polypeptide encoded by the coding region, positioned upstream from the coding region. | NVD requires further discovery to determine whether the non-human mammalian host cell expression system used to express Synagis, Tysabri and Soliris further comprises a region encoding a signal sequence effective in directing the secretion of the polypeptide encoded by the coding region, positioned upstream from the coding region. |
| 12 | The non-human mammalian host cell expression system of claim 11, wherein the signal sequence is derived from the human tissue plasminogen leader sequence. | NVD requires further discovery to determine whether the non-human mammalian host cell expression system used to express Synagis, Tysabri and Soliris further comprises a region encoding a signal sequence derived from the human tissue plasminogen leader sequence. |
| 13 | A vector produced by the process comprising linking together in an operative manner: | *See* Claim 1. |
| | a) a SV40 origin of replication; | |
| | b) a SV40 polyadenylation region; | |
| | c) a transcription regulatory region from human cytomegalovirus immediate early region HCMV IE1, | |
| | wherein said regulatory region includes the first HCMV IE1 intron proximal to the 3' end of the HCMV IE1 promoter and | |

7

| No. | Claim Text | Support for Infringement |
|---|---|---|
| | is capable of directing the transcription of a mammalian polypeptide or a mammalian virus polypeptide coding sequence operably linked downstream therefrom; and | |
| | d) the polypeptide coding sequence encoding a mammalian polypeptide or a heterologous mammalian virus polypeptide operably linked downstream of the transcription regulatory region. | |
| 14 | The vector of claim 13, wherein the vector is arranged in the same manner as plasmid pCMV6a. | *See* Fig. 1 of S. Kalwy, J. Rance, and R. Young *Molec. Biotechnol.* 34: 151-56 (2006), showing the pcB72.3 vector arranged in the same manner as plasmid pCMV6a. |
| 15 | A method for producing a non-human mammalian cell comprising a vector for expression of a heterologous polypeptide in a mammalian cell comprising: | *See* Claim 1. |
| | a) providing a first polynucleotide molecule that comprises a SV40 origin of replication; | |
| | b) providing a second polynucleotide molecule that comprises a SV40 polyadenylation region; | |
| | c) providing a third polynucleotide region from human cytomegalovirus immediate early region HCMV IE1, | |
| | wherein said regulatory region includes the first HCMV IE1 intron proximal to the 3′ end of the IE1 promoter; and | |
| | d) linking the SV40 origin of replication, the SV40 polyadenylation region and the regulatory region from HCMV IE1 together to form a vector that is capable of effecting the transcription of a polynucleotide coding sequence operably linked downstream from the regulatory region; | |
| | e) operatively linking a heterologous polypeptide coding sequence downstream from the regulatory region; and | |

| No. | Claim Text | Support for Infringement |
|---|---|---|
| | f) introducing the vector into a non-human mammalian cell. | |
| 16 | A method for producing the vector of claim 1, comprising introducing the vector into a host cell and allowing the host cell to generate a plurality of said vectors. | NVD requires further discovery to determine whether the vector used to express Synagis, Tysabri and Soliris is produced by introducing the vector into a host cell and allowing the host cell to generate a plurality of said vectors. |
| 17 | An isolated nucleic acid molecule comprising an enhanced promoter, wherein the enhanced promoter comprises the human cytomegalovirus immediate early region HCMV IE1 promoter and the first intron proximate to the 3′ end of the HCMV IE1 promoter and | *See* Claim 1. |
| | wherein the enhanced promoter is operably linked to a nucleic acid sequence encoding a mammalian polypeptide or a heterologous mammalian virus polypeptide. | |
| 18 | The nucleic acid molecule of claim 17, wherein the promoter region is derived from a subclone of human cytomegalovirus (Towne strain). | NVD requires further discovery to determine whether the promoter region of the vector used to express Synagis, Tysabri and Soliris is derived from a subclone of human cytomegalovirus (Towne strain). |
| 19 | A vector for expression of a polypeptide in a mammalian cell, comprising the nucleic acid molecule of claim 17, wherein the nucleic acid molecule is capable of directing the transcription of a polypeptide coding sequence operably linked downstream of the nucleic acid molecule. | *See* Claims 1 and 17. |
| 20 | The vector of claim 19, further comprising an origin of replication operably linked upstream of the nucleic acid molecule. | *See* Claims 1 and 17. |
| 21 | The vector of claim 19, further comprising a polyadenylation region operably linked downstream of the nucleic acid molecule. | *See* Claims 1 and 17. |
| 22 | A vector for expression of a polypeptide in a mammalian cell, comprising:<br>a) an upstream origin of replication; | *See* Claims 1 and 17. |

| No. | Claim Text | Support for Infringement |
|---|---|---|
| | b) a downstream polyadenylation region; and | |
| | c) the nucleic acid molecule of claim 17 interposed between the origin of replication and the polyadenylation region, | |
| | wherein the enhanced promoter region is capable of directing the transcription of a polypeptide coding sequence operably linked downstream from the promoter region. | |
| 23 | A method for constructing the vector of claim 19, comprising operatively linking together the nucleic acid molecule and the polypeptide coding sequence. | *See* Claims 1 and 17. |
| 24 | A method for producing the vector constructed in claim 23, comprising introducing the vector into a host cell that is capable of replicating the vector and allowing the host cell to replicate the vector. | *See* Claims 1 and 17.  On information and belief, the vector used to express Synagis, Tysabri and Soliris is produced by introducing the vector into a host cell that is capable of replicating the vector and allowing the host cell to replicate the vector. |

# Exhibit 5

**DOCUMENT REQUEST NO. 4:**

All documents concerning Lonza, including but not limited to (a) supply agreements and licensing agreements concerning Lonza or Lonza Intellectual Property; and (b) communications with Lonza regarding Your Accused Drug or the GS Expression System.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 4:**

In addition to its General Objections, Alexion objects to this request as cumulative and duplicative of at least Request No. 3. Alexion further objects to this request as overly broad, unduly burdensome and calling for the production of documents that are neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence. Alexion further objects to this request as calling for the production of documents that are protected from discovery by the attorney-client privilege, work-product doctrine and/or any

applicable privilege or immunity.  Alexion further objects to this request as calling for

documents and things that are not within Alexion's custody or control or are within the

possession of a third party.  Alexion further objects to this request as vague and ambiguous with

respect to the phrases "GS Expression System" and "Lonza Intellectual Property."  Alexion

further object to this request to the extent that it seeks the confidential information of third

parties.

      Subject to these objections and its General Objections, Alexion responds that it will

produce non-privileged, non work-product documents within its possession, custody or control

that are located after a reasonable search sufficient to demonstrate the commercial manufacturing

process of Soliris®.

# Exhibit 6

# EXHIBIT REDACTED
# IN ITS ENTIRETY