## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVARTIS VACCINES & DIAGNOSTICS, INC., *Plaintiff*, v. MEDIMMUNE, LLC, BIOGEN IDEC, INC., AND ALEXION PHARMACEUTICALS, INC., *Defendants*. | C.A. No. 11-CV-84 (SLR) REDACTED PUBLIC VERSION |

### LETTER TO THE HONORABLE MARY PAT THYNGE
### FROM RICHARD HERRMANN RE: RESPONSE TO MOTION TO COMPEL

Dated: November 18, 2011
Redacted version filed: December 5, 2011

Richard K. Herrmann (#405)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
rherrmann@morrisjames.com
*Attorneys for Plaintiff,
Novartis Vaccines & Diagnostics, Inc.*



Richard K. Herrmann
302.888.6816
rherrmann@morrisjames.com

November 18, 2011

**VIA E-FILING AND HAND DELIVERY**
The Honorable Mary Pat Thynge
USDC for the District of Delaware      REDACTED PUBLIC VERSION
844 North King Street
Wilmington, DE  19801

        **RE:**   *Novartis Vaccines & Diagnostics, Inc. v. MedImmune, LLC, et al.*
              **D.Del., C.A. No. 11-84-SLR**

Your Honor:

     Plaintiff Novartis Vaccines and Diagnostics, Inc. ("NVD") respectfully submits this letter in opposition to Defendants' November 17, 2011 letter, seeking to compel further responses to certain document requests.

     **1.  Laches**

     In their answers, Defendants asserted the defenses of prosecution laches and litigation laches.  In their ensuing document requests, Defendants included numerous document requests and one interrogatory directed to the question of when NVD first became aware of Defendants' infringing activities, an issue relevant to the assessment of litigation laches only and to no other claim or defense.  NVD objected to these requests on the ground that they sought information not relevant to the liability issues that are being litigated in this phase, but solely to remedial issues that, under the Court's standard patent scheduling order, are deferred until there is a final determination that the patent-in-suit is valid and infringed.

     The express purpose of this standard, court-mandated bifurcation is to streamline litigation and to defer to a later phase issues that will become moot if the patent being asserted is found to be invalid, unenforceable, and/or not infringed.  *See Bosch LLC v. Pylon Mfg. Corp.*, No 08-542, 2009 WL 2742750, at *1 (D. Del. Aug. 26, 2009) (Robinson, J.).  Just as Judge Robinson has explained that willfulness determinations should be deferred to the remedial phase because "a finding of willfulness is of no moment unless and until the district court, in its sole discretion, chooses to increase damages by reason of the finding," thus making it a "damages issue, not a liability issue," *Bosch LLC v. Pylon Mfg. Corp.*, No 08-542, 2009 WL 2742750, at *1 (D. Del. Aug. 26, 2009) (Robinson, J.), so too laches is a "damages issue."  If laches is found, its sole effect is simply to reduce the amount of damages recoverable to those incurred after the filing of the complaint.  *See, e.g., A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) ("In any event, we will continue to hold, as a matter of policy, that laches bars relief on a patentee's claim *only with respect to damages accrued prior to suit*." (emphasis added)).  It is therefore, like willfulness, also "of no moment," *Bosch,* unless there is first a finding of infringement.  Consistent with this reasoning, Judge Farnan, in *Joy Techs. v. Flakt, Inc.*, 954 F. Supp. 796, 798, 800 (D. Del. 1996), conducted a bifurcated trial, and considered the

defendant's laches defense only during the damages phase, after the Federal Circuit had affirmed the liability decision.

To argue against this result, Defendants rely on the language of the Court's scheduling order stating that the present phase shall include discovery on Defendants' "affirmative defenses." Defendants' literal argument proves too much. Had Defendants asserted the affirmative defense of "offset" or "failure to mitigate damages," we doubt that they would contend now that those "affirmative defenses" relating solely to the amount of damages should be litigated in the liability phase. Litigation laches (as opposed to prosecution laches, discovery on which NVD has not opposed even though there is no basis for the defense) is no different. NVD does not question the proposition that laches is a "partial defense," as *Avocent Redmond Corp. v. United States*, 93 Fed. Cl. 399, 403 (Fed. Cl. 2010), holds. It is. The point is that if this "partial defense" is upheld, its sole effect will be to reduce the amount of damages owed, not to eliminate liability for infringement that is otherwise proper. As such, it would run contrary to the purpose of the Court's bifurcation order to consider this issue now, before there is a finding of infringement that alone would make the issue ripe for adjudication.

**2. Lonza-Related Documents**

In several document requests directed to NVD, Defendants request very broad categories of documents relating to Lonza, the manufacturer of the widely marketed "GS Expression System," as well as to its U.K. predecessor, Celltech. Because of the breadth of the requests, which would sweep within them documents concerning not only the infringing GS Expression System, but also all the other, numerous products and activities in which Lonza engages, NVD agreed on October 27 to produce documents "relating to communications between Chiron/NVD and Lonza/Celltech relating to the GS Expression System or the '688 Patent" and to exclude from production "documents and communications related to post-2009 settlement discussions with Lonza." *See* Exhibit 1.

At the outset, NVD finds it curious that Defendants have pressed for wider discovery relating to Lonza. In its Requests for Admisssion, NVD asked each Defendant to admit that it "use[s] within the United States the [Lonza] GS Expression System to manufacture" its accused products.

REDACTED

Be that as it may, the limitations NVD has proposed are reasonable. Only communications relating to the GS Expression System or the '688 Patent are potentially relevant to any claim or defense, and Defendants have articulated no theory of relevance that would endorse a broader approach to discovery.

