

Richard K. Herrmann
302.888.6816
rherrmann@morrisjames.com

**VIA E-FILING AND HAND DELIVERY**     February 12, 2013

The Honorable Mary Pat Thynge
USDC for the District of Delaware
844 North King Street
Wilmington, DE 19801

      **RE:** *Novartis Vaccines & Diagnostics, Inc. v. MedImmune, LLC, et al.*, C.A. 11-84-SLR

Your Honor:

      Novartis Vaccines And Diagnostics, Inc. ("NVD") files this Motion for Protective Order seeking a determination that documents[1] should be returned to NVD for inclusion on its privilege log in accordance with the clawback provisions of FRCP Rule 26(b)(5)(B) and FRE Rule 502.

**Background.**

      This action was filed January 26, 2011, involving a single asserted patent and just two accused products. Defendants Biogen IDEC ("Biogen") and Alexion Pharmaceuticals ("Alexion") (collectively "Defendants") responded by taking a scorched-earth approach to discovery. Since this case commenced, Defendants have promulgated 283 document requests, 15 interrogatories, and requests to depose 39 witnesses.

      Although Defendants' excessive requests have imposed considerable burden, NVD has endeavored in good faith to produce responsive information. In reply to Defendants' documents requests, for example, NVD has produced over 37,000 documents totaling over 380,000 pages. As it currently stands, NVD's production exceeds the volume of productions from both defendants combined by more than a factor of nine.

      During a one-week period from June 11-18, 2012, NVD produced over 74,000 pages (over 2,300 documents), some of which were collected from the attorneys who prosecuted the patent-in-suit—Robins Law LLP—and related applications—Banner & Witcoff. Moon, Decl. at 2. All of the documents were reviewed for privilege by counsel for NVD. Moon, Decl. at 5. A significant volume of documents (957 documents, totaling 2,316 pages) were identified as privileged and logged by NVD. Moon, Decl. at 5. The remainder were produced on June 18, 2012. Moon, Decl. at 2.

      Within this large production were a small number of privileged documents—thirty-one documents totaling ninety-eight pages—that were inadvertently missed during the privilege

---

[1] The documents at issue bear production nos. RL000001; RL000002-3; RL000004-5; RL000006; RL000007; RL000008; RL000009; RL000010-12; RL000013-15; RL000016-17; RL000018-20; RL000021-22; RL000023-24; RL000025-27; RL000028-30; RL000031-36; RL000037-57; RL000058-69; RL000070-72; RL000073-74; RL000075-76; RL000077-78; RL000079-80; RL000081-82; RL000083-84; RL000085-86; RL000087-88; RL000089-90; RL000091-93; RL000094-96; RL000097-98.



review of files from Robins Law. Moon, Decl. at 6. These documents were reviewed, but not initially identified as privileged because most were captioned as PTO filings and therefore were believed to be part of the public record. Moon, Decl. at 6. Unbeknownst to NVD's counsel, Robins Law had retained in their files draft documents that were never filed with the PTO. Moon, Decl. at 7. These drafts were prepared based on communications with Chiron, then-client of Robins Law and predecessor to NVD, and provided to Chiron for review and approval. Robins, Decl. at para. 7. The documents in question therefore reflect advice of counsel and are privileged. Because they were not later filed with the PTO, Chiron and NVD did not waive privilege.

When NVD's counsel was preparing for the deposition of Roberta Robins (which was scheduled for November 30, 2012), counsel discovered that the documents at issue were not in the official file history of the asserted patent. Moon, Decl. at 7. Further investigation revealed that Robins Law had retained drafts of certain documents that were reviewed by its client and either superseded by later drafts or not filed at all with the PTO. Moon, Decl. at 7,10, and 11; Robins, Decl. at para. 8. When the inadvertent production was discovered on November 27, NVD notified Defendants within twenty-four hours that these documents are privileged and requested they be returned. Exhibit 1. The documents clawed back were thereafter promptly logged on December 14, 2012. Moon, Decl. at 8.

