IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVARTIS VACCINES & DIAGNOSTICS, INC., and NOVARTIS PHARMA AG, )))) | |
| Plaintiffs, )) | |
| v. ))) | C.A. No. 11-84-SLR-MPT |
| BIOGEN IDEC, INC. and ALEXION PHARMACEUTICALS, INC., )))) | **JURY TRIAL DEMANDED** |
| Defendants. ))) | REDACTED |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

Dated: August 16, 2013

*Of Counsel*:
Gerald J. Flattmann, Jr.
David M. Conca
Anthony Michael
Paul, Hastings, Janofsky & Walker LLP
Park Avenue Tower
75 E. 55th Street
New York, NY 10022
Telephone: (212) 318-6000

Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300

*Counsel for Alexion Pharmaceuticals, Inc.*

*Of Counsel*:
Donald R. Ware
Claire Laporte
Jeremy A. Younkin
Sarah S. Burg
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210
Phone: (617) 832-1000

Collins J Seitz Jr. (Bar No. 2237)
Benjamin Schladweiler (Bar No. 4601)
SEITZ ROSS ARONSTAM & MORITZ LLP
100 South West Street
Wilmington DE 19801
Tel. (302) 576-1601

*Counsel for Defendant Biogen Idec Inc.*

TABLE OF CONTENTS

Nature and Stage of the Proceedings ........................................................... i

Summary of Argument .............................................................................. i

I.     INTRODUCTION ............................................................................ 1

II.    TECHNOLOGY BACKGROUND ................................................... 2

III.   UNDISPUTED FACTS .................................................................... 5

       A.   The '688 Patent Describes a Single Example of Protein Expression Using HCMV .................................................... 5

       B.   The Prosecution of the '688 Patent .......................................... 6

       C.   The Breadth of the '688 Patent Claims ..................................... 7

IV.    ARGUMENT: THE CLAIMS IN SUIT ARE INVALID FOR LACK OF WRITTEN DESCRIPTION BECAUSE THEY ARE FAR BROADER THAN THE SPECIFICATION'S DISCLOSURE ........................................ 8

       A.   The '688 Patent's Specification Does Not Support The Genus of Claimed Polypeptides ................................................ 10

       B.   The '688 Patent's Specification Does Not Support Claim 1's Broad Genus of "non-human mammalian host cell[s]" ........................................................... 16

V.     CONCLUSION ................................................................................ 18

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Alonso,*
    545 F.3d 1015 (Fed. Cir. 2008).................................................................12, 13, 16

*Ariad Pharms., Inc. v. Eli Lilly & Co.,*
    598 F.3d 1336 (Fed. Cir. 2010) (en banc)..................................................8, 9, 17

*Billups-Rothenberg, Inc. v. Associated Regional and Univ. Pathologists, Inc.,*
    642 F.3d 1031 (Fed. Cir. 2011)..........................................................................15

*Boston Sci. Corp. v. Johnson & Johnson, Inc.,*
    679 F. Supp. 2d 539 (D. Del. 2010) (Robinson, J.).........................................9, 15

*ButaMax™ Advanced Biofuels LLC v. Gevo, Inc.,*
    --- F. Supp. 2d ---, 2013 WL 1137182 (D. Del. Mar. 19, 2013) (Robinson, J.) ....................10

*Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.,*
    541 F.3d 1115 (Fed. Cir. 2008)..................................................................... *passim*

*Centocor Ortho Biotech, Inc. v. Abbott Labs.,*
    636 F.3d 1341 (Fed. Cir. 2011)............................................................................8

*Chiron Corp. v. Genentech, Inc.,*
    363 F.3d 1247 (Fed. Cir. 2004)..........................................................................15

*Fiers v. Revel,*
    984 F.2d 1164 (1993)..........................................................................................16

*Helicos Biosciences Corp. v. Illumina, Inc.,*
    888 F. Supp. 2d 519 (D. Del. 2012) (Robinson, J.).............................................10

*Noelle v. Lederman,*
    355 F.3d 1343 (Fed. Cir. 2004)..........................................................................12

