IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOVARTIS VACCINES AND DIAGNOSTICS, INC., AND NOVARTIS PHARMA AG, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 11-084-SLR-MPT |
| v. | ) ) ) | |
| MEDIMMUNE, LLC, BIOGEN IDEC, INC., AND ALEXION PHARMACEUTICALS, INC., | ) ) ) | REDACTED PUBLIC VERSION |
| Defendants. | ) ) | |

**NOVARTIS PHARMA AG'S MEMORANDUM IN OPPOSITION TO BIOGEN IDEC INC.'S MOTION TO DISMISS NOVARTIS PHARMA AG FOR LACK OF SUBJECT MATTER JURISDICTION**

Steven J. Balick (#2114)
Tiffany Geyer Lydon (#3950)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
tlydon@ashby-geddes.com
amayo@ashby-geddes.com

*Of Counsel:*

Thomas P. Steindler
Charles J. Hawkins
Raymond M. Gabriel
MCDERMOTT, WILL & EMERY LLP
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8000

*Attorneys for Plaintiff
Novartis Pharma AG*

Dated: August 29, 2013

## TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................................1

II.  NATURE AND STAGE OF THE PROCEEDINGS .........................................................2

III.  ARGUMENT ......................................................................................................................3

    A.  THE EXCLUSIVE LICENSE AGREEMENT GRANTS PHARMA THE EXCLUSIVE RIGHTS TO PRACTICE THE '688 PATENT IN TWO FIELDS OF USE ....................................................................................................................3

    B.  PHARMA HAS STANDING TO SUE AS AN EXCLUSIVE LICENSEE ...........5

        1.  Pharma Has Beneficial Ownership of NVD's Proprietary Rights in the '688 Patent in the Fields of Use ....................................................................5

        2.  Pharma's Exclusive License Confers an Exclusionary Right Arising From the '688 Patent ............................................................................................9

        3.  Tysabri's Dual Use as an MS Drug and a Crohn's Disease Drug Is Not Relevant For Standing..............................................................................11

        4.  Biogen's Argument That the Exclusive Patent License Agreement Conveyed Only a Right to Sue Is Without Merit.....................................133

    C.  THE EXCLUSIVE LICENSE AGREEMENT DOES NOT VIOLATE THE NY CHAMPERTY STATUTE ..................................................................................16

IV.  CONCLUSION................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.,*
  604 F.3d 1354 (Fed. Cir. 2010) ................................................................. 7, 8

*Aronson v. Quick Point Pencil Co.,*
  440 U.S. 257 (1979) ................................................................................. 18

*Biotech. Indus. Org. v. District of Columbia,*
  496 F.3d 1362 (Fed. Cir. 2007) ................................................................. 18

*Crown Die & Tool Co. v. NYE Tool & Machine Works,*
  216 U.S. 24 (1923) ................................................................................... 16

*DDB Techns., LLC v. MLB Advanced Media,*
  517 F.3d 1284 (Fed. Cir. 2008) ................................................................. 18

*Diodem, LLC v. Lumenis Inc.,*
  No. CV03-2142 GAF (RCx), 2005 U.S. Dist. LEXIS 46865 (C.D. Cal. Sept. 14, 2005) ........ 16

*Discovery Rights, Inc. v. Avon Prods, Inc.,*
  182 U.S.P.Q. (BNA) 396 (N.D. Ill. 1974) ................................................. 14

*Evident Corp. v. Church & Dwight, Co.,*
  399 F.3d 1310 (Fed. Cir. 2005) ................................................................. 6

*Indep. Wireless Tel. Co. v. Radio Corp. of America,*
  269 U.S. 459 (1926) ......................................................................... passim

*Int'l Gamco, Inc. v. Multimedia Games,*
  504 F.3d 1273 (Fed. Cir. 2007) ................................................................. 12

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal.,*
  248 F.3d 1333 (Fed. Cir. 2001) ................................................................. 5

*Intuitive Surgical, Inc. v. Computer Motion, Inc.,*
  214 F. Supp. 2d 433 (D. Del. 2002) ................................................ 6, 8, 10

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.,*
  240 F.3d 1016 (Fed. Cir. 2001) ................................................................. 7

*Morrow v. Microsoft Corp.,*
  499 F.3d 1332 (Fed. Cir. 2007) ..................................................... 6, 7, 16

*Ortho Pharm. Corp. v. Genetics Inst.,*
  52 F.3d 1026 (Fed. Cir. 1995) .......................................................... passim

*Prima Tek II, LLC v. A-Roo Co.,*
  222 F.3d 1372 (Fed. Cir. 2000) ............................................................ 7, 16

*Propat Int'l Corp. v. RPost, Inc.,*
  473 F.3d 1187 (Fed. Cir. 2007) ................................................................. 5

*Refac Int'l, Ltd. v. Lotus Dev. Corp.,*
  131 F.R.D. 56 (S.D.N.Y. 1990) ................................................................. 17

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995)............................................................................5, 7, 8, 17

*SGS-Thomson Microelecs., Inc. v. Int'l Rectifier Corp.*,
  Nos. 93-1386, 1409 WL 374529 (Fed. Cir. July 14, 1994).....................................14

*Speedplay, Inc. v. Bebop, Inc.*,
  211 F.3d 1245 (Fed. Cir. 2000)..............................................................................13

*Sulzer Textil A.G. v. Picanol N.V.*,
  No. 6:00cv279, 2002 U.S. Dist. LEXIS 27197 (E.D. Tex. March 12, 2002)...........14

*Textile Prods., Inc. v. Mead Corp.*
  134 F.3d 1481 (Fed. Cir. 1998)..............................................................................7, 8

*Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*,
  411 F.3d 1369 (Fed. Cir. 2005)..............................................................................18

*Univ. of Colo. Found., Inc., v. Am. Cynamid Co.*,
  342 F.3d 1298 (Fed. Cir. 2003)..............................................................................18

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
  944 F.2d 870 (Fed. Cir. 1991)................................................................................7

*Waterman v. Mackenzie*,
  138 U.S. 252 (1891)........................................................................................passim

*Western Elec. Co. v. Pacent Reproducer*,
  42 F.2d 116 (2d Cir. 1930)....................................................................................8

*WiAV Solutions LLC v. Motorola, Inc.*,
  631 F.3d 1257 (Fed. Cir. 2010).....................................................................5, 6, 8, 13

**Statutes**

35 U.S.C. § 100(d) ................................................................................................5

35 U.S.C. § 271(a) ...............................................................................................5

35 U.S.C. § 281 ...............................................................................................5, 17

35 U.S.C. 154(a)(1)..............................................................................................8

N.Y. Judiciary Law § 489 ....................................................................................17

## I.      INTRODUCTION

Biogen's motion to dismiss for an alleged lack of standing should be denied.  Novartis Pharma AG ("Pharma") has standing to sue Biogen by virtue of its exclusive license with Novartis Vaccines and Diagnostics, Inc. ("NVD"), the owner of the '688 patent.  The license grants Pharma exclusive rights to: (1) make, use, sell, offer to sell, and import the invention claimed in the '688 patent in Fields of Use, defined as the making of pharmaceutical products used to treat multiple sclerosis or eye disease; (2) sublicense the patent in the Fields of Use; and (3) enforce the '688 patent in the Fields of Use.  These are the classic indicia of an exclusive license sufficient to confer standing under the Patent Act and well-established Supreme Court and Federal Circuit caselaw.

Biogen makes three arguments for why Pharma allegedly lacks standing.  Each is without merit.  First, relying on *Ortho Pharmaceutical Corp. v. Genetics Institute*, 52 F.3d 1026 (Fed. Cir. 1995), Biogen contends that because the exclusive license is allegedly "limited to a field defined by the unpatented use of pharmaceutical end products," the license fails to confer an exclusionary right "arising from the patent" and thus fails to confer standing to assert an infringement claim under that patent.  Biogen Mem. at 3.  Not so. In *Ortho*, the plaintiff admitted it did *not* have an exclusive license to practice the patent.  Nonetheless, the plaintiff claimed its right to sell unpatented EPO product abroad, outside the patent's territorial reach, was an exclusive field of use sufficient to confer standing.  The court rejected this argument, finding that overseas sales were unrelated to the patent and that, because Ortho had no exclusive rights arising from the patent, it had no standing.  By contrast, Pharma's license grants ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, the license grants Pharma an exclusive right, directly arising under the '688 patent, *to practice the claimed invention* in these

fields, not simply a right to sell unpatented products abroad.  The exclusive right to practice the claimed invention in these fields confers standing.

Second, Biogen argues that Pharma's exclusive license does not confer standing because it is a mere "right to sue" agreement.  Under federal law, the standing analysis examines the *grant* of rights, not whether the licensee is practicing the patent.  Biogen's argument fails in light of the undisputed facts establishing that the exclusive license is far more than the assignment of a right to sue.  The license grants Pharma the ███████████████████████████████ ███████████████████████████████████████████████████████ ████████████  These rights provided Pharma freedom to operate in ███████████████ ███████████████████████████████████████████  at a time when Pharma was engaged in a collaboration with a third party, Lonza, to develop pharmaceutical products using the technology claimed in the '688 patent.

Third, Biogen claims the exclusive license is void under New York champerty law.  Here too, Biogen's argument fails because (1) it ignores the full scope of the rights granted in the exclusive license and seeks to limit the agreement to a bare right to sue, which it is not, and (2) if the New York champerty law is interpreted to vitiate Pharma's right to sue, it is preempted by federal patent law.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

NVD filed the original complaint in this patent infringement suit against Biogen and other defendants on January 26, 2011.  D.I. 1.  On July 12, 2012, NVD and Pharma executed an "Exclusive Patent License Agreement," with an effective date of July 1, 2012 ("Exclusive

License Agreement" or "Agreement"). Ex. 1.[1]  NVD moved for leave to add Pharma as a co-plaintiff, given Pharma's new status as a necessary party.  D.I. 158; D.I. 406; *see Indep. Wireless Tel. Co. v. Radio Corp. of America*, 269 U.S. 459 (1926).  NVD filed an unopposed motion to amend the complaint on July 18, 2012.  D.I. 161.

On April 24, 2013, NVD and Pharma moved for leave to file a second amended complaint to clarify that Pharma was seeking relief only against Biogen.  D.I. 417.  Biogen opposed the motion, alleging that certain claims against it were futile, not that Pharma lacked standing.  D.I. 424.  The Court rejected Biogen's opposition and granted the motion on July 22, 2013.  D.I. 449.  NVD and Pharma filed their second amended complaint on July 23, 2013.  D.I. 451.  Biogen subsequently filed its motion to dismiss Pharma on August 5, 2013.  D.I. 566.

## III.   ARGUMENT

### A.   THE EXCLUSIVE LICENSE AGREEMENT GRANTS PHARMA THE EXCLUSIVE RIGHTS TO PRACTICE THE '688 PATENT IN TWO FIELDS OF USE

The Exclusive License Agreement recites that NVD, the owner of certain patent rights related to recombinant protein expression, ████████████████████████████████

████████████████████████████████  The Agreement identified Pharma

as "████████████████████████████████

████████████████████████████████████████

████████████████████████████████          *Id.*

      ████████████████████████████████

---

[1] References to Ex. __ refer to the exhibits to the Declaration of Raymond M. Gabriel in support of Pharma's Opposition filed concurrently herewith.



The Agreement defines ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████ The Agreement further defines "████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████ The Agreement defines ██████████████████████

█████████████████████

The Agreement further provides for and defines ████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████ The Agreement also provides that Pharma

████████████████████████████████████████████

█████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

## B.    PHARMA HAS STANDING TO SUE AS AN EXCLUSIVE LICENSEE

### 1.    Pharma Has Beneficial Ownership of NVD's Proprietary Rights in the '688 Patent in the Fields of Use

Under the Patent Act, a patent grants the patentee the right to exclude others from making, using, selling, or offering to sell the patented invention within the United States, as well as the right to exclude others from importing a patented invention into the United States. 35 U.S.C. § 271(a).  Because the Patent Act creates the legally protected interests in dispute, the right to assert infringement of those interests comes from the Act itself.  *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal*., 248 F.3d 1333, 1345 (Fed. Cir. 2001).

The Act provides that a "patentee" has the right to initiate a "civil action for infringement of [its] patent."  35 U.S.C. § 281.  The term "patentee" encompasses both the owner of the patent and the assignee of all substantial rights in the patent.  *See* 35 U.S.C. § 100(d).  The Federal Circuit has long held that a party has standing to sue for infringement of the patent "if that party has a legally protected interest in the patent created by the Patent Act, so that it can be said to suffer legal injury from [the] act of infringement."  *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010) (citing *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007) (internal citation omitted)).  Such a party is commonly referred to as an "exclusive licensee."  *WiAV*, 631 F.3d at 1264; *see also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995) (en banc) ("Under certain circumstances, a licensee may possess sufficient interest in the patent to have standing to sue as a co-plaintiff with the patentee.").  Accordingly, the touchstone of constitutional standing is whether a party can establish it has an exclusionary right in a patent that, if violated by another, would cause the party holding the

exclusionary right to suffer legal injury. *WiAV*, 631 F.3d at 1265; *Intuitive Surgical, Inc. v. Computer Motion, Inc.*, 214 F. Supp. 2d 433, 439-40 (D. Del. 2002).

The Exclusive License Agreement grants Pharma rights as an exclusive licensee sufficient to confer standing to sue Biogen in this case. First, NVD conveyed to Pharma the ███████████████████████████████████████████ ████████████████████████████████ This is one of the classic indicia of constitutional standing that evidences the right to exclude others from doing the same. *Indep. Wireless*, 269 U.S. at 468 (exclusive license to make, use and vend the invention conveys right to sue infringers); *Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891) (transfer of the exclusive right under a patent vests in the assignee a title in so much of the patent itself, with a right to sue infringers); *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007) ("Parties that hold the exclusionary rights [under a patent] are often identified as exclusive licensees, because the grant of an exclusive license to make, use, or sell the patented invention carries with it the right to prevent others from practicing the invention."); *Evident Corp. v. Church & Dwight, Co.*, 399 F.3d 1310, 1313-14 (Fed. Cir. 2005) ("Here, there can be no dispute that Evident had constitutional standing to bring its suit. Evident had certain significant rights to the patent, in particular, the right to make, use, and sell the patented dentifrice composition for human oral use, as well as the right to grant sublicenses. Thus, it would be injured by any party that made, used, or sold that patented composition.").

The Exclusive License Agreement also grants Pharma ███████████████████ ████████████████████████████████. The right to ███████ the '688 patent is further evidence that Pharma possesses the exclusionary rights required to confer constitutional standing. *Morrow*, 499 F.3d at 1342 ("[T]he right to license third parties is an important patent

right because implicit in the right to exclude is the right to waive that right; that is, to license activities that would otherwise be excluded.") (citing *Textile Prods., Inc. v. Mead Corp*. 134 F.3d 1481, 1485 (Fed. Cir. 1998) and *Prima Tek II, LLC v. A-Roo Co*., 222 F.3d 1372, 1379 (Fed. Cir. 2000)). That NVD must ████████████████ has no effect on Pharma's exclusionary rights and its standing to enforce those rights. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 (Fed. Cir. 1991) ("The sublicensing veto was a minor derogation from the grant of rights. It did not substantially interfere with the full use of Vaupel of the exclusive rights under the patent . . . .").

Pharma's right to ██████████████████████████  ████████████████████████████████████ *Indep. Wireless*, 269 U.S. at 469; *Waterman*, 138 U.S. at 255; *Rite-Hite Corp.*, 56 F.3d at 1552. Biogen acknowledges Pharma has been granted ██████████ – indeed, its motion rests on the allegation that ██████████████████████████████ ██████████████████████████████████ *Indep. Wireless*, 269 U.S. at 468; *Waterman*, 138 U.S. at 255; *Morrow,* 499 F.3d at 1340. It is further evident in Pharma's ████████████████████████ ████████████████████████████████████ ████████████████████████████ ██████████████████ *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1361 (Fed. Cir. 2010) ("[T]he nature and scope of the licensor's retained right to sue accused infringers is the most important factor in determining whether an exclusive license transfers sufficient rights to render the licensee the owner of the patent."); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1018 (Fed. Cir. 2001).

Pharma's proprietary rights arising from the Exclusive License Agreement thus include the exclusive rights to ███████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

These rights are sufficient to confer standing on Pharma.  *Indep. Wireless*, 269 U.S. at 469; *Waterman*, 138 U.S. at 255; *Rite-Hite Corp.*, 56 F.3d at 1552; *WiAV*, 631 F.3d at 1267; *Alfred E. Mann Found.*, 604 F.3d at 1354; *Textile Prods.*, 134 F.3d at 1481; *Intuitive Surgical*, 214 F. Supp. 2d at 439-40.

The Federal Circuit has specifically held that exclusive field of use licenses, such as the Exclusive License Agreement, confer standing.  In *Textile Productions*, the court stated:

> Because patent rights are rights to "exclude others," *see* 35 U.S.C.
> § 154(a)(1), a licensee is an exclusive licensee only if the patentee has
> promised, expressly or impliedly, that "others shall be excluded from
> practicing the invention" within the field covered by the license.  *Rite-
> Hite*, 56 F.3d at 1552.  Put another way, an exclusive license is "a license
> to practice the invention . . . accompanied by the patent owner's promise
> that others shall be excluded from practicing it within the field of use
> wherein the licensee is given leave."  *Western Elec. Co. v. Pacent
> Reproducer*, 42 F.2d 116, 118 (2d Cir. 1930)

134 F.3d at 1484.  In *WiAV*, the Federal Circuit applied this principle to hold that an exclusive licensee in a specific field of use had standing to assert an infringement claim for unauthorized use of the licensed invention within the field of use.  631 F.3d at 1267.  The court found this to be the case even where the license was subject to rights in existence at the time of the license and also to future licenses that may be granted only to parties other than the accused.  *Id.; see also Intuitive Surgical*, 214 F. Supp. 2d at 439-40 (finding exclusive license in field of use sufficient to confer standing notwithstanding the retention of right by licensor to practice the patent for research and development purposes).

*WiAV* is controlling here.  Moreover, unlike the circumstances in *WiAV*, Pharma did not take these rights subject to any existing rights at the time of the license or to any future licenses that may be granted by NVD, which strengthens the conclusion that Pharma has standing.

In short, under an unbroken line of Supreme Court and Federal Circuit cases dating back to the 19th Century, exclusive licenses containing the terms included in Pharma's Exclusive License Agreement have been found sufficient to confer standing on the licensee.  There is no authority – none whatsoever – to the contrary.

**2.     Pharma's Exclusive License Confers an Exclusionary Right Arising From the '688 Patent**

In an effort to bring this case within the scope of the Federal Circuit's *Ortho* decision, Biogen contends that "[b]ecause the Pharma Agreement is limited to a field defined by the unpatented use of pharmaceutical end products the agreement fails to confer an exclusionary right 'arising from the patent.'"  Biogen Mem. at 3; *see also id.* at 8-13.  Biogen is simply wrong. The Exclusive License Agreement grants Pharma an exclusive right to ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ thus conferring an exclusive right *arising from the '688 patent*.

That the ████████████████████████████████████████████████ ██████████████████████████. ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████. Thus the license confers a proprietary interest in the '688 patent to ████████████████████████████████████████████ ████ *Indep. Wireless*, 269 U.S. at 467-468 (holding exclusive licensee's field-of-use grant was

limited to use of the patent invention for commercial radio purposes); *Intuitive Surgical*, 214 F. Supp. 2d at 439-40 (holding exclusive worldwide license to practice the patent in certain surgical fields sufficient to confer standing).  Biogen's argument contradicts the undisputed terms of the Agreement and should be rejected.

Contrary to Biogen's claim, this case is nothing like the facts of the *Ortho* case.  There, Amgen, the patent owner, entered into a product license agreement with Ortho relating to the patent-in-suit, which claimed a product used for the production of erythropoietin (EPO).  52 F.3d at 1028-29.  Amgen sued defendant Genetics Institute for infringement of the patent, and, after trial, the patent was found valid and infringed.  52 F.3d at 1029.  Later, Ortho filed a separate lawsuit against Genetics Institute in the same district court and moved to make Amgen an involuntary plaintiff.  *Id.*  Amgen successfully moved to dismiss Ortho from the suit for lack of standing.  *Id.*  Ortho appealed the district court's ruling that it lacked standing to sue.

On appeal, the Federal Circuit found that Ortho had *admitted* its license from Amgen was *nonexclusive.  Id.* at 1033 ("With respect to patent rights, . . . [i]t is undisputed that that right was nonexclusive inasmuch as Amgen had the right to license others to do the same.").  Ortho had conceded "this point but argues that its additional right to sell EPO abroad . . . is an exclusive field of use . . . which provides standing."  *Id.*  The Federal Circuit rejected this argument:

> Ortho commingles its consent from Kirin-Amgen to sell EPO abroad . . . with the rights it received form Amgen under the U.S. patent to use the '008 technology.  U.S. patent '008 provides no rights resting the product EPO *per se.*  Moreover, a U.S. patent grants rights to exclude others from making, using and selling the patented invention *only in the United States.* . . . With respect to Ortho's right to sell unpatented EPO abroad, the [district] court correctly held that Ortho's right was not a proprietary right arising from the '008 patent.  Indeed, Amgen itself had no right to sell EPO abroad by reason of its obtaining the '008 patent and, thus, could not license that right to Ortho as an incident of patent ownership.  With respect to rights under the '008 patent, Ortho had only a nonexclusive right to use the '008 invention at one location in the United States.  Thus,

> considering only this right, Ortho is a bare, that is, nonexclusive, licensee
> and has no standing to bring or joint a suit for infringement against
> Genetics.

*Id.* at 1033-34 (citations omitted; original emphasis).[2]  Thus, the Federal Circuit found that

because overseas sales are outside the territorial reach of the U.S. patent-in-suit, Ortho's right to

sell the unpatented EPO product abroad was not a proprietary right *arising from the '008 patent*

and thus did not confer standing to sue on the patent.  In sharp contrast, the Exclusive License

Agreement grants Pharma ███████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████ Pharma's

Exclusive License Agreement is nothing like the agreement at issue in *Ortho*, notwithstanding

Biogen's Procrustean effort to chop down the Agreement to fit it into the *Ortho* case.

> **3.**  **Tysabri's Dual Use as an MS Drug and a Crohn's Disease Drug Is Not Relevant For Standing**

Biogen attempts to mask Pharma's exclusive rights with its argument that Tysabri® may

be used to treat multiple sclerosis or Crohn's disease.  Biogen cites no authority for this

proposition other than a law review article that has never been cited by a federal court.  Contrary

to Biogen's argument, the Federal Circuit has recognized that in exclusive field of use licenses, a

---

[2] Although not pertinent to the instant motion, the Federal Circuit in *Ortho* also held that a right to sue clause in Ortho's agreement with Amgen had no effect in that case because (1) Ortho was a nonexclusive licensee and thus lacked a sufficient proprietary interest in the patent to be granted a right to sue, and (2) by failing to join Amgen's original lawsuit against Genetics, Ortho had effectively waived its right to sue because a licensee cannot stand by until a patentee's suit is concluded and then seek to vindicate its rights in a second suit.  *Ortho*, 52 F.3d at 1034-35.

single infringing product may cover more than one field of use.  In *International Gamco, Inc. v.*

*Multimedia Games*, 504 F.3d 1273, 1279 (Fed. Cir. 2007), the court stated:

> In this case, Gamco's exclusive enterprise license limits its rights to lottery
> games, but the '035 patent extends beyond that limitation.  For example, a
> single infringing game system at an NYSL-authorized site could offer
> blackjack, keno, mahjong, and lottery games.  Thus, the single infringing
> act of offering NYSL games might subject the infringer to suit by Gamco
> for the lottery games, and separately by IGT or some other game-specific
> licensee for the other games.

This "threat of multiple suits based on the same allegations of infringement" is the reason that an

exclusive field of use licensee must join with the patentee, *id.*, as is the case here where the

patentee, NVD, is a co-plaintiff with Pharma.

Taking Biogen's argument to its logical conclusion would lead to absurd results.

Consider the simple example of a patent directed to a manufacturing process to make widgets

that can be used for cars and planes, where the patentee exclusively licenses the patent to a

licensee in the field of use for cars.  The infringer initially makes a product covered by the patent

and markets it for cars.  The licensee plainly has standing to enforce the patent against the

infringer in the field of use for cars.  If the infringer later markets for both cars and planes, then

under Biogen's argument, the licensee would lose standing to seek relief against the infringing

manufacturing process to make widgets for cars simply because the infringer also markets for

planes.  The result is inconsistent with applicable case law.  *Int'l Gamco*, 504 F.3d at 1279.  As

long as the accused infringer made some sales for use in cars, the licensee has standing to sue for

relief against that infringing activity, even though other sales might be made for planes.

Biogen's argument should be rejected.

### 4.     Biogen's Argument That the Exclusive Patent License Agreement Conveyed Only a Right to Sue Is Without Merit

Biogen argues that Pharma's Exclusive License Agreement "in substance and in fact" is a mere "right to sue" agreement, which Biogen contends is insufficient to confer co-plaintiff standing. Biogen Mem. at 3, 13-16. The argument, in keeping with Biogen's effort to read the Agreement's explicit grant to Pharma of exclusive rights to practice the '688 patent out of the contract, is without merit.

As noted above, Biogen's argument incorrectly focusses on whether Pharma is practicing the licensed patent rather than the test for standing, i.e., whether substantially all rights under the patent have been granted in the Fields of Use. Biogen cites no case, and Pharma is aware of none, in which a court has undertaken a factual inquiry in a standing analysis to consider whether an exclusive license agreement was "really" a "right to sue" agreement "masquerading as an exclusive patent license agreement." Biogen Mem. at 3, 13. Every case that has addressed the standing of an exclusive licensee, from *Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891) to *WiAV Solutions v. Motorola, Inc.,* 631 F.3d 1257 (Fed. Cir. 2010), has based its constitutional standing analysis on the rights granted, explicitly or implicitly, in the putative exclusive license. *Cf. Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000) (party asserting that it has all substantial rights in a patent "must produce . . . written instrument[s] documenting the transfer of proprietary rights"). No case has ever suggested that the question of whether the licensee actually practiced the invention was relevant to standing or that a court should undertake a factual inquiry beyond the contract's four corners to determine whether the license was a "sham" in order to vitiate rights explicitly granted by the license.

The Federal Circuit has rejected the very argument Biogen now asserts, holding that the "motive or purpose of a patent assignment is irrelevant." *SGS-Thomson Microelecs., Inc. v. Int'l*

*Rectifier Corp.,* Nos. 93-1386, 1409, 1994 WL 374529, at *6-7 (Fed. Cir. July 14, 1994)

(unpublished).  There, the defendant challenged the plaintiff-assignee's standing on the basis that

the assignment was a sham, created so that the plaintiff could sue as a patent owner, without

having to join the original owner.  The assignment was structured so that the patent would revert

back to the original owner at litigation's conclusion.  The district court ruled against the plaintiff

on summary judgment, finding the plaintiff did not have standing to sue by itself.  The Federal

Circuit reversed, stating:

> Finally, the district court erred in granting summary judgment on the
> ground that the assignments of the '127 and '513 patents were shams
> because the sole purpose of the assignment was to facilitate litigation.  In
> so ruling, the trial court ignored the express language in the assignments
> and in effect created a new requirement, not found in any case law, that a
> patent assignment must have an "independent business purpose."  The
> motive or purpose of patent assignment is irrelevant to the assignee's
> standing to enforce the assigned patent.  **Even a motive solely and
> expressly to facilitate litigation "is of no concern to the defendant and
> does not bear on the effectiveness of the assignment."**  *Discovery
> Rights, Inc. v. Avon Prods, Inc.*, 182 U.S.P.Q. (BNA) 396, 398 (N.D. Ill.
> 1974)].
>
> . . .
>
> Thus, for the foregoing reasons, we vacate the district court's grant of
> summary judgment, which was based upon the court's determination that
> SGS lacked standing to enforce the '127 and '513 patents because their
> assignments were sham.

1994 WL 374529 at*  6-7 (emphasis added); *see also Sulzer Textil A.G. v. Picanol N.V.*, No.

6:00cv279, 2002 U.S. Dist. LEXIS 27197, at *10-11 (E.D. Tex. March 12, 2002) (rejecting

argument that a party's license to its U.S. subsidiary "was strictly a sham license used to

exaggerate the damages claims and bias the court proceedings" because "[b]y the terms" of the

license agreement the subsidiary is the exclusive licensee with "standing to sue as a co-plaintiff

with the patentee").  Thus, the type of factual inquiry urged by Biogen – examining extrinsic

evidence to glean the parties' motivation for entering into the Exclusive License Agreement in

order potentially to render void the contact's clear and unambiguous grant of exclusive rights – is

not only unprecedented, it is contrary to more than 100 years of Supreme Court and Federal

Circuit caselaw, and must be rejected.

Even if this were not the case, the facts here do not warrant the judicial negation of the

central provisions of a privately-negotiated contract between corporate affiliates.  At the time

NVD and Pharma entered into the Exclusive License Agreement, Pharma was engaged in a

collaboration with a third party, Lonza, to develop pharmaceutical products using the technology

claimed in the '688 patent. *See* Ex. 2 at 3. ████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████

The Exclusive License Agreement grants Pharma ██████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████ While

Biogen contends that there was no business justification for the license, that is not the case.  To

be sure, Pharma was added as a plaintiff in this litigation shortly after the Exclusive License

Agreement was concluded, but Pharma would have waived its right to bring suit if it had not

joined the lawsuit.  *Ortho*, 52 F.3d at 1035 ("A licensee cannot stand by until a patentee's suit is

concluded and then seek to vindicate its rights in a second suit").

Because the Exclusive License Agreement conveys ████████████████████████████

████████████████████████████████, Biogen's arguments that Pharma has

only a "hunting license for the purpose of litigation" must be rejected.   Biogen's reliance on

*Crown Die & Tool Co. v. NYE Tool & Machine Works*, 216 U.S. 24 (1923), for example, is

fatally flawed for that reason.  As the Supreme Court explained in *Independent Wireless*, *Crown*

*Die & Tool* simply held that a "transfer by an owner of a patent to another, conferring only the

right to sue a third for past and future infringements of the patent, without the right to make, use

and vend the patented article," was insufficient to confer standing.   *Indep. Wireless*, 269 U.S. at

474-75; *see also Diodem, LLC v. Lumenis Inc.*, No. CV03-2142 GAF (RCx), 2005 U.S. Dist.

LEXIS 46865, at *29-36 (C.D. Cal. Sept. 14, 2005) (finding that license which recites that it is

granted for the "sole purpose" of permitting a party to continue litigation is a bare right to sue

that does not confer standing).  By contrast, Pharma has an ████████████████████████

████████████████ so *Crown Die & Tool* – where the right to practice the invention is absent

– is irrelevant.  So too are the statements Biogen cites from *Prima Tek II, Morrow*, and *Ortho* for

the proposition that a bare right to sue is insufficient to confer standing.  Biogen Mem. at 15.

███████████████████████████████████████████████████████████████

███████████████████████████ and thus has standing to exclude others from practicing

the invention in those fields.

## C.  THE EXCLUSIVE LICENSE AGREEMENT DOES NOT VIOLATE THE NY CHAMPERTY STATUTE

For these same reasons, the Exclusive License Agreement is not void under New York's

statute relating to the common law doctrine of champerty.

The New York champerty statute prohibits the bare assignment of a claim for the purpose of bringing a lawsuit.  N.Y. Judiciary Law § 489.  Biogen cites no case, and Pharma is aware of none, where this statute – or any similar law – has been applied to deny standing to an exclusive licensee who has a full panoply of exclusive rights to practice and enforce a patent.  Nor could it, as it would be contrary to more than a century of precedent authorizing exclusive licensees to bring suit against infringers.

The sole case upon which Biogen relies, *Refac International, Ltd. v. Lotus Development Corp.*, 131 F.R.D. 56 (S.D.N.Y. 1990), is inapposite.  In *Refac*, the defendants moved to dismiss for failure to join a necessary party, the 95 percent co-owner of the patent-at-issue.  *Id.* at 57.  The license agreement at issue did not provide the 5% owner with the exclusive right to make, use or sell the technology; instead 5% ownership was granted in exchange for the 5% owner's obligation to sue alleged patent infringers on behalf of the 95% owner.  *Id.*  Moreover, the 95% owner retained substantial rights under the agreement.  *Id.*  The court granted the motion subject to the 5% owner's agreement to join the 95% owner to the lawsuit.  Here, there is no dispute that all the necessary parties are joined in this lawsuit.  The Exclusive License Agreement grants

███████████████████████████████████████████████████████████████

████████████

If the New York champerty statute were interpreted to prohibit Pharma as an exclusive licensee from bringing suit to enforce the '688 patent, the statute would be preempted by the federal patent laws.  The Patent Act provides that a "patentee" has a right to sue for infringement of its patent.  35 U.S.C. § 281.  The Supreme Court and Federal Circuit have long interpreted this term to include exclusive licensees.  *E.g., Waterman v. Mackenzie*, 138 U.S. at 255; *Rite-Hite*, 56 F.3d at 1552.  The right to enforce patents is central to achieving the goals of the federal patent

law: "(1) to foster and reward invention, (2) to stimulate further innovation, and (3) to ensure free use of ideas in the public domain." *Univ. of Colo. Found., Inc., v. Am. Cynamid Co.*, 342 F.3d 1298, 1305 (Fed. Cir. 2003); *see also Biotech. Indus. Org. v. District of Columbia*, 496 F.3d 1362, 1372 (Fed. Cir. 2007).  If New York law is interpreted to deny exclusive licensees the right granted by federal patent law to sue infringers, it would conflict with "the accomplishment and execution of the full purposes and objectives of Congress" and thus be preempted.  *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377 (Fed. Cir. 2005) (*quoting Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979)); *cf. also DDB Techs., LLC v. MLB Advanced Media*, 517 F.3d 1284, 1289-90 (Fed. Cir. 2008) (treating the interpretation of a patent assignment clause as a matter of federal law because it is "intimately bound up with the question of standing in patent cases").

## IV.    CONCLUSION

WHEREFORE, for these and such other reasons as may appear just to the Court, Pharma respectfully submits that Biogen's motion should be denied.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*
_____
Steven J. Balick (#2114)
Tiffany Geyer Lydon (#3950)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
tlydon@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Plaintiff*
*Novartis Pharma AG*

*Of Counsel:*

Thomas P. Steindler
Charles J. Hawkins
Raymond M. Gabriel
MCDERMOTT, WILL & EMERY LLP
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8000

Dated: August 29, 2013

{00780683;v1 }                                      - 18 -