UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

NOVARTIS VACCINES & DIAGNOSTICS, )
INC., and NOVARTIS PHARMA AG, )
                                                                                 )
                Plaintiffs, )
                                              )
v. ) C.A. No. 11-84-SLR-MPT
                                             )
BIOGEN IDEC, INC. and ) **JURY TRIAL DEMANDED**
ALEXION PHARMACEUTICALS, INC., )
                                             )
                Defendants. ) **REDACTED**
                                             )

## ALEXION PHARMACEUTICALS, INC.'S ANSWERING BRIEF IN OPPOSITION TO NOVARTIS VACCINES AND DIAGNOSTICS, INC.'S MOTION TO STRIKE

Date: September 16, 2013

Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com

Gerald J. Flattmann, Jr. (admitted *pro hac vice*)
David M. Conca (admitted *pro hac vice*)
Paul Hastings LLP
Park Avenue Tower
75 E. 55th Street
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Attorneys for Defendant Alexion Pharmaceuticals, Inc.*

# TABLE OF CONTENTS

Page

I.   NATURE AND STAGE OF THE PROCEEDINGS .................................................. 1
II.  SUMMARY OF ARGUMENT ................................................................................. 1
III. STATEMENT OF THE FACTS ................................................................................ 2
IV.  THE RELEVANT LEGAL STANDARDS ............................................................... 5
     A.   Motions to Strike ............................................................................................. 5
     B.   Answering an Amended Complaint ................................................................ 6
     C.   Leave to Amend .............................................................................................. 7
V.   ARGUMENT .............................................................................................................. 8
     A.   Alexion's Defenses Are Proper In Response to Plaintiffs' Second
          Amended Complaint ........................................................................................ 8
          1.   Alexion Was Free to Answer Plaintiffs' Second Amended
               Complaint as if Answering Plaintiffs' Original Complaint ................... 8
          2.   Alexion's Defenses Are Proper in Light of Plaintiffs' Substantive
               Amendments .......................................................................................... 9
     B.   Leave for Alexion to Plead its Defenses is Warranted ................................. 10
          1.   There Has Been No Undue Delay ....................................................... 10
          2.   Novartis Will Suffer No Undue Prejudice from Alexion's
               Amendments ........................................................................................ 12
VI.  CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Calmar, Inc. v. Emson Research, Inc.*,
850 F. Supp. 861 (C.D. Cal. 1994) ................................................................................ 13

*E.E.O.C. v. Morgan Stanley & Co.*,
211 F.R.D. 225 (S.D.N.Y. 2002) ..................................................................................... 9

*E.I. DuPont de Nemours & Co. v. Millennium Chemicals, Inc.*,
No. C.A. 97-237-SLR, 1999 WL 615164 (D. Del. Aug. 2, 1999) ........................... 1, 6, 8

*Elite Entm't, Inc. v. Khela Bros. Entm't*,
227 F.R.D. 444 (E.D. Va. 2005) ..................................................................................... 9

*GSI Grp., Inc. v. Sukup Mfg. Co.*,
No. 05-3011, 2007 WL 757819 (C.D. Ill. Mar. 8, 2007) ................................................ 9

*ICU Med., Inc. v. RyMed Techs., Inc.*,
674 F. Supp. 2d 574 (D. Del. 2009) ................................................................................ 7

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*,
--- F.R.D. ---, 2013 WL 2650206 (D. Del. June 13, 2013) ............................................ 7

*Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*,
50 F.R.D. 415 (D. Del. 1970) ..................................................................................... 6, 7

*Juniper Networks, Inc. v. Palo Alto Networks, Inc.*,
881 F. Supp. 2d 603 (D. Del. 2012) ................................................................................ 5

*Massey v. Helman*,
196 F.3d 727 (7th Cir. 2000) ........................................................................................... 6

*McKesson Info. Solutions LLC v. Trizetto Grp, Inc.*,
426 F. Supp. 2d 203 (D. Del. 2006) .............................................................................. 13

*Nolan v. City of Yonkers*,
No. 92 CIV. 6067 (KMW), 1996 WL 120685 (S.D.N.Y. Mar. 19, 1996) .................... 13

*Pettinaro Enters., LLC v. Cont'l Cas. Co.*,
C.A. No. 09-139-GMS, 2010 WL 4274658 (D. Del. Oct. 29, 2010) ............................ 12

*In re PMTS Liquidating Corp.*,
490 B.R. 174 (D. Del. 2013) ........................................................................................... 7

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Roquette Frères v. SPI Pharma, Inc.*,
  C.A. No. 06-540-GMS, 2009 WL 1444835 (D. Del. May 21, 2009) ............................ 7, 13, 14

*Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*,
  Civ. A. No. 85-463 CMW, 1987 WL 7189 (D. Del. Feb. 5, 1987) ............................................ 6

*Sirona Dental Sys., Inc. v. Dental Imaging Techs. Corp.*,
  Civil Action No. 10-288-GMS, 2012 WL 3929949 (D. Del. Sept. 10, 2012) ........................... 8

*Standard Chlorine of Del., Inc. v. Sinibaldi*,
  Civ. A. No. 91-188-SLR, 1995 WL 562285 (D. Del. Aug. 24, 1995) ............................... 1, 6, 8

*Unigene Labs., Inc. v. Apotex, Inc.*,
  655 F.3d 1352 (Fed. Cir. 2011) ................................................................................................ 9

**Statutes**

35 U.S.C. § 132(a) ............................................................................................................... *passim*

Part II of Title 35 of the United States Code ................................................................................ 3, 12

I. **NATURE AND STAGE OF THE PROCEEDINGS**

Defendant Alexion Pharmaceuticals, Inc. ("Alexion"), respectfully submits this opposition to Plaintiff Novartis Vaccines and Diagnostics, Inc.'s ("Novartis") Motion to Strike Alexion's "(1) Third Affirmative Defense insofar as it references 35 U.S.C. § 132(a),[1] (2) Fourth Affirmative Defense asserting equitable estoppel, and (3) Counterclaim Count II insofar as it references 35 U.S.C. § 132(a)" (collectively "Alexion's Defenses"). D.I. 503 at 1. Novartis and Novartis Pharma AG ("Novartis Pharma") (together, the "Novartis entities" or "Plaintiffs") filed their Second Amended Complaint on July 23, 2013. D.I. 451. In response, Alexion timely filed its Answer and Counterclaims, which contain Alexion's Defenses, on August 5, 2013. D.I. 464.

II. **SUMMARY OF ARGUMENT**

1. In a bid to divert attention from its delay in filing the Second Amended Complaint and its evasive conduct in responding to Alexion's discovery requests, Novartis attempts to go on the offensive by accusing Alexion of making untimely amendments in response to the Novartis entities' Second Amended Complaint. Novartis sets forth baseless allegations that Alexion's Defenses were improper because they were not pled "in response to" the Second Amended Complaint. *See* D.I. 504, Novartis's Memorandum in Support of Motion to Strike ("Pl. Br.") at 7. But Novartis ignores the "settled law of this judicial district" that "in answering an amended complaint the defendant is free to answer not simply the amendments, but the new complaint, as if answering an original complaint." *See E.I. DuPont de Nemours & Co. v. Millennium Chemicals, Inc.*, No. C.A. 97-237-SLR, 1999 WL 615164, at *4 (D. Del. Aug. 2, 1999); *Standard Chlorine of Del., Inc. v. Sinibaldi*, Civ. A. No. 91-188-SLR, 1995 WL 562285,

---

[1] Alexion's Third Defense does not reference 35 U.S.C. § 132(a). *See* D.I. 464 at p. 7, ¶ 31. For that reason, Novartis's Motion should be denied with respect to Alexion's Third Defense. In the remainder of this opposition, Alexion will respond as if Novartis was moving to strike its Second Defense insofar as it concerns 35 U.S.C. § 132(a).

-1-

at *2 (D. Del. Aug. 24, 1995). Alexion's Defenses are therefore proper because it was not required to limit its answer to directly respond to Plaintiffs' amendments.

2. Novartis's assertion that in light of Plaintiffs' "ministerial" amendments, Alexion should not be allowed to respond by pleading its amended Defenses is similarly flawed. Novartis argues that because the Second Amended Complaint does not change the theory or scope of the case, Alexion's responsive pleadings cannot add new theories either. But Novartis's characterization of Plaintiffs' amendments as being purely ministerial is incorrect. Novartis admits that it "add[ed] supporting factual allegations regarding its willfulness claim [against Alexion]." Pl. Br. at 4, 7. By including new and expanded substantive allegations regarding its assertion of willful infringement against Alexion, Novartis has changed the scope of this case, permitting Alexion to make additional allegations.

3. Even if the Court finds that Alexion is required to seek leave to add its Defenses, modification of the scheduling order under Fed. R. Civ. P. 16(b) and leave to amend under Fed. R. Civ. P. 15(a) is warranted because good cause exists and Novartis will not be prejudiced by being required to address issues that have long been part of this litigation. Alexion's detailed discovery responses have given Novartis plenty of notice of Alexion's theories of equitable estoppel and invalidity under 35 U.S.C. § 132(a). And Novartis's own conduct shows that it knows that these two theories are part of this case. Apart from making vague allegations, Novartis fails to articulate any additional discovery it would need or prejudice it would suffer if Alexion's Defenses were to be allowed.

## III. STATEMENT OF THE FACTS

On January 26, 2011, Novartis filed a complaint accusing Alexion of infringing U.S. Patent No. 5,688,688 ("the '688 patent") by using the Lonza GS System to manufacture its humanized monoclonal antibody product, Soliris®. D.I. 1. In its Answer and Counterclaims,

Alexion raised as a defense and counterclaim that the '688 patent was "invalid for failure to comply" with the "requirements specified in Part II of Title 35 of the United States Code." D.I. 19 at p. 6, ¶ 34; p. 8, ¶ 14. Alexion also raised the equitable defense of laches. *Id.* at p. 6, ¶ 35. Novartis proceeded to file a First Amended Complaint (D.I. 27) and then a First Supplemental Complaint, which addressed certain post-filing developments and added Novartis Pharma as a plaintiff (D.I. 161). The First Supplemental Complaint included allegations by both Novartis and Novartis Pharma accusing Alexion of patent infringement. *Id.* at 1, 5-8. In Alexion's answers to those complaints, it again raised invalidity under Part II of Title 35 as a defense and counterclaim, as well as the equitable defense of laches. *See* D.I. 38 at p. 6, ¶¶ 35-36; pp. 8-9, ¶ 14; D.I. 169 at pp. 6-7, ¶¶ 37-38; pp. 9-10, ¶ 16. Novartis and Novartis Pharma both answered Alexion's counterclaims filed in response to the First Supplemental Complaint. D.I. 179.

As discovery progressed and Alexion learned more about Novartis's knowledge of the Lonza GS System, Alexion provided Novartis with further specificity concerning its defenses and counterclaims. For example, Alexion provided further details concerning its invalidity positions in its interrogatory responses, including its allegation of invalidity under 35 U.S.C. § 132(a), which precludes a patentee from adding new matter during prosecution of a patent, as being part of its invalidity defense and counterclaim. *See* Alexion's First Supplemental Objections and Responses to Plaintiff's Interrogatories No. 4, 11 and 12 (June 15, 2012) (attached as Exhibit 8 to Pl. Br. ("Pl. Br. Ex. 8")) at 13. Similarly, Alexion described its equitable estoppel defense in a detailed interrogatory response spanning 13 pages. *See* Alexion's Third Supplemental Objections and Responses to Plaintiff's Interrogatory No. 4 (Feb. 22, 2013) (attached as Exhibit 7 to Pl. Br. ("Pl. Br. Ex. 7")). Even before that interrogatory response, Novartis had sought discovery of documents related to Alexion's reliance on Novartis's inaction

in failing to bring suit against Alexion and others using the Lonza GS System—one of the elements of Alexion's equitable estoppel defense. *See* Ex. A, Dec. 7, 2012 Hearing Transcript ("Tr."), at 17:2-18:19.[2]

Many of the critical facts underlying Alexion's equitable defenses were only disclosed by Novartis very recently. For example, it was not until February 12, 2013, after the original fact discovery deadline, that Novartis acknowledged that it knew of the Lonza GS System as early as July 27, 1989. *See* Ex. B, Novartis's Supplemental Objections and Responses to Defendants' Fourth Set of Interrogatories (Nos. 14-15) (Feb. 12, 2013), at 3-6. Similarly, in June 2013, counsel for Novartis Pharma acknowledged that attorneys for "Novartis group entities" and "affiliates" met as part of the Intellectual Property Litigation Committee or the Group Litigation Review Committee to share information and develop a comprehensive legal strategy for Novartis entities. D.I. 439, June 13, 2013 Hearing Tr., at 17:19-19:21, 39:4-14 ("The IPLC and the GLRC, in fact, is the clearinghouse for the lawyers for the various affiliates to coordinate their legal strategies with respect to IP litigation."). That new information alone justifies the amendment.

During a meet and confer regarding a discovery dispute on December 19, 2012, five months after Plaintiffs jointly accused Alexion of patent infringement in the First Supplemental Complaint, they took the position, for the first time, that despite the allegations in that complaint, Novartis Pharma was not asserting any claims against Alexion. Ex. C, Email from D. Conca (May 6, 2013). In response, Alexion requested that Novartis Pharma immediately drop its claims against Alexion. *Id.* Novartis then delayed more than two months in proposing an

---

[2] "Ex. __" refers to exhibits to the Declaration of David M. Conca In Support of Alexion Pharmaceuticals, Inc.'s Answering Brief in Opposition to Novartis Vaccines and Diagnostics, Inc.'s Motion to Strike.

amended complaint; Alexion consented to the proposed amendments. Ex. D, Email from D. Conca (Feb. 22, 2013). Two more months passed, during which Alexion twice more consented to Plaintiffs' amendments, before, on April 24, 2013, more than two years after this case was filed, Plaintiffs sought leave to file a second amended complaint under Fed. R. Civ. P. 15(a). D.I. 417; Ex. E, Email from D. Conca (Apr. 11, 2013); Ex. F, Email from D. Conca (Apr. 24, 2013).

In addition to addressing several post-filing developments, the Second Amended Complaint contained, for the first time, additional allegations of willful infringement against Alexion and Biogen Idec Inc. ("Biogen"). D.I. 451. Plaintiffs chose to make those amendments after Biogen challenged the legal and factual sufficiency of Plaintiffs' claims for willful infringement. Pl. Br. at 1, 4. In response to Plaintiffs' Second Amended Complaint, Alexion again raised the same invalidity defenses and invalidity counterclaim as it had in its previous answers, while also adding a specific allegation of invalidity under 35 U.S.C. § 132(a). D.I. 464 at pp. 6-7, ¶ 30; p. 9; ¶ 14. Further, in its Answer, Alexion again raised the equitable defense of laches, while also adding an equitable estoppel defense. D.I. 464 at p. 7, ¶¶ 31-32. It is those defenses and counterclaim—equitable estoppel and invalidity under 35 U.S.C. § 132(a)—that Novartis now disputes.

## IV. THE RELEVANT LEGAL STANDARDS

### A. Motions to Strike

Under Fed. R. Civ. P. 12(f), the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "As a general matter, motions to strike under Rule 12(f) are disfavored." *Juniper Networks, Inc. v. Palo Alto Networks, Inc.*, 881 F. Supp. 2d 603, 605 (D. Del. 2012) (quotation and citation omitted). "When ruling on a motion to strike, the court must construe all facts in favor of the nonmoving party and deny the

motion if the defense is sufficient under law." *Id.* (quotation, citation, and modification omitted). "Further, a court should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." *Id.*

### B. Answering an Amended Complaint

"It has long been the rule in this district that in answering an amended complaint the defendant is free to answer not simply the amendments, but the new complaint, as if answering an original complaint." *E.g., Standard Chlorine of Del., Inc. v. Sinibaldi*, Civ. A. No. 91-188-SLR, 1995 WL 562285, at *2 (D. Del. Aug. 24, 1995); *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, Civ. A. No. 85-463 CMW, 1987 WL 7189, at *1 (D. Del. Feb. 5, 1987) ("An amended complaint supercedes the pre-existing complaint. [Defendant] is therefore obligated to respond to the amended complaint and should be able to respond as it sees fit."); *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*, 50 F.R.D. 415, 418-19 (D. Del. 1970) (Rule 15 "does not direct a response to the 'amendment,' as it might have, but to the 'amended pleading.'").

Accordingly, when a plaintiff files an amended complaint, the defendant has "a renewed right to file counterclaims" or "to raise new and previously unmentioned affirmative defenses." *See Satellite Fin. Planning Corp.*, 1987 WL 7189, at *1; *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 2000); *see also, e.g., E.I. DuPont de Nemours & Co. v. Millennium Chemicals, Inc.*, No. C.A. 97-237-SLR, 1999 WL 615164, at *4 (D. Del. Aug. 2, 1999) (holding that "[u]nder the settled law of this judicial district," defendant's compulsory counterclaims "were filed in a timely manner" when included for the first time in an answer to the second amended complaint). Such counterclaims and defenses are thus timely even if they could have been raised previously. *E.g., E.I. DuPont de Nemours*, 1999 WL 615164, at *4. "Courts in this district have reasoned that, because the amended pleading relates back to the date of the original pleading, the

amending pleader 'can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original pleading.'" *Id.* (quoting *Joseph Bancroft & Sons*, 50 F.R.D. at 419).

### C. Leave to Amend

"The Federal Rules of Civil Procedure require courts to 'freely give' leave to amend 'when justice so requires.'" *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, --- F.R.D. ---, 2013 WL 2650206, at *2 (D. Del. June 13, 2013) (quoting Fed. R. Civ. P. 15(a)(2)). "The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that 'a particular claim will be decided on the merits rather than on technicalities.'" *In re PMTS Liquidating Corp.*, 490 B.R. 174, 182 (D. Del. 2013) (citation omitted). While courts consider many factors in deciding a motion to amend, "prejudice to the non-moving party is the 'touchstone for the denial of an amendment.'" *E.g., Roquette Frères v. SPI Pharma, Inc.*, C.A. No. 06-540-GMS, 2009 WL 1444835, at *5 (D. Del. May 21, 2009).

Apart from the requirements of Rule 15, a motion to amend made after the pleading deadline must satisfy the good cause standard of Rule 16(b)(4). *Joao Bock Transaction*, 2013 WL 2650206, at *2. "'Good cause' exists when the [s]chedule cannot reasonably be met despite the diligence of the party seeking the extension." *ICU Med., Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009) (citing Fed. R. Civ. P. 16(b)(4), Advisory Committee's Notes (1983 amendments)). "In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party." *Roquette Freres*, 2009 WL 1444835, at *4.

## V. ARGUMENT

### A. Alexion's Defenses Are Proper In Response to Plaintiffs' Second Amended Complaint

#### 1. Alexion Was Free to Answer Plaintiffs' Second Amended Complaint as if Answering Plaintiffs' Original Complaint

Novartis contends that Alexion's Defenses are improper because Alexion has failed to "plead in response to" the "amendments made by Plaintiffs." Pl. Br. at 7-8 (quotation and citation omitted). But Novartis's assertion is contrary to the "settled law of this judicial district," under which Alexion was "free to answer not simply the amendments, but the new complaint, as if answering an original complaint." *E.I. DuPont de Nemours*, 1999 WL 615164, at *4; *Standard Chlorine*, 1995 WL 562285, at *2.[3] Under this Court's "well established rule," Alexion's equitable estoppel and 35 U.S.C. § 132(a) defenses and counterclaim are thus both timely and proper. *See, e.g., E.I. DuPont de Nemours*, 1999 WL 615164, at *4 ("[P]laintiff filed its second amended complaint . . . . In due course, defendant then filed its answer, which included the instant counterclaims. Under the settled law of this judicial district, defendant's counterclaims were filed in a timely manner."); *Standard Chlorine*, 1995 WL 562285, at *2 (concluding that new counterclaims filed in response to third amended complaint were timely).[4] On that basis alone, Novartis's Motion should be denied.

---

[3] Tellingly, Novartis's brief avoids any mention of this line of District of Delaware cases, let alone an attempt to explain why the Court should depart from this "well established rule" in deciding Novartis's Motion. *See, e.g., DuPont de Nemours*, 1999 WL 615164, at *4.

[4] The only District of Delaware case cited by Novartis on this issue, *Sirona Dental Sys., Inc. v. Dental Imaging Techs. Corp.*, is inapplicable because it concerned a "supplemental pleading" under Rule 15(d), not an amended pleading under Rule 15(a). *See Sirona Dental*, Civil Action No. 10-288-GMS, 2012 WL 3929949, at *3-4 (D. Del. Sept. 10, 2012). Supplemental pleadings concern "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added). By contrast, Plaintiffs filed a Second Amended Complaint pursuant to Fed. R. Civ. P 15(a) (D.I. 417, 449), and because the new allegations of willful infringement concern pre-filing activity, there is no basis for construing the Second Amended Complaint as a supplemental pleading. Moreover, the "in response to"

### 2. Alexion's Defenses Are Proper in Light of Plaintiffs' Substantive Amendments

Novartis contends that because the scope of the amendments in its Second Amended Complaint was only "ministerial," Alexion in its responsive pleading should not be able to make amendments that change the scope of its answer or the theory of the case. Pl. Br. at 7. But Plaintiffs' Second Amended Complaint has expanded the scope of this case by including additional allegations of willful infringement against Alexion and Biogen. D.I. 451, ¶¶ 20, 25. Although Novartis characterizes these amendments as "ministerial," they reflect substantive changes to the complaint that are the result of a strategic decision made by the Novartis entities after Biogen presented Federal Circuit authority challenging the legal and factual sufficiency of Plaintiffs' earlier complaints. *See* Pl. Br. at 1, 4, 7 & Pl. Br. Ex. 4 (citing *In re Seagate Tech. LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007)). In making these amendments, Novartis expanded the scope of the allegations to which Alexion needed to respond to reach as far back as 2006. By contrast, the cases that Novartis relies on involve truly ministerial or narrowing amendments.[5] Because Plaintiffs' amendments change the scope of the case, Alexion was free to plead its equitable estoppel and invalidity allegations under 35 U.S.C. § 132(a) in its Answer.[6]

---

language on which Novartis relies no longer appears in Fed. R. Civ. P. 15(a)(3), further undercutting the persuasiveness of the cases outside the District of Delaware that it cites.

[5] *See, e.g., Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011) (amendment "merely renamed the patent in suit post-reexamination"); *Elite Entm't, Inc. v. Khela Bros. Entm't*, 227 F.R.D. 444, 446 (E.D. Va. 2005) ("[F]ourth amended complaint removed most of the claims they had previously pled . . . .") (emphasis added); *E.E.O.C. v. Morgan Stanley & Co.*, 211 F.R.D. 225, 227 (S.D.N.Y. 2002) (amended complaint only "changed terms used to refer to claimants").

[6] Even the case law relied on by Novartis supports Alexion's position that it should be allowed to add its Defenses in response to Plaintiffs' substantive amendments. *See, e.g., GSI Grp., Inc. v. Sukup Mfg. Co.*, No. 05-3011, 2007 WL 757819, at *2 (C.D. Ill. Mar. 8, 2007) ("[I]f the amended complaint . . . changes the scope of the case, then the defendant is free to plead anew as if the prior pleadings did not occur. . . . Because GSI elected to expand the scope of the case, Sukup may expand the scope of its response.").

### B. Leave for Alexion to Plead its Defenses is Warranted

Even if the Court were to conclude that Alexion cannot raise its defenses and counterclaim as of right, leave to amend would be proper because Alexion was diligent in adding its Defenses and Novartis cannot show prejudice.

#### 1. There Has Been No Undue Delay

Novartis argues that Alexion "cannot show good cause" because it was "aware of all facts underlying each new defense and could have asserted each new defense from the very beginning of the case." Pl. Br. at 8. But Novartis's theory is misguided and lacks factual support. First, the overwhelming majority of the delay has been due to Novartis. On December 19, 2012, in order to avoid producing the MedImmune settlement agreement both Plaintiffs had recently executed concerning the '688 patent, the Novartis entities explained for the first time that, despite the allegations in the First Supplemental Complaint, Novartis Pharma was not actually suing Alexion. *See* Ex. E. During that call, Alexion requested that the Novartis entities address the pleading error. But it took more than two months for the Novartis entities to propose an amendment in February 2013, and only later did Novartis shoehorn the new willfulness allegations against Alexion into the proposed amended complaint in April 2013. *See* Ex. F; D.I. 417. After Alexion twice gave Novartis permission to file the proposed second amended complaint, Novartis went back and made additional edits, resulting in the final Second Amended Complaint being filed on July 23, 2013, almost eight months after Novartis admitted its pleading error. Exs. F-H; D.I. 451. After Novartis's eight-month delay, Alexion timely raised its defenses.

Second, a central part of Alexion's equitable estoppel defense is that in developing Soliris® using the Lonza GS System, Alexion was reasonably relying on the fact that Novartis knew about the widespread use of that system in the United States (by Alexion and others) but

never brought suit for patent infringement. Yet Novartis has routinely delayed disclosing information during discovery relevant to these same issues. It was not until February 12, 2013, several months after the original fact discovery deadline, that Novartis acknowledged that it knew of the Lonza GS System as early as July 27, 1989, more than 13 years before the date previously identified. *Compare* Ex. B at 5, *with id.* at 3-5 (showing previous interrogatory responses). This was even more surprising given that Novartis had conducted detailed evaluation and testing of the GS System in the years subsequent to 1989, REDACTED REDACTED

Novartis's delay in disclosing information relevant to Alexion's equitable estoppel defense—information that shows that Novartis declined to sue anyone using the Lonza GS System for years despite its intimate and longstanding knowledge of that system—supports a finding of good cause. *See, e.g.,* D.I. 449 at 5 ("When the delay is not of the plaintiff's making, the courts have found good cause.").

Similarly, it was not until June 13, 2013, that counsel for Novartis Pharma AG acknowledged on the record before Judge Thynge that attorneys for the various Novartis affiliates meet as part of a global committee to share information and coordinate legal strategies. *See* D.I. 439 at 17:19-19:21, 39:4-14. Because Alexion shared "significant information regarding the discovery, development, and manufacture" of Soliris® with Novartis affiliates in 2006, counsel's representation is newly discovered affirmative evidence that Novartis knew or should have known that Alexion used the allegedly infringing Lonza GS System. Pl. Br. Ex. 7 at

---

[7] Novartis claimed for the first time in 2011 that the '688 patent covers the GS System, despite Dr. Dino Dina's frank admission that "I know I didn't invent the GS expression system" and Novartis knowing for more than ten years that Lonza was marketing the GS System in the United States. *See* Ex. G, Dino Dina Deposition Tr., at 103:16-20.

79. These newly discovered facts, which show that Novartis likely knew of Alexion's allegedly infringing activity but decided not to bring suit, further support a finding of good cause. *See Pettinaro Enters., LLC v. Cont'l Cas. Co.*, C.A. No. 09-139-GMS, 2010 WL 4274658, at *3 (D. Del. Oct. 29, 2010) (finding good cause where "the specific nature" of the communications giving rise to the amendment was not discovered "until after the pleading deadline"). Indeed, in contrast to Novartis's delays in disclosing information relevant to Alexion's equitable defenses, Alexion has in good faith provided Novartis with detailed disclosures on a timely basis regarding its equitable estoppel defense, as it did in its 13-page interrogatory response. Pl. Br. Ex. 7.

Finally, Alexion's invalidity defense and counterclaim under 35 U.S.C. § 132(a) are not new, as Alexion has pled invalidity under "Part II of Title 35 of the United States Code" in each of its answers. D.I. 19; D.I. 38; D.I. 169; D.I. 464. Invalidity under 35 U.S.C. § 132(a) has thus been a part of this case since its inception. Alexion's Answer to the Second Amended Complaint, like its interrogatory response, simply provides further specificity as to the details of this defense. *See* D.I. 464 at pp. 6-7, ¶ 30; p.9, ¶ 14; Pl. Br. Ex. 8 at 13. Any amendment is therefore at most ministerial, and there is good cause for allowing it.

### 2. Novartis Will Suffer No Undue Prejudice from Alexion's Amendments

Novartis alleges that it would be prejudiced by Alexion's equitable estoppel defense because Novartis would be "deprived of the opportunity to take discovery relating to Alexion's alleged reliance and alleged material prejudice." Pl. Br. at 9-10. Indeed, Novartis has already sought discovery on Alexion's reliance on Novartis's decision to delay in bringing this suit. *See* Ex. A at 17:2-18:19; *cf.* Ex. I at 44:11-45:4 (counsel for Novartis discussing Alexion's reliance in the context of equitable estoppel).

Moreover, because equitable estoppel and laches are overlapping equitable defenses that both require a showing of prejudice,[8] Novartis has no basis to claim that it has been deprived of discovery on "alleged material prejudice." *See Calmar, Inc. v. Emson Research, Inc.*, 850 F. Supp. 861, 865 (C.D. Cal. 1994) (granting leave to amend to add equitable estoppel defense because "issues relating to Calmar's delay in bringing the instant action and Emson's resulting economic and evidentiary prejudice have long been presented by Emson's laches defense"). This is especially true here, where Novartis has already sought and received discovery on Alexion's "economic or evidentiary prejudice." *See, e.g.*, Ex. J, Novartis's First Notice of Deposition of Alexion Pursuant to Fed. R. Civ. P. 30(b)(6), at 8 (Topic No. 18); Ex. K, Novartis's Second Set of Interrogatories (Dec. 20, 2011); Ex. L, Alexion's Second Supplemental Response to Interrogatory No. 13 (Apr. 12, 2013), at 39-57. Indeed, the parties have served competing expert reports addressing Alexion's economic prejudice based on Novartis's long delay in asserting the '688 patent. *See, e.g.*, Ex. M, Expert Report of Ryan Sullivan, Ph.D., at 3-4. Novartis's own conduct thus makes clear that it has not and will not suffer any prejudice if Alexion's equitable estoppel defense is part of the case. *See, e.g., Roquette Freres*, 2009 WL 1444835, at *3 ("[T]he non-moving party 'must do more than merely claim prejudice; it must

---

[8] *See, e.g., McKesson Info. Solutions LLC v. Trizetto Grp, Inc.*, 426 F. Supp. 2d 203, 208-210 (D. Del. 2006) (outlining elements of equitable estoppel and laches). Given their overlap, judicial economy also favors leave to amend, as case law relied on by Novartis shows. *See, e.g., Nolan v. City of Yonkers*, No. 92 CIV. 6067 (KMW), 1996 WL 120685, at *5 (S.D.N.Y. Mar. 19, 1996) (granting leave to amend even though the request "was made more than two years after the counterclaims could have been asserted in the original answer . . . because plaintiffs assert no significant prejudice . . . [and] these counterclaims are so intimately connected to the claims made by defendants that judicial economy requires that they be tried at the same time").

show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely.'") (quotation omitted). [9]

As to Alexion's invalidity defense and counterclaim under 35 U.S.C. § 132(a), Novartis does not identify any prejudice it would suffer apart from a vague reference to "expend[ing] resources on discovery." Pl. Br. at 10. Being required to address a new issue is not enough to justify denial of leave to amend. *See Roquette Freres*, 2009 WL 1444835, at *5 ("Roquette's alleged prejudice is that it would have to address a new issue and rework its case, thereby incurring additional costs. Such concerns are not sufficient to show prejudice."). As explained above, Novartis has been on notice and has explicitly sought and received discovery from Alexion on the evidentiary and economic prejudice suffered by Alexion as a result of, and in reliance on, Novartis's failure to bring this patent suit many years ago when it knew the GS System was being used in the United States.

Because Novartis was on notice of Alexion's Defenses through its pleadings in this case and interrogatory responses and because Novartis has not identified any prejudice it would suffer as a result from their inclusion in this case, leave to amend is proper.

## VI. CONCLUSION

For the reasons set forth above, Alexion respectfully requests that the Court deny Novartis's Motion in its entirety or, in the alternative, grant Alexion's request for leave to amend.

---

[9] While Novartis now asserts that Alexion's "interrogatory response was insufficient to provide notice to Plaintiffs that Alexion planned to assert this defense at trial," that statement overlooks Novartis's own conduct throughout the course of this litigation, as outlined above, and disregards the breadth of disclosure provided in Alexion's 13 page interrogatory response. Pl. Br. at 10.

Respectfully submitted,

Dated: September 16, 2013

/s/ Brian E. Farnan
Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300

*Counsel for Alexion Pharmaceuticals, Inc.*

*Of Counsel:*

Gerald J. Flattmann, Jr.
David M. Conca
Paul Hastings LLP
Park Avenue Tower
75 E. 55th Street
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090