Defendants' intrusive request seeking settlement-related communications should be seen for what it is and not enforced. Regardless of whether Rule 408 would bar discovery of the communications, Rule 26 rejects this request as seeking information not likely to lead to the discovery of information relevant to any claim or defense. What Lonza or NVD might or might not have said about a fair compromise of infringement liability under the protection of a nondisclosure agreement executed precisely to protect from disclosure the communications

sought here, is not probative of the issues that are to be litigated: whether the patent is valid based on prior art and whether Defendants' activities render it liable for infringement. In addition, discovery of third party settlement communications would inevitably taint/complicate future mediation efforts that might be undertaken by the Court or by a private mediator. For these reasons, Defendants' request for settlement communications should be rejected.

### 3. Foreign Counterpart Applications

The claimed inventions of the patent-in-suit (the "'688 Patent") arose out of a research program conducted during the 1980s by scientists at Chiron Corporation (a NVD predecessor), whose broad goals were the discovery of biologic drugs and techniques to treat and/or diagnose ailments such as HIV and hemophilia. From that work emerged patentable discoveries in several distinct areas, only one of which was the protein expression technology that is the subject of the patent-in-suit. Consistent with the multiple foci of Chiron's research program, the parent application for the '688 Patent contains only a few paragraphs and figures disclosing the subject matter of that patent's claims. The remainder of the 75-column and 31-figure specification relates to inventions not claimed in the '688 Patent but claimed instead in U.S. and foreign patents stemming from the same parent application and claiming diagnostic techniques and potential therapies for HIV and hemophilia. The claims of the '688 Patent describe an invention that is distinct from the claims relating to diagnosis and therapy of those diseases, and the '688 Patent claims to protein expression using the CMV promoter and the first intron that follows have no foreign counterpart. The technology claimed in the '688 Patent is claimed in that patent only.

Despite the great distance between the subject matter of the '688 Patent and the nearly 40 foreign counterparts, Defendants served three requests for production seeking the prosecution histories for the foreign counterparts. At the October 26 meet-and-confer, NVD explained that even though those numerous prosecution histories were publicly available, NVD would be willing to take on the burden of retrieving and producing foreign counterpart prosecution histories if Defendants could identify claims in those foreign counterparts relating to the expression technology claimed in the patent-in-suit. Motivating NVD's compromise proposal was its view that foreign counterpart patents with claims unrelated to the subject matter of the '688 Patent were not relevant to any issue in this case. Since making that compromise proposal on October 26, Defendants have still not identified any foreign counterpart that they contend has claims with subject matter similar to that of the '688 Patent, even though NVD identified on September 22, in response to an interrogatory, every single such foreign counterpart patent. We believe that Defendants' lengthy silence confirms NVD's position that these foreign patents, and *a fortiori*, their prosecution histories have nothing to do with this case. If Defendants wish to retrieve and troll through foreign counterpart applications they should do so at their own expense, not NVD's.

Respectfully,

*/s/ Richard K. Herrmann*

Richard K. Herrmann - I.D. No. 405
rherrmann@morrisjames.com

cc:   All defense counsel of record

# EXHIBIT 1

# CRAVATH, SWAINE & MOORE LLP

ALLEN FINKELSON
STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG

SUSAN WEBSTER
DAVID MERCADO
ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK

THOMAS E. DUNN
MARK I. GREENE
SARKIS JEBEJIAN
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL

CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE

SPECIAL COUNSEL

SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL

PAUL C. SAUNDERS

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1922

October 27, 2011

*NVD v. MedImmune, et al.*

Dear Counsel:

As a follow-up to our meet-and-confer yesterday, we have the following additional proposals.

**Chiron:** In response to Joint RFPs 97 and 121, we will produce non-privileged documents and communications, if any, between Chiron and NVD relating to the GS Expression System or the '688 patent. We will review Chiron board/shareholder minutes, as well as merger due diligence documents and produce non-privileged excerpts of those materials, if any, relating to the GS Expression System or the '688 Patent. We will also produce relevant personnel organizational charts from Chiron and NVD from the requested time periods, to the extent they still exist.

**Lonza:** In response to Joint RFPs 111 and 112, as well as MedImmune's RFPs Nos. 11, 15, 18, 27, we will produce documents, if any, relating to communications between Chiron/NVD and Lonza/Celltech relating to the GS Expression System or the '688 Patent. We will not produce documents and communications related to post-2009 settlement discussions with Lonza, as we do not believe that they are an appropriate subject for discovery and are subject to a nondisclosure agreement.

**'688 Patent Licenses:** With respect to licenses and licensing practices, we will produce licenses to the '688 Patent, if any.

REDACTED

We request that Alexion confirm that the documents described in its response to NVD's RFP No. 4 include supply and licensing agreements with Lonza regarding the GS Expression System and communications with Lonza regarding Soliris or the GS Expression System.

2

**Change of Inventorship:** With respect to inventorship changes, we fail to see the relevance of this information because 35 U.S.C. § 256 provides that omitting inventors or naming persons who are not inventors shall not invalidate a patent. Nonetheless, in response to RFPs 62-64, we will produce documents concerning the change in inventorship.

**Financial Interest in '688 Patent:** In response to RFP 82, we will produce documents, if any, reflecting any individual's financial interest in the '688 Patent or the outcome of this litigation.

Sincerely,

David Greenwald

Kakoli Caprihan
   Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
      901 New York Avenue, N.W.
         Washington, D.C. 20001-4413

Jeremy A. Younkin
   Foley Hoag LLP
      Seaport West
         155 Seaport Blvd.
            Boston, MA 02210-2600

Christine Willgoos
   Paul Hastings LLP
      75 East 55th Street
         New York, NY 10022-3205

# EXHIBIT 2

# EXHIBIT REDACTED IN ITS ENTIRETY