Despite these facts Defendants insist the Robins Law documents are no longer privileged because of the inadvertent production. Defendants first raised this issue in November 28, 2012. Exhibit 2. After raising it in November, however, they did not pursue this issue further until now, less than two weeks from the close of deposition discovery and more than two months *after* the close of discovery on all other issues.

**<u>The Robins Law Documents Are Privileged</u>**

The attorney-client privilege applies to communications where (1) the holder of the privilege is a client; (2) the person to whom the communication was made is a member of the bar of a court and is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed by the client, without the presence of strangers, and for the purpose of securing legal services; and (4) the privilege is claimed and not waived. See *Robert Bosch LLC v. Pylon Mfg Corp.*, 263 F.R.D. 142, 145 (D. Del. 2009).

Here, the holder of the privilege, NVD and its predecessor Chiron, was a client of Robins Law. Robins, Decl. at para. 3. The communications were from Roberta Robins of Robins Law to Chiron in-house attorneys, all of whom were members of the bar and were acting as lawyers for Chiron. Robins, Decl. at para. 8. The communications—here a number of draft PTO filings and letters to the client—relate to the correction of inventorship based on a factual investigation conducted by Amy Collins, in-house counsel for the client. See Exhibit 3 (NVD00390-392). The facts in the drafts were communicated for the purpose of seeking legal services regarding patent prosecution and were made in confidence. Robins, Decl. at para. 7. Finally, the privilege is claimed by NVD and was not waived because the draft documents and letters to client were not filed with the PTO. Robins, Decl. at para. 8.



### Inadvertent Production Of The Robins Law Documents Did Not Waive Privilege

Courts will consider five factors to determine whether an inadvertent disclosure constitutes waiver: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be served by relieving the party of its errors. *See Fidelity & Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516, 521-22 (E.D. Pa 1996).

NVD, the holder of the privilege, sought to prevent disclosure by having its outside counsel review all documents for privilege before production. Moon, Decl. at 4. Here, counsel for NVD spent over 120 hours on review and production between May 24, 2012, and June 18, 2012. Moon Decl. at 3. Counsel for NVD took numerous precautions to prevent inadvertent disclosures—counsel reviewed all documents one-by-one in a first review, counsel searched for names of attorneys and law firms with documents identified for production in a second level review, and counsel searched documents slated for production for a final check to filter out further documents that needed to be withheld as privileged as part of a third level review. Moon, Decl. at 4.

NVD produced over 2,300 documents (over 74,000 pages) of materials during the one-week period in which the error occurred. Moon, Decl. at 2. Of the over 2,300 documents reviewed, 957 were identified as privilege and logged. Moon, Decl. at 5. The thirty-one documents (98 pages) produced in error were just 1.3 % of the total production. The error was unintended—NVD has not relied on any of these documents—and therefore the disclosure was inadvertent. Moon, Decl. at 4. In fact the documents were missed because many were captioned as PTO documents and therefore believed to have been filed with the PTO. Moon, Decl. at 7. Although they were not signed, there are many other documents in the file history that are also not signed and were filed with the PTO without signature. Moon, Decl. at 6.

NVD promptly notified Defendants in writing within twenty-four hours after NVD detected the inadvertent disclosure. Finally, a tight discovery schedule—owing to defendants having served their subpoena on the prosecuting attorneys on May 14, just over one month before the June 15 document production cutoff—created time pressures that also weigh against waiver. Therefore, the interests of justice would be best served by requiring the documents at issue to be returned.

### Conclusion

All of the documents at issue are privileged. In the span of one week, NVD produced over 74,000 pages of documents. Despite that NVD took reasonable precautions to prevent the production of privileged documents, a handful were inadvertently included in this large production. The documents at issue constitute only 98 pages, i.e., only 1.3% of the production. NVD promptly requested return of the documents (in less than 24 hours). Since first raising this issue on November 28, 2012, Defendants have waited until less than two weeks from the close of deposition discovery and more than two months *after* the close of discovery on all other issues. For all these reasons, NVD's Motion for Protective Order should be granted.

The Honorable Mary Pat Thynge
February 12, 2013, Page 4



        Respectfully,

        */s/ Richard K. Herrmann*

        Richard K. Herrmann - I.D. No. 405
        *rherrmann@morrisjames.com*

cc:     All defense counsel of record

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVARTIS VACCINES AND DIAGNOSTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MEDIMMUNE, INC., BIOGEN IDEC, INC., AND ALEXION PHARMACEUTICALS, INC., <br><br> Defendant. | Civil Action No. 11-cv-00084-SLR <br><br> **DECLARATION OF BO MOON IN SUPPORT OF NOVARTIS VACCINES AND DIAGNOSTICS, INC.'S MOTION FOR PROTECTIVE ORDER** |

I, Bo Moon, declare the following:

1. I am an attorney with the law firm of O'Melveny & Myers LLP, counsel for Novartis Vaccines and Diagnostics, Inc. ("NVD"). I submit this declaration in support of NVD's Motion for Protective Order. The facts set forth in this declaration are known to me personally. If called as a witness, I could and would testify competently concerning these matters.

2. I am the attorney who reviewed and on June 18, 2012, inadvertently produced the privileged documents at issue. In the course of a one week period from June 11, 2012, to June 18, 2012, I (along with others working under my supervision) reviewed and produced over 2,300 documents (over 74,000 pages) of documents. These documents include those collected from attorneys who prosecuted the patent-in-suit—Robins Law LLP—and related applications—Banner & Witcoff. On June 18, 2012, alone, 957 documents (10,633 pages) were produced. The privileged documents at issue constitute only 31 documents (98 pages) of the 2,300 documents (74,000 pages) produced, or approximately 1.3% (0.13% by page count) of the production.

3. Between May 24, 2012 and June 18, 2012, I spent 129 hours on review and coordinating various production issues.

4. I took several precautions to prevent inadvertent disclosure of privileged documents. The documents that were received from Robins Law (along with documents from Banner & Witcoff and NVD, which totaled over 2,300 documents during the week of

1

June 11-18, 2012) were all reviewed by me, one by one. I consulted with the partner supervising me on any documents for which I had a question.

5. Each production documents was processed through at least three different levels of review. I personally reviewed each collected documents to identify privileged documents. Once this first level review was done, searches for the names of known attorneys (both in-house and outside) and law firms were run against the documents identified for production for a second level of review. This second level review was conducted to identify any potentially privileged docs that might have been missed during the initial review. The identified documents were again individually reviewed by me, one by one. The documents were then separated into two groups for the logging and production. The documents identified for production through these two levels of review were then bates-stamped by litigation support personnel. After the documents were bates-stamped, I performed a third level review before the production. The third level review was to check for production related issues and to filter out any privileged document that might have been missed during the first two stages of review. In addition to three levels of review, any documents whose privileged status was in question were discussed individually with the partner-in-charge. Through these precautions I identified as privileged 957 documents (2,316 pages) from the collection of documents that resulted in the production on June 15, 2012 through June 18, 2012 (which included documents from Robins Law, Banner & Witcoff, and NVD).

6. The production of these privileged documents was unintentional and inadvertent. Many of the documents in question appeared to be PTO filings, but were actually drafts of PTO filings that were not filed with the PTO. I mistook the drafts for documents that were filed with the PTO, because they bore the captions that would have accompanied the actual filed documents. Although these documents were not signed, many of the documents that were filed during the prosecution of U.S. Patent No. 5,688,688 were also not signed (see, e.g., NVD000403-405; NVD000412-414; NVD000418-420; NVD000424-426; NVD000430-432; NVD000436-438; and NVD000514-516).

7. When we were preparing for the deposition of Roberta Robins, we discovered that the documents at issue were not in the official file history of the asserted patent. Upon further investigation, we discovered that Robins Law had retained drafts of documents that were reviewed by its client, and either superseded by later drafts or not filed at all with the PTO.

8. We discovered the error on November 27, 2012. Within 24 hours of discovering that these privileged documents had been inadvertently produced, NVD requested the documents be returned pursuant to FRCP Rule 26(b)(5)(B).

9. Documents RL000031-36, RL000070-72 and RL000091-93 are draft unsigned versions of NVD000468-474, NVD000400-402, and NVD000526-528.

10. Documents RL000001; RL000004-5; RL000009; RL000013-15; RL000016-17; RL000018-20; RL000021-22; RL000023-24; RL000037-57; and RL000097-98 are different versions of documents filed with the PTO.

11. RL000002-3; RL000010-12; RL000025-27; RL000028-30; RL000058-69; RL000073-74; RL000075-76; RL000077-78; RL000079-80; RL000081-82; RL000083-84; RL000085-86; RL000087-88; RL000089-90; RL000094-96 are documents not filed with the PTO.

12. Documents RL000006; RL000007; RL000008 are correspondence with inventors that were also reviewed by Chiron. Duplicates of these documents were found in NVD's files, and were logged as privileged in NVD's privilege log.

13. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed this 12th day of February, 2013, at Newport Beach, California,

                                                                   */Bo Moon/*

                                                                    Bo Moon

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVARTIS VACCINES AND DIAGNOSTICS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MEDIMMUNE, INC., BIOGEN IDEC, INC., AND ALEXION PHARMACEUTICALS, INC.,<br><br>Defendant. | Civil Action No. 11-cv-00084-SLR<br><br>**DECLARATION OF ROBERTA ROBINS IN SUPPORT OF NOVARTIS VACCINES AND DIAGNOSTICS, INC.'S MOTION FOR PROTECTIVE ORDER** |

I, Roberta Robins, declare the following:

1. I have been asked by counsel for Novartis Vaccines and Diagnostics, Inc. ("NVD") to submit this declaration in support of NVD's Motion for a Protective Order. The facts set forth in this declaration are known to me personally. If called as a witness, I could and would testify competently concerning these matters.

2. I am the founder of Robins Law Group. I have practiced intellectual property law for over 25 years. I received a J.D. cum laude from Hastings College of Law, University of California. I have been admitted to the California Bar since 1987 and have been a registered PTO practitioner since 1988.

3. Novartis Vaccines and Diagnostics, Inc. ("NVD") and its predecessor Chiron Corporation ("Chiron") have been my clients. I have prosecuted patent applications for Chiron and then NVD since 1988.

4. I am one of the attorneys who prosecuted U.S. Application Serial No. 08/288,336, which issued as U.S. Patent No. 5,688,688, the patent at issue in this case.

5. During the prosecution of their applications, I worked very closely with Chiron. It was my practice to send substantive documents—including applications, petitions to change inventorship, statements of facts, and amendments—that I prepared for filing with the U.S. Patent and Trademark Office (USPTO) to the client first for review before they were filed with the USPTO. I also required my associates to follow the same practice.

1

6. With respect to the documents at issue in this motion (bearing production numbers RL000001; RL000002-3; RL000004-5; RL000006; RL000007; RL000008; RL000009; RL000010-12; RL000013-15; RL000016-17; RL000018-20; RL000021-22; RL000023-24; RL000025-27; RL000028-30; RL000031-36; RL000037-57; RL000058-69; RL000070-72; RL000073-74; RL000075-76; RL000077-78; RL000079-80; RL000081-82; RL000083-84; RL000085-86; RL000087-88; RL000089-90; RL000091-93; RL000094-96; RL000097-98), I reviewed the documents individually, and they are unsigned drafts.

7. I was admitted to the California Bar at the time that I prepared the documents that have my name associated with them. The facts in the drafts were communicated for the purpose of seeking legal services regarding patent prosecution and were made in confidence. No strangers were present at the time that I was receiving information from Chiron Corporation relating to the subject matters of the documents at issue, and I treated the information as confidential. I prepared each of the documents at issue that have my name associated with them based on a request for legal advice from Chiron. My associate did the same.

8. I sent copies of RL000009, RL000010-12, RL000025-27, RL000028-30, RL000031-36, RL000037-57, RL000070-72, RL000073-74, RL000075-76, RL000077-78, RL000079-80, RL000081-82, RL000083-84, RL000085-86, RL000087-88, RL000089-90, and RL000094-96 to the in house attorney at Chiron at the time for review and approval. These attorneys included Amy Collins, Barbara McClung, and Joseph Guth. Each of them were members of the bar and registered PTO practitioners. To the best of my knowledge, documents RL000023-24, RL000058-69 and RL000091-93, prepared by my associate, were also sent to the in house attorney at Chiron for review and approval. I understand that many of the documents identified in this paragraph were not filed with the PTO. These documents were either superseded by later drafts or not filed at all with the PTO. Therefore, I do not believe that the privilege claimed by NVD was waived because the draft documents were not filed with the PTO.

9. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed this __11__th day of February, 2013, at _Palo Alto_, California.

Roberta Robins

2

# EXHIBIT 1



BEIJING
BRUSSELS
CENTURY CITY
HONG KONG
LONDON
LOS ANGELES
NEW YORK

610 Newport Center Drive, 17th Floor
Newport Beach, California 92660-6429

TELEPHONE (949) 760-9600
FACSIMILE (949) 823-6994
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

November 28, 2012

OUR FILE NUMBER
0151800-00013

WRITER'S DIRECT DIAL
(949) 823-6954

WRITER'S E-MAIL ADDRESS
jkappos@omm.com

**VIA EMAIL**

Claire Laporte
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA 02210
cll@foleyhoag.com

David Conca
Paul Hastings LLP
75 East 55th Street
New York, NY 10022
davidconca@paulhastings.com

Re: *Novartis Vaccines and Diagnostics, Inc. v. MedImmune, LLC, et. al., C.A. No. 11-CV-84 (SLR)*

Dear Claire and David:

**Inadvertently Produced Documents**

It has recently come to our attention that certain documents that are protected by the attorney-client privilege were inadvertently produced. These protected documents consist of the following bates numbers:

RL000001; RL000002-3; RL000004-5; RL000006; RL000007; RL000008; RL000009; RL000010-12; RL000013-15; RL000016-17; RL000018-20; RL000021-22; RL000023-24; RL000025-27; RL000028-30; RL000031-36; RL000037-57; RL000058-69; RL000070-72; RL000073-74; RL000075-76; RL000077-78; RL000079-80; RL000081-82; RL000083-84; RL000085-86; RL000087-88; RL000089-90; RL000091-93; RL000094-96; RL000097-98

We ask that you destroy these protected documents and any and all copies of these documents (whether in hard copy or electronic format) and confirm that you have destroyed these documents as soon as possible.

Please feel free to contact me if you wish to further discuss this matter.

Sincerely,

*John Kappos*

John Kappos

cc: all counsel of record.

# EXHIBIT 2



1(212) 318-6406
davidconca@paulhastings.com

November 28, 2012

**VIA E-MAIL**

John Kappos
O'Melveny & Myers LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660

      Re:    *Novartis Vaccines & Diagnostics, Inc., et al. v. MedImmune, LLC, et. al.,*
             C.A. No. 11-CV-84 (SLR)

Dear John:

    We received your letter earlier this evening regarding the document production of Roberta Robins. Paul Hastings and Foley Hoag will comply with the terms of the Protective Order and return or destroy the copies of the documents designated in your letter. Pursuant to the Protective Order, each of defendants' firms will also sequester one copy of the designated documents for submission to the Court in our challenge to the claim of privilege.

    Further, in light of Novartis's request to claw back the document production from the Robins firm less than two days before her deposition, defendants will not proceed with the Robins deposition as scheduled this Friday. Instead, we will postpone this deposition until this dispute is resolved.

    Please note that the Robins production was loaded onto the Paul Hastings document management system, which employs disaster mitigation back-up tapes. As such, we will be unable to delete the Robins documents from those back-up tapes. Those back-up tapes are not accessible to attorneys at Paul Hastings.

Very truly yours,

*David Conca*

David M. Conca
for PAUL HASTINGS LLP

cc:    Jeremy Younkin
        Tom Steindler

LEGAL_US_E # 101501300.1

# EXHIBIT 3

PATENT
Atty. Docket No. 0035.11

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re the Application of:

PAUL A. LUCIW et al.

Serial No.: 08/288,336      Group Art Unit: Unassigned GROUP 1800

Filed: August 10, 1994      Examiner: Unassigned

For: METHODS FOR DETECTING HUMAN IMMUNODEFICIENCY VIRUS NUCLEIC ACID (AS AMENDED)

## PETITION FOR CORRECTION OF INVENTORSHIP PURSUANT TO 37 CFR §1.48(c)

Hon. Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

    This Petition is filed in order to timely correct the inventorship of the above-identified application under 37 CFR §1.48(c). The inventorship is incomplete due to an error made without deceptive intent. This Petition contains a Statement of Facts, the truth of which is verified by each of the original named inventors except Rob Hallewell. A Supplemental Petition for Correction of Inventorship Pursuant to 37 CFR §1.48(c) accompanies this paper and requests that the inventorship be corrected without Hallewell's signature, due to his refusal to cooperate with applicants. Accompanying the Petition is a Preliminary Amendment, including claims to the subject matter which was invented by the additional

1

NVD000390

PATENT
Atty. Docket No. 0035.11

inventors; Consent of Assignee to Correction of Inventorship Under 37 CFR §1.48(c); the fee set forth in 37 CFR §1.17(h); and a Declaration and Power of Attorney, signed by each of the added inventors. The Commissioner is hereby authorized to charge any additional fees or credit overpayment to Deposit Account No. 18-0580.

## Statement of Facts

Information relating to the construction of certain plasmids for expression of heterologous proteins in mammalian cells have been disclosed in the above-captioned patent application and its parent applications ("HIV applications"), tracing back to a continuation-in-part ("CIP") application that was filed on December 24, 1987, Serial No. 07/138,894, now patented as U.S. Patent No. 5,156,949, issued on October 20, 1992. Such information includes, for example, the construction of plasmid pCMV6, and of its parents and derivatives.

However, at the time the CIP application was filed, the emphasis was on identification of DNA sequences obtainable from HIV and the products of expression of such sequences. The claims as originally filed, therefore, reflected such emphasis. The significance of the above-mentioned plasmids was overlooked.

On or about August, 1994, Amy L. Collins, a patent attorney employed by the assignee, Chiron Corporation, reviewed the HIV applications for the first time and discovered the unclaimed plasmids. Following her review, Dr. Collins investigated the significance of the plasmids and inventorship with respect to the plasmids and made the determination that claims to the plasmids should be added in a continuation application and the inventorship corrected to reflect the contribution of Steve Rosenberg, Barbara S. Chapman, Richard M. Thayer and Nancy L. Haigwood in designing and making the plasmids.

2

NVD000391

Relief Requested

Accordingly, the Commissioner is respectfully requested to amend the inventorship of the subject application to include Steve Rosenberg, Barbara S. Chapman, Richard M. Thayer and Nancy L. Haigwood. Thus, acceptance of the accompanying documents is earnestly solicited.

Respectfully submitted,

By: _____
Roberta L. Robins
Registration No. 33,208

REED & ROBINS
635 Bryant Street
Palo Alto, California 94301
Telephone: (415) 617-8999
Fax: (415) 327-3231

3