*Novozymes A/S v. DuPont Nutrition Biosciences APS,*
    --- F.3d ---, 2013 WL 3779376 (Fed. Cir. July 22, 2013)....................................16

*Regents of Univ. of California v. Eli Lilly & Co.,*
    119 F.3d 1559 (Fed. Cir.1997).....................................................................13, 16

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Univ. of Rochester v. G.D. Searle & Co.*,
   358 F.3d 916 (Fed. Cir. 2004).............................................................................................1, 9

**Statutes**

35 U.S.C. § 112.................................................................................................................. *passim*

## Nature and Stage of the Proceedings

Plaintiff Novartis Vaccines & Diagnostics, Inc. has brought patent infringement claims against Alexion Pharmaceuticals, Inc. ("Alexion").  Plaintiffs Novartis Vaccines & Diagnostics, Inc. and Novartis Pharma AG (collectively, "Novartis") have brought patent infringement claims against Biogen Idec Inc. ("Biogen Idec").  These patent infringement allegations are based on manufacture of Alexion's and Biogen Idec's respective humanized monoclonal antibody products: Soliris® and Tysabri®.  Biogen Idec's Motion to Dismiss Novartis Pharma AG's Patent Infringement Claim for Lack of Subject Matter Jurisdiction is pending.  The parties are currently briefing claim construction.  Oral argument concerning claim construction and summary judgment is scheduled for October 4, 2013.

## Summary of Argument

Because the specification of the '688 patent does not disclose that the inventors were in possession of what they claimed, the Court should grant summary judgment that all of the asserted claims in suit are invalid for lack of written description under 35 U.S.C. § 112.

## I.    INTRODUCTION

The Court should grant summary judgment invalidating the asserted claims because they cover vast numbers of polypeptides and cell types that the applicants did not invent, describe, or disclose.  The excessive breadth of the asserted claims violates a principle critical to the fairness of the patent system: that the claims of a patent not confer exclusivity extending beyond the inventors' contribution to science.  Here, the single-example disclosure of the claimed subject matter in Novartis's U.S. Patent No. 5,688,688 ("the '688 patent") is far too narrow to support the sweeping breadth of the claims.  *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1353-54 (Fed. Cir. 2010) (en banc); 35 U.S.C. § 112.

The '688 patent's specification, which is largely devoted to other topics, includes a single example of expression of a single protein in a single cell type using certain human cytomegalovirus ("HCMV") DNA sequences.  Yet the '688 patent broadly claims expression of every imaginable protein under the sun, including all mammalian proteins, plant proteins, fungal proteins, and bacterial proteins – untold numbers of proteins, including the engineered, non-natural, humanized monoclonal antibodies sold by Defendants.  The '688 patent also claims the expression of all those proteins in almost every cell type.  Despite the breadth of the claims, the '688 patent specification provides no guidance to determine whether any specific protein or cell type will function as recited in the claims without trial-and-error experimentation.

Because the claims "overreach the scope of the inventor's contribution to the field of art as described in the patent specification," they are invalid under 35 U.S.C. § 112.  *Ariad*, 598 F.3d at 1353-54 (*quoting Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 920 (Fed. Cir. 2004)).

## II.    TECHNOLOGY BACKGROUND[1]

Protein production in cells, referred to as "expression," involves two steps: "transcription" and "translation." In transcription, the nucleotide sequence of a gene is transcribed (or copied) into RNA inside the cell's nucleus. This process is directional; the cell's enzymes "read" the DNA sequence from "upstream" to "downstream," (also referred to as 5' to 3' ("five-prime to three-prime")), to create a sequence referred to as an "RNA transcript."

Before the next step – translation – can occur, certain portions of the RNA transcript are cut out by the cell's "splicing" machinery. The spliced-out portions are referred to as "introns"; the portions of the RNA sequence that remain are referred to as "exons." The ends of the exons are re-connected after splicing, resulting in an mRNA (messenger RNA) transcript, which is then translated into an amino acid sequence, forming the protein (also referred to as the "polypeptide").

The DNA sequences that encode proteins make up only part of an organism's DNA. For example, introns, referred to above, do not encode protein. Some DNA sequences that do not encode protein information instead contain regulatory signals that govern when, how much, or how fast expression occurs. Regulatory DNA sequences referred to in the claims include "promoters," "polyadenylation sequences," and the "SV40 origin of replication." A promoter is a sequence that permits the initiation of transcription. A polyadenylation sequence is required for terminating transcription of genes. The SV40 origin of replication ("SV40 ori") is a DNA

---

[1] While some of this background section is reproduced from Defendants' Answering Claim Construction brief, additional background concerning the relevant science has been added. This information is provided simply for the Court's convenience. The facts that are material to the resolution of this motion are set forth in the next section and relate to the narrow disclosure and broad claims of the '688 patent. Those are undisputed.

sequence that originates from a monkey virus, SV40. It permits replication of DNA in certain special cell types.

Starting in the 1970s, scientists discovered, characterized, and manipulated different types of DNA using tools that enabled them to replicate ("clone") DNA to make large quantities of a particular sequence available for study. The earliest tools used for this task were referred to as "vectors." These were DNA constructs that could be used to transfer DNA into a host cell. Early vectors were most typically plasmids (circular, self-replicating, extrachromosomal DNA molecules commonly found in bacteria). Scientists used vectors for various purposes, including expressing proteins of interest. Scientists could insert a vector carrying a gene of interest into a cell, which would then operate as a living factory to express the protein encoded by the gene of interest. Vectors constructed for this purpose were termed "expression vectors." To stimulate production of a protein of interest in an expression vector, scientists assembled regulatory sequences from a variety of sources. By the early 1980s, scientists had discovered that viruses, including SV40 and HCMV, were a rich source of regulatory DNAs.

Scientists expressed proteins using what is known as "transient expression," in which a vector carrying the gene of interest would be inserted into the cell's cytoplasm and remain in the cell as a vector, replicating independently of the cell's chromosome and expressing the protein of interest. This "transient expression" method permitted protein expression in a short time and was referred to as "transient" because the mammalian cells would lose the vectors during cell division.

Scientists also employed "stable expression": a vector carrying the gene of interest would be inserted into a cell, and scientists would further manipulate the cell so that the DNA sequences from the vector would be incorporated into the cell's chromosomal DNA. Once the

DNA sequences delivered by the vector had been incorporated, transforming the cell and creating what is known as a "stable" (or "permanent") cell line, the integrated DNA would replicate as part of the host cell's DNA each time the cell divided.  At the time Novartis filed its patent application in December 1987, it was difficult and time-consuming to establish stably transformed cell lines.

Proteins are made of amino acids.  A single string or chain of amino acids is, as indicated above, a polypeptide.  Many proteins are single-chain polypeptides.  Antibodies, on the other hand, are complex proteins consisting of four polypeptide chains (two identical "heavy chains" and two identical "light chains") chemically bonded together.  A "chimeric" antibody combines DNA from more than one species.  A "humanized" (also called "hyper-chimeric") antibody contains human DNA interspersed with nonhuman, often mouse, DNA.

Mammalian proteins typically undergo a series of modifications even after the amino acid chain that makes up the final protein has been produced.  In these additional steps, other chemical elements may be added to the protein molecule, and the molecule assumes its final, three-dimensional shape, instead of being just a string of amino acids.  These additional steps are important for the function of the protein.  In the case of an antibody, after the light and heavy chains are produced (translated), the four polypeptide chains are folded into a complex three - dimensional structure, which is critical to the antibody's function.  An expression system to produce antibodies must facilitate proper transcription and translation of both the light and heavy chain genes and facilitate the post-translational binding and folding required to make a functional antibody.

## III.   UNDISPUTED FACTS

### A.   The '688 Patent Describes a Single Example of Protein Expression Using HCMV

The claims of the '688 patent are directed to "vectors" and "isolated nucleic acid molecule[s]" that incorporate certain HCMV DNA sequences to express polypeptides. Although the specification of the '688 patent is lengthy, it is directed almost entirely to HIV. The description of the sole HCMV-based vector, Example 2.3.2, is relegated to 48 lines, or roughly half a column, and Figure 29. D.I. 452, JA00074 ('688 patent at col. 27, l. 65-col. 28, l. 16), JA00058.[2] That Example describes plasmid pCMV6ARV120tpa, which was made by inserting a gene for an HIV protein, gp120, into a plasmid vector, pCMV6a, containing HCMV sequences. D.I. 452, JA00074. When the inventors transfected specialized monkey kidney cells called COS 7 cells with pCMV6ARV120tpa, they achieved expression of gp120. *Id.* at col. 28, ll. 5 – 12.

REDACTED

As Novartis informed this Court, "The remainder of the 75-column and 31-figure specification relates to inventions *not claimed in the '688 Patent* but claimed instead in [related applications] claiming diagnostic techniques and potential therapies for HIV and hemophilia." D.I. 80, Novartis's Nov. 18, 2011 Letter to Judge Thynge at 3 (emphasis added).

The specification discloses no antibody expression, much less the expression of the highly complex, humanized antibodies marketed by Defendants. REDACTED

REDACTED

---

[2] "JA" citations are to the Joint Appendix, volumes 1 and 2, filed with the Court for claim construction briefing on July 24, 2013 (D.I. 452 and D.I. 453).

REDACTED

REDACTED Indeed, gp120 is the only protein expressed with HCMV in the '688 patent. *Id.* at 12:20-23.

The patent's specification discloses only one cell type, COS 7, for use with HCMV. *Id.* at 13:15-17; 14:10-13. Defendants do not use COS 7 cells to manufacture their products; they use NS0 mouse cells. *Id.* at 14:22 – 15:5; Ex. 2, NVD's First Supplemental Objections and Responses to Defendants' Second Set of Joint Interrogatories (Nos. 8-9), at pp. 2-4. There is no disclosure in the '688 patent of protein expression from any mouse cells. Ex. 1, at 14:14-15:5.

Although Novartis contends that the '688 patent claims cover stable expression of all proteins in all host cells, it is undisputed that the '688 patent specification does not disclose stable expression using HCMV, REDACTED

REDACTED

REDACTED

**B.      The Prosecution of the '688 Patent**

The '688 patent is a continuation-in-part of an October 1984 parent application related to HIV polypeptides for diagnosis or vaccine preparation. D.I. 452, JA00001. Example 2.3.2 was added to the specification of this patent family in application No. 07/138,894 ("the '894 application"), a continuation-in-part that was filed December 24, 1987. At that time, the nine individuals then named as inventors did not seek to claim the supposedly novel HCMV-based plasmid expression vector disclosed in the added material. Ex. 3, File History of U.S. Patent

Application No. 138,894 (U.S. Patent No. 5,156,949), at pp. 1, 4, 5, 57, 58, 159-68. In 1994,

Chiron (now Novartis) filed application No. 288,336, which matured into the '688 patent. In

March 1995, Chiron amended that application to add broad claims to HCMV-based DNA

constructs.

The '688 patent issued in November 1997. On April 25, 2006, a third party requested *ex*

*parte* reexamination of the issued claims. During reexamination, Novartis amended all of the

asserted claims in response to numerous rejections. The *ex parte* reexamination certificate issued

on December 22, 2009.

### C.   The Breadth of the '688 Patent Claims

The '688 patent claims cover extremely broad genera of polypeptides and cell types that

extend far beyond the '688 patent specification's disclosure of a single plasmid used in a single

cell line to transiently express a single protein.

Independent claims 1 and 4 are illustrative of the breadth of the claims. Italicized words

were added in reexamination; overly broad terms discussed in this motion are shown in red.

> 1. A *non-human mammalian host cell expression system for improved expression comprising a **non-human mammalian host cell** with a* vector for expression of a polypeptide in a mammalian cell comprising a first polynucleotide sequence that comprises:
>
> a) an upstream SV40 origin of replication;
>
> b) a downstream SV40 polyadenylation region;
>
> c) a transcription regulatory region from human cytomegalovirus immediate early region HCMV IE1, wherein the transcription regulatory region includes the first HCMV IE1 intron proximal to the 3' end of the HCMV IE1 promoter, is interposed between the SV40 origin of replication and the SV40 polyadenylation region, and is capable of directing the transcription of a polypeptide coding sequence operably linked downstream from the transcription regulatory region, *and*
>
> d) *the polypeptide coding sequence encoding a **heterologous polypeptide** operably linked downstream of the transcription regulatory region.*

Claim 4 is similar, but even broader as to the scope of the polypeptide: it simply claims "**a**

**polypeptide coding sequence**" – *any* polypeptide coding sequence.

These claims cover an untold number of known and unknown mammalian, plant, fungal,

bacterial, and viral polypeptides, regardless of structure.   Indeed, Novartis contends that they

cover even laboratory-engineered complex polypeptides such as Defendants' humanized

antibodies.  Claim 1's "non-human mammalian host cell" embraces every tissue type from every

non-human mammal, including, as discussed below, muscle, tail, pancreas, kidney, intestinal

wall, eye, liver, parotid gland, spleen, and brain.

## IV.   ARGUMENT: THE CLAIMS IN SUIT ARE INVALID FOR LACK OF WRITTEN DESCRIPTION BECAUSE THEY ARE FAR BROADER THAN THE SPECIFICATION'S DISCLOSURE

The Court should grant summary judgment invalidating the asserted claims in suit

because the undisputed facts show that the claims are far broader than the one plasmid vector the

applicants actually described.  The inventors did not "convey with reasonable clarity to those

skilled in the art that, as of the filing date sought," they were "in possession of the invention,"

nor did they "demonstrate [possession] by disclosure in the specification of the patent."

*Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1348 (Fed. Cir. 2011) (*quoting*

*Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008)).

In the '688 patent, each of the asserted claims recites a large "genus" of polypeptides  –

with one, claim 4, claiming all polypeptides  – based on the disclosure of a single HCMV vector

and expression experiment.  Claim 1 and its dependent claims similarly universalize from one

cell type to all non-human mammalian cells.  A patent applicant fails the written description

requirement when claiming broad genera such as these unless the specification shows that she

"has invented species sufficient to support a claim to a genus." *Ariad*, 598 F.3d at 1349; *see*

*Carnegie Mellon Univ.*, 541 F.3d at 1122, 1126 (affirming judgment of invalidity for lack of

written description; "the narrow disclosure of the [single disclosed] gene is not representative of and fails to adequately support the entire claimed genus."). Indeed, adequate written description "require[s] the identification of 'sufficient species' to show that the totality of a claimed genus was invented and disclosed." *Boston Sci. Corp. v. Johnson & Johnson, Inc.*, 679 F. Supp. 2d 539, 558 (D. Del. 2010) (Robinson, J.) (*citing Carnegie Mellon Univ.*, 541 F.3d 1126) (granting plaintiff's motion for summary judgment of invalidity based on 35 U.S.C. § 112), *aff'd* 647 F.3d 1353 (Fed. Cir. 2011).

Alternatively, instead of sufficient representative species, the specification may disclose structural features common to the members of the genus so that a person of ordinary skill in the art can "visualize or recognize" the members of the genus. *Ariad*, 598 F.3d at 1350 (*quoting Regents of Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1568-69 (Fed. Cir.1997)). Where there is substantial variation within the genus, the specification must describe a sufficient variety of species to reflect the variation within the genus. *Carnegie Mellon Univ.*, 541 F.3d at 1124 (affirming summary judgment of invalidity for lack of written description because "the generic claims [were] not limited to a single bacterial species, but broadly encompass[ed] coding sequences originating from *any* bacterial species.").

The '688 patent's limited disclosure does not meet either of these standards. In particular:

- Nothing in the single example of the expression of a single polypeptide supports the claims' expansive coverage of all polypeptides; and

- Nothing in the single example's use of COS 7 cells supports the claims' extremely broad coverage of every "non-human mammalian host cell."

Where, as here, the facts are not in dispute, written description may be resolved on summary judgment. *Univ. of Rochester*, 358 F.3d at 927 (affirming summary judgment based on determination that patent was invalid for lack of adequate written description); *see also, e.g.,*

*ButaMax™ Advanced Biofuels LLC v. Gevo, Inc.*, --- F. Supp. 2d ---, 2013 WL 1137182, at *18 (D. Del. Mar. 19, 2013) (Robinson, J.) (granting summary judgment for lack of written description); *Helicos Biosciences Corp. v. Illumina, Inc.*, 888 F. Supp. 2d 519, 530-31 (D. Del. 2012) (Robinson, J.) (same).

### A.  The '688 Patent's Specification Does Not Support The Genus of Claimed Polypeptides

The asserted claims cover, variously, all "polypeptides," "heterologous polypeptides," "mammalian polypeptides," and "heterologous mammalian virus polypeptides." As discussed above, the scope of coverage by these claim terms is enormous, embracing every plant, animal, fungal, bacterial, and viral protein under the sun – untold numbers of possible proteins. Novartis even asserts that these terms cover engineered, laboratory-generated proteins. The support for this broad coverage is singularly narrow: the specification's sole example is expression of HIV protein gp120 in plasmid pCMV6ARV120tpa. *See* D.I. 452, JA00074, at col. 27, l. 65-col. 28, l. 45.

Scientific literature, including the inventors' own research, demonstrates that this single example is insufficient to support claims to expression of all possible polypeptides. Indeed, named inventor Dr. Barbara Chapman published experimental results in 1991 showing that the purported invention does not increase expression of one commonly used protein, tissue plasminogen activator ("t-PA") but instead, significantly decreases its expression. The results below show that the vector disclosed in the patent (labeled "CMVIE1") achieved only 29% of the t-PA expression level that was achieved by the prior art pSV7d plasmid vector (labeled "SV40E"):

| Enhancer Promoter | Plasmid Construction | | Coding Sequence | Assay Value | Expression Level % of Maximum | No. of Expts. | References Plasmid Name |
|---|---|---|---|---|---|---|---|
| | 5' Untrans. Sequence | Signal Peptide | | | | | |
| SV40E | SV40/t-PA | t-PA | t-PA | ng t-PA/mL 55.0 | 100 | 1 | pSV7dtPA3 |
| CMVIEI | IE1Dsmth/t-PA | t-PA | t-PA | 17.0 | 31 | 1 | pCMV5stPA3 |
| CMVIEI | IE1/t-PA | t-PA | t-PA | 16.1 | 29 | 1 | pCMV6stPA3 |

**Table II.** Effect of intron A on expression of FVIII, HIV and tPA glycoproteins

In that publication, Dr. Chapman and her co-authors (some of whom were also named '688 patent inventors) commented, "Not all cDNAs [polypeptide coding sequences] behave the same way in these vectors." Ex. 4, Chapman et al., "Effect of intron A from human cytomegalovirus (Towne) immediate-early gene on heterologous expression in mammalian cells," *Nucleic Acids Res.* 19(14):3979-3986, 3985 (1991) ("Chapman 1991").



REDACTED



"A patentee of a biotechnological invention cannot necessarily claim a genus after only

describing a limited number of species because there may be unpredictability in the results

obtained from species other than those specifically enumerated." *Noelle v. Lederman*, 355 F.3d

1343, 1350 (Fed. Cir. 2004); *see also In re Alonso*, 545 F.3d 1015, 1020-21 (Fed. Cir. 2008)

(single disclosed antibody species insufficiently representative to provide adequate written

description for the claimed genus). REDACTED

REDACTED

In *Eli Lilly*, the court ruled that a narrow disclosure like the single example in this case

was inadequate to support broad claims to vertebrate and mammalian insulin cDNAs where the

patent disclosed only a rat insulin cDNA.  119 F.3d at 1568-69 ("In claims to genetic material,

however, a generic statement such as 'vertebrate insulin cDNA' or 'mammalian insulin cDNA,' without more, is not an adequate written description of the genus ….").  Likewise, *Carnegie Mellon* affirmed summary judgment invalidating claims for lack of written description where "the narrow specifications of the [patents-in-suit] only disclose[d] the [pol A] gene coding sequence from *one* bacterial source" but claimed "coding sequences originating from *any* bacterial species."  541 F.3d at 1123-25 (emphasis added); *see also In re Alonso*, 545 F.3d at 1021 (sustaining the USPTO's rejection of a claim for lack of written description, when "the one compound disclosed by Alonso cannot be said to be representative of a densely populated genus").

The following table compares these cases to the polypeptide elements in this case.

| Case/ Claim No. | Claimed | Disclosed | Disposition |
|---|---|---|---|
| *Eli Lilly* | A recombinant plasmid containing the insulin gene "of a vertebrate" | Plasmid containing the insulin gene from **one** vertebrate: rat | Found invalid for lack of written description |
| *Carnegie Mellon* | A recombinant plasmid containing the pol A gene "from a bacterial source" | Plasmid containing the pol A gene from **one** bacterial species: *E. coli* | Found invalid for lack of written description |
| *Alonso* | A monoclonal antibody that would bind to the neurofibrosarcoma of a patient (of "said human") | A **single** monoclonal antibody that bound to a **particular** neurofibrosarcoma cell of a **particular** patient | USPTO's final rejection affirmed for lack of written description |
| Novartis's claims 1, 2, 6, 8 | A "heterologous polypeptide" (*i.e.*, any protein from any species, except a single HCMV protein) | **One** HIV (viral) polypeptide (gp120) | Should be found invalid for lack of written description |
| Novartis's claim 4 | A "polypeptide" (*i.e.*, any protein from any species) | **One** HIV (viral) polypeptide (gp120) | Should be found invalid for lack of written description |
| Novartis's claims 13, 14, 17 | A "mammalian polypeptide" or a "heterologous mammalian viral polypeptide" (*i.e.*, any protein from any species of mammal or any virus that infects any mammal) | **One** HIV (viral) polypeptide (gp120) | Should be found invalid for lack of written description |



REDACTED

**REDACTED**

**REDACTED**   Dr. Sodroski's testimony underscores that the '688 specification requires a person of ordinary skill in the art to engage in "guesswork" to determine whether the claimed construct would have a positive, negative, or neutral effect on expression. This kind of guesswork is precisely what Section 112 forbids. *Boston Sci. Corp. v. Johnson & Johnson, Inc.,* 647 F.3d 1353, 1361 (Fed. Cir. 2011) (approving the District Court's analysis that a written description is inadequate "even if it allows one of skill to 'guess and check' what [] could potentially work.").

Further, despite Novartis's claim that the '688 patent covers humanized antibodies, the '688 patent specification does not disclose production of any antibodies (using HCMV or otherwise), and certainly does not disclose production of humanized antibodies, which are engineered, not found in nature. In *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1251, 1255 (Fed. Cir. 2004), the court observed that the first publication to disclose humanized antibodies did not occur until May 1986 and reasoned that Chiron scientists, by definition, could not have possession of technology that did not yet exist. That analysis is highly relevant here, as most of the specification of the '688 patent derives from filings that predated May 1986. Because there is nothing in the '688 patent specification to suggest that the inventors were in possession of a system that could express antibodies – and certainly not the complex humanized antibodies of Soliris® and Tysabri®, which did not even exist as of Novartis's claimed priority date of December 1987 – the claims are invalid for lack of written description. *Billups-Rothenberg, Inc.*

*v. Associated Regional and Univ. Pathologists, Inc.*, 642 F.3d 1031, 1037 (Fed. Cir. 2011) ("the

eventual discovery of only one species – the C282Y mutation – within the claimed genus does

not constitute adequate written description of that genus"); *Carnegie Mellon Univ.*, 541 F.3d at

1123-25; *In re Alonso*, 545 F.3d at 1021; *Eli Lilly*, 119 F.3d at 1568-69.

**B.      The '688 Patent's Specification Does Not Support Claim 1's Broad Genus of
"non-human mammalian host cell[s]"**

Asserted claim 1 and its dependent claims 2, 6, and 8 include the element "non-human

mammalian host cell" in a "host cell expression system for improved expression."  These claims

are invalid because they extend far beyond the applicants' single-example disclosure.

*Novozymes A/S v. DuPont Nutrition Biosciences APS*, --- F.3d ---, 2013 WL 3779376, at *7, *11

(Fed. Cir. July 22, 2013) ("[C]laims added during prosecution must find support sufficient to

satisfy § 112 in the written description of the original priority application."); *Fiers v. Revel*, 984

F.2d 1164, 1171 (1993) ("Claiming all DNA's that achieve a result without defining what means

will do so is not in compliance with the description requirement; it is an attempt to preempt the

future before it has arrived.").  The '688 patent specification does not suggest that the inventors

had any reason to believe that they had invented a "host cell expression system" that would

work, much less function to obtain "improved expression," in all "non-human mammalian host

cells."

Named inventor Dr. Chapman's own post-application publication demonstrates that

expression levels varied widely in different cell types and different tissue types, and sometimes

***did not work at all***.  Ex. 6, Mikkelsen et al., "Expression of a Cytomegalovirus IE-1–Factor VIII

cDNA Hybrid Gene in Transgenic Mice," *Transgenic Research,* 1(4):164-169 (1992).

Specifically, Dr. Chapman (a Mikkelsen co-author), found that the claimed HCMV sequences

drove "high" expression in mouse muscle cells; "relatively low" expression in mouse tail,

pancreas, kidney, intestinal wall, and eye cells; and "no expression" in mouse liver, parotid gland, spleen, and brain cells. *Id.* at 165. Similarly, in another article, Dr. Chapman stated, "*We conclude that no host/vector combination is likely to be universal* for good glycoprotein expression ...." Ex. 4, Chapman 1991 at 3985 (emphasis added). Dr. Chapman's own publications demonstrate that describing a successful experiment in a single cell type for transient expression is "not an adequate substitute for describing a variety of materials constituting the genus and showing that one has invented a genus and not just a species." *Ariad,* 598 F.3d at 1350.

In fact, the specific monkey cell type the inventors used – COS 7 – was engineered to produce an SV40 viral protein, T antigen, that interacts with the SV40 origin sequence to cause replication. The inventors included the SV40 ori sequence in plasmid pCMV6a120tpa, and it is required by every one of the vector claims in suit. The interaction between COS 7 cells and plasmid pCMV6a permitted rapid extrachromosomal replication of the vector, but only in certain specially engineered cell types, REDACTED



Because the inventors only disclosed a cell type engineered to produce T antigen for use with the claimed HCMV plasmid vectors, there was no written description to support the broad genus of "non-human mammalian host cells" required by claim 1 and its dependents.  Novartis's argument that the '688 patent claims also cover vector DNA that has been stably integrated into any host cell only exacerbates the overbreadth of the asserted claims, given the single example of an HCMV vector in an indisputably transient system.



Accordingly, the asserted claims should be found invalid for lack of written description.

## V.    CONCLUSION

The breadth of the claims runs afoul of the requirement that the applicant "'convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention,' and demonstrate that by disclosure in the specification of the patent." *Carnegie Mellon Univ.*, 541 F.3d at 1122 (*quoting Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991)).

Accordingly, the claims asserted in this lawsuit are invalid for lack of written description and defendants are entitled to summary judgment of invalidity.

Respectfully submitted,

Dated: August 16, 2013

/s/ Brian E. Farnan
Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
bfarnan@farnanlaw.com

*Counsel for Alexion Pharmaceuticals, Inc.*

*Of Counsel*:

Gerald J. Flattmann, Jr.
David M. Conca
Anthony Michael
Paul, Hastings, Janofsky & Walker LLP
Park Avenue Tower
75 E. 55th Street
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

By: /s/ Benjamin Schladweiler
    Collins J Seitz Jr. (Bar No. 2237)
    Benjamin Schladweiler (Bar No. 4601)
    SEITZ ROSS ARONSTAM & MORITZ LLP
    100 South West Street
    Wilmington DE 19801
    Tel. (302) 576-1601
    cseitz@seitzross.com

    *Attorney for Defendant Biogen Idec Inc.*

*Of counsel:*

Donald R. Ware
dware@foleyhoag.com
Claire Laporte
claporte@foleyhoag.com
Jeremy A. Younkin
jyounkin@foleyhoag.com
Sarah S. Burg
sburg@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts  02210
Phone:  (617) 832-1000

August 16, 2013