IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVARTIS VACCINES & DIAGNOSTICS, INC., and NOVARTIS PHARMA AG, | C.A. No. 11-84-SLR-MPT |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| BIOGEN IDEC, INC. and ALEXION PHARMACEUTICALS, INC., | **FILED UNDER SEAL** CONTAINS HIGHLY CONFIDENTIAL INFORMATION |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO NOVARTIS'S
CROSS-MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION AND IN
SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY**

Dated: September 26, 2013
*Of Counsel:*
Gerald J. Flattmann, Jr.
David M. Conca
Paul Hastings LLP
Park Avenue Tower
75 E. 55th Street
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Of Counsel:*
Donald R. Ware
Claire Laporte
Jeremy A. Younkin
Sarah S. Burg
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
(617) 832-1000
dware@foleyhoag.com
claporte@foleyhoag.com
jyounkin@foleyhoag.com

Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300

*Counsel for Alexion Pharmaceuticals, Inc.*

Collins J. Seitz, Jr. (Bar No. 2237)
Benjamin J. Schladweiler (Bar No. 4601)
SEITZ ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
cseitz@seitzross.com
bschladweiler@seitzross.com

*Counsel for Defendant Biogen Idec Inc.*

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................1

II.  ARGUMENT......................................................................................................1

    A.   The '688 Patent Is Invalid for Lack of Written Description ...................................1

        1.   There Are No Material Factual Disputes Precluding Summary
             Judgment of Invalidity for Lack of Written Description ...........................2

        2.   · Novartis Misapplies the Governing Legal Standards .................................2

        3.   The '688 Patent's Specification Does Not Support the Genus of
             Claimed Polypeptides. ...........................................................................7

        4.   The '688 Patent's Specification Does Not Support Claim 1's Broad
             Genus of "Non-Human Mammalian Host Cell[s]" ...............................11

        5.   Novartis's Legal Authorities Do Not Support Novartis's Position. .........12

    B.   The '688 Patent Is Indefinite ...........................................................................14

    C.   Novartis is Not Entitled to Summary Judgment of No Anticipation....................15

        1.   The Boshart Reference ........................................................................15

        2.   The Gorman '939 Patent and Dr. Gorman's Work..................................17

        3.   The Spacte & Mocarski References ......................................................20

        4.   Dr. Bebbington's References and Dr. Bebbington's Work Do Not
             Support Summary Judgment of No Anticipation ....................................24

III. Conclusion ......................................................................................................24

# TABLE OF AUTHORITIES

Page(s)

Cases

*In re Alonso,*
545 F.3d 1015 (Fed. Cir. 2008) ...................................................................6

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
314 F.3d 1313 (Fed. Cir. 2003) ................................................................12

*Ariad Pharms. Inc. v. Eli Lilly and Co.,*
598 F.3d 1336 (Fed. Cir. 2010) ...............................................3, 6, 11, 12

*Boston Sci. Corp. v. Johnson & Johnson,*
647 F.3d 1353 (Fed. Cir. 2011) ..................................................................5

*Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.,*
541 F.3d 1115 (Fed. Cir. 2008) ..........................................................1, 4, 5

*Centocor Ortho Biotech, Inc. v. Abbott Labs.,*
636 F.3d 1341 (Fed. Cir. 2011) ............................................................10, 13

*Enzo Biochem, Inc. v. Gen Probe., Inc.,*
323 F.3d 956 (Fed. Cir. 2002) ..............................................................13, 14

*Invitrogen Corp. v. Clontech Labs, Inc.,*
429 F.3d 1052 (Fed. Cir. 2005) ................................................................12

*Lockwood v. Am. Airlines,*
107 F.3d 1565 (Fed. Cir. 1997) ..................................................................5

*Microsoft Corp., v. i4i Ltd.,*
131 S. Ct. 2238 (2011) ................................................................................4

*Noelle v. Lederman,*
355 F.3d 1343 (Fed. Cir. 2004) ..................................................................8

*Novo Nordisk A/S v. Caraco Pharm. Labs. Ltd.,*
719 F.3d 1346 (Fed. Cir. 2013) ..................................................................3

*Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n,*
161 F.3d 696 (Fed. Cir. 1998) ..................................................................14

*Praxair, Inc. v. ATMI, Inc.,*
543 F.3d 1306 (Fed. Cir. 2008) ................................................................14

TABLE OF AUTHORITIES
(continued)

Page(s)

*Regents v. Eli Lilly,*
119 F.3d 1559 (Fed. Cir. 1997) .................................................................................3

*Turbocare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.,*
264 F.3d 1111 (Fed. Cir. 2001) .................................................................................2

*Univ. of Rochester v. G.D. Searle & Co.,*
358 F.3d 916 (Fed. Cir. 2004) ..................................................................................2

*Zimmer Tech., Inc. v. Howmedica Osteonics Corp.,*
476 F. Supp. 2d 1024 (N.D. Ind. 2007) ...........................................................15, 17

**Statutes**

35 U.S.C. 112...........................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 56(c)(1)...........................................................................................19

Fed. R. Civ. P. 56(c)(2).............................................................................................4

Fed. R. Evid. 802 ......................................................................................................4

Local Rule 7.1.2.......................................................................................................14

## I.     INTRODUCTION

The Court should grant Defendants' summary judgment motion that all asserted claims of the '688 patent are invalid for lack of written description. Defendants' motion set forth undisputed facts showing by clear and convincing evidence that the '688 patent specification is inadequate to support the breadth of the claims. Novartis's opposition is premised on erroneous legal standards and focuses on immaterial factual disputes.

The Court should deny Novartis's cross-motion for summary judgment of no anticipation because it relies on disputed facts that cannot be resolved without a trial.

The juxtaposition of the two motions reveals the incompatibility of Novartis's arguments. To diminish the impact of the prior art, Novartis argues that before it amended its disclosure in 1987, a person of ordinary skill in the art could not have predicted whether the claimed HCMV vectors would express *any* polypeptide in *any* cell type. D.I. 517 at 11 - 12. But when defending its disclosure, Novartis argues that the same skilled person, after reading the single example in the specification, would understand the claimed invention to improve expression of *all* polypeptides in *all* non-human mammalian cells. D.I. 517 at 8. These conflicting arguments are nowhere squared by Novartis, and indeed, cannot be.

## II.    ARGUMENT

### A.     The '688 Patent Is Invalid for Lack of Written Description

The Court should grant summary judgment because the narrow disclosure of the '688 patent does not support the enormous breadth of the claims—claims that, according to Novartis, cover even the expression of engineered, laboratory-generated chimeric polypeptides that Chiron's engineers could not and did not construct, including Defendants' Soliris® and Tysabri®. *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1124 (Fed. Cir. 2008)

1

(affirming summary judgment of invalidity for lack of written description); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 927 (Fed. Cir. 2004) (same); *Turbocare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1119 (Fed. Cir. 2001) (same).

### 1.   There Are No Material Factual Disputes Precluding Summary Judgment of Invalidity for Lack of Written Description

Despite the flurry of argument Novartis presents in its brief, the material facts are few and undisputed. The following facts establish that the '688 patent claims are invalid for inadequate written description:

- The claimed "vectors" and "isolated nucleic acid molecule" puport to cover *all* "polypeptides," "heterologous polypeptides," "mammalian polypeptides," and "heterologous mammalian virus polypeptides," including engineered, laboratory-generated polypeptides in every non-human mammalian cell.

- The support for this broad coverage is narrow: the specification's sole example is expression of HIV protein gp120 in plasmid pCMV6ARV120tpa. *See* D.I. 452, JA00074, at col. 27, l. 65-col. 28, l. 45.

- The named inventor's own publications show that the claimed vectors did not achieve "improved expression" with all polypeptides and do not work in all cells. Ex. 1, Chapman *et al.*, "Effect of intron A from human cytomegalovirus (Towne) immediate-early gene on heterologous expression in mammalian cells," Nucleic Acids Res. 19(14):3979-3986, 3984-85 (1991) ("Chapman Article"); Ex. 2, Mikkelsen *et al.*, "Expression of a Cytomegalovirus IE-1-Factor VIII cDNA Hybrid Gene in Transgenic Mice," Transgenic Research, 1(4):164-169, 165 - 166 (1992) (the "Mikkelsen Article").

Indeed, Novartis's own expert, Dr. Sodroski, admitted that not all polypeptides can be expressed in the claimed vectors and that one could only determine whether the claimed vector achieved "improved expression" for a given polypeptide through trial-and-error experimentation. Ex. 3, Sodroski Dep. Tr. at 32:11 – 17; 70:13 – 19; 135:14 – 24.

### 2.   Novartis Misapplies the Governing Legal Standards

Novartis's opposition is largely based on three erroneous legal arguments. First, it argues that the U.S. Patent and Trademark Office's ("PTO") decision to issue the patent is entitled to

deference. Second, it attempts to shore up the adequacy of its disclosure by arguing that because "both the genera of 'polypeptides' and 'non-human mammalian host cells['] were familiar to those of skill in the art when the '688 Patent application was filed," the written description requirement is somehow relaxed. D.I. 517 at pp. 22-23. Finally, Novartis argues that Barbara Chapman's publications, which demonstrate the inadequacy of the disclosure to support the breadth of the claims, should not be considered because they post-date the filing of the patent. *Id.* at pp. 35-36. These arguments do not withstand analysis.

####        a.    The fact that the PTO issued the patent does not mean that the written description is adequate

Novartis argues strenuously that the PTO's decision to grant the '688 patent is entitled to deference. D.I. 517 at pp. 17, 34. This argument is directly contradicted by controlling law. As the Federal Circuit recently explained:

> In [patent infringement cases] we do not review the PTO's decision. The initial determinations by the PTO in determining to grant the application are entitled to *no deference* .... Rather, we treat the issued patent as having a presumption of validity that must be overcome by clear and convincing evidence.

*Novo Nordisk A/S v. Caraco Pharm. Labs. Ltd.*, 719 F.3d 1346, 1357 (Fed. Cir. 2013) (emphasis added). Defendants recognize that the '688 patent is entitled to the presumption of validity. However, the undisputed evidence set forth above provides clear and convincing evidence sufficient to overcome the presumption.

Novartis's invocation of deference overlooks the fact that the PTO examines *every* patent for compliance with the written description requirement. 35 U.S.C. 112; Ex. 4, Manual of Patent Examining Procedure ("MPEP") § 2103 (8th ed. Rev. 9, Aug. 2012); Ex. 5, MPEP § 706.03 (5th ed. Rev. 7, Dec. 1987). The claims here fail, just as the issued claims failed in *Ariad Pharms. Inc. v. Eli Lilly and Co.*, 598 F.3d 1336 (Fed. Cir. 2010); *Regents v. Eli Lilly*, 119 F.3d

3

1559, 1568-69 (Fed. Cir. 1997); *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d

1115, 1124 (Fed. Cir. 2008); and the numerous other cases cited in Defendants' prior brief.  Nor

is there a higher bar when the PTO has considered the specific written description issue later

presented during infringement litigation.  As the Supreme Court has ruled, the standard for

proving invalidity is the same whether or not the evidence was reviewed by the Patent Office.

*Microsoft Corp., v. i4i Ltd.*, 131 S. Ct. 2238, 2250-51 (2011).

Novartis errs in arguing that the Court should defer to the Truett declaration, which was

submitted during reexamination of the '688 patent.  That declaration, by a paid Novartis

consultant (D.I. 453 at JA00928), is self-serving hearsay, submitted in an *ex parte* proceeding,

and thus should not be considered to prove the truth of its statements. Fed. R. Evid. 802; Fed. R.

Civ. P. 56(e)(2).  Novartis could have submitted an expert report in this case containing Dr.

Truett's opinions, but chose not to do so.

> **b.    Novartis errs in arguing that the written description requirement is relaxed because polypeptides and host cells were "well known"**

Pointing to a PTO written description guideline for a method claim with no apparent

applicability to the asserted claims here, Novartis argues that the claimed genera of polypeptides

and non-human mammalian host cells were "well-known" in the art, so the threshold for meeting

the written description requirement is relaxed.  D.I. 517 at pp. 22-25.  This argument is

misplaced for several reasons. First, Novartis cannot claim that *every polypeptide* and *every*

*mammalian host cell* was known to the skilled artisan in 1987.  Likewise, testimony that "the

first expression systems" existed in the 1970s and could express "polypeptides" is not evidence

that *pCMV6a* could express *every polypeptide* under the sun in *every non-human mammalian*

*host cell*.  D.I. 517 at p. 23.  Novartis cannot argue that the 1970s expression systems do not

anticipate or render obvious the claimed invention, while simultaneously asserting for Section 112 purposes that these prior expression systems show that any polypeptide can work in any expression system.

More fundamentally, Novartis ignores that the inadequacy of the written description relates to the expression of polypeptides in host cells *using the recited HCMV-based vectors*. The claims are drawn to a *combination* of HCMV DNA and polypeptide coding regions (and some are drawn to those comprised in a host cell), not to polypeptide coding regions alone or host cells alone. Thus, the subject matter of the claims is, according to Novartis's arguments, squarely within the category of new, less predictable technology. The appropriate question is whether a person of ordinary skill in the art would understand based on the '688 patent specification that the named inventors were in possession of the full scope of their claims—to HCMV vectors for the expression of virtually any polypeptide in any non-human mammalian host cell. Novartis has not met this standard.

Further, Novartis's argument fails to acknowledge that a patent's written description must describe not only the novel parts of an invention, but "*all [the invention's] claimed limitations*." *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) (emphasis added). As the Federal Circuit has explained, "[t]he test [for written description] is the same whether the claim element is essential or auxiliary to the invention." *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1365 (Fed. Cir. 2011); *see also Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008) ("[T]he applicant must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention, and demonstrate that by disclosure in the specification of the patent.") (internal

citations omitted). A single mammalian virus protein expressed in a single monkey cell does not meet that test for claims as broad as those asserted against Defendants.

### c.    Novartis's contention that post-filing evidence should not be considered is incorrect

Citing *Ariad*, Novartis asserts that post-1987 evidence is not "necessarily" relevant. D.I. 517 at pp. 35 – 36. The authority Novartis cites does not support this assertion and is, in fact, contradicted by precedent. In *In re Alonso*, 545 F.3d 1015 (Fed. Cir. 2008), the Federal Circuit affirmed the PTO's rejection of claims based on publications dated two and three years after the effective filing date of the rejected claims. *Id.* at 1017 fn. 1, 1019 – 20 fn. 4, 5. Here, as in *Alonso*, the inventors' own post-filing publications demonstrate the invalidity of the claims.[1]

There is nothing in the *Ariad* case that forbids the consideration of post-filing evidence. *Ariad* does not limit the written description inquiry to "the four corners of the specification"; it simply sets forth the uncontroversial requirement that the applicants show possession in the disclosure. 598 F.3d at 1351 ("the specification must ... show that the inventor actually invented the invention claimed").

In any event, the experiments underlying the Chapman Article, which show that the purported invention significantly *decreases* expression of tissue plasminogen activator ("t-PA"), were performed before December 1987 and thus do not post-date the filing of the patent application. Ex. 1 at pp. 3984-85. A post-doctoral fellow who performed some of the experiments commented, "it appears that the activity of this promoter [HCMV] is gene-specific."

---

[1] Novartis's equivocal assertion that post-filing evidence is not "necessarily" relevant evidently stems from its desire to rely on such evidence itself. Thus, it places heavy emphasis on the self-serving, post-filing Truett declaration. It cites its 1990 deposit, and it even tries to rely on evidence that Defendants' humanized antibodies are expressed in cell lines harboring HCMV sequences that Novartis erroneously asserts are covered by its patent.

Ex. 6, Vincent Lab Notebook, at NVD311960.  And even without the evidence in the Chapman

Article, the specification itself is inadequate to support the breadth of the claims.

        3.      **The '688 Patent's Specification Does Not Support the Genus of
Claimed Polypeptides**

           a.     **The testimony of Novartis's expert establishes a lack of written
description for the genus of polypeptides**

As Defendants explained in their opening brief, the spontaneous deposition testimony of

Novartis's expert, Dr. Sodroski, establishes that the written description requirement is not met.

D.I. 484 at pp. 14 – 15.[2]  Dr. Sodroski acknowledged that not all polypeptides would work with

the claimed invention; he agreed that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓  Ex. 3, Sodroski Dep. Tr. at 32:11-17, 70:13-19.  Dr. Sodroski

also conceded that one could only determine whether the claimed vector achieved "improved

expression" for a given polypeptide through trial and error.  *Id.* at 26:23-27:7 ("▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓").

Confronted with this evidence, Novartis attempts to create an issue of fact by reverting to

Dr. Sodroski's *reports* to rebut his actual *testimony*.  Novartis misleadingly argues that "Dr.

Sodroski testified" to statements in his reports, although the reports are not, in fact, testimony.

*See* D.I. 517 at pp. 41 – 42 (citing ¶¶ 201, 220, 221, 223, and 239 of Dr. Sodroski's Rebuttal

---

[2] Even named inventor Dr. Chapman found the '688 patent's written description inadequate. Ex.
7, Chapman Dep. Tr. at 104:7-24 ("[T]he description in the patent is very brief, far more brief
than would be normally put into a – even a manuscript, a published paper. It's – I think it's too
general a description to allow someone to recreate the plasmid as I created it.").

Expert Report as if they were Dr. Sodroski's testimony). Novartis cannot discredit its expert's sworn testimony with quotations from a report, not submitted under oath, that he drafted in (evidently heavy) collaboration with Novartis's counsel. Ex. 3, Sodroski Dep. Tr. 68:21 – 69:6.

Novartis also attempts to undo Dr. Sodroski's testimony by arguing that he attributed the lack of predictability to the inclusion of the intron, and that such testimony "says nothing about whether one of skill in the art would have understood the meaning of the challenged term 'polypeptide.'" D.I. 517 at p. 26. However, all of the asserted claims are to vectors or isolated DNA molecules that include the intron. According to Dr. Sodroski's testimony, the level of expression of a given polypeptide using a vector that includes the intron is unpredictable. Ex. 3, Sodroski Dep. Tr. at 32:11 – 17. Whether the unpredictability of expression of a particular polypeptide is due to the intron or some other factor is irrelevant. Novartis cannot overcome Dr. Sodroski's testimony that a person of ordinary skill in the art could not predict (1) the expression that would be achieved or, importantly, (2) that expression would be improved when a given polypeptide was used.

Novartis insists that the existence of "a few unidentified polypeptides that cannot be expressed by pCMV6a" does not invalidate the claims. D.I. 517 at p. 39. This attempt to minimize the impact of the unpredictability of the claimed genus cannot be reconciled with the law of written description. "[A] patentee of a biotechnological invention cannot necessarily claim a genus after only describing a limited number of species because there may be unpredictability in the results obtained from species other than those specifically enumerated." *Noelle v. Lederman*, 355 F.3d 1343, 1350 (Fed. Cir. 2004).

b.   **Novartis does not establish that there is any triable factual issue**

Novartis takes a conventional approach to defending against summary judgment: discussing reams of "evidence" in hopes of persuading the Court that there is a disputed fact somewhere. However, Novartis has not come forward with a single disputed issue of fact that is based on admissible evidence and is in any way material.

For example, Novartis attacks its own inventors' publication showing that the purported invention significantly *decreases* expression of a common polypeptide, t-PA. D.I. 517 at p. 38; Ex. 1, at 3984 – 85. Novartis chides its inventors (and, presumably, the peer reviewers of the publication) for publishing results based on a single experimental comparison, a criticism that can only be seen as ironic given its attempt to *establish* written description based on the single experimental comparison contained in the '688 specification. In any event, this attempt to discredit its own inventors does not establish a triable dispute. Novartis has never withdrawn the article, and there is no dispute about what the article says.

Novartis also argues that the Chapman Article reports some expression of t-PA, so the claimed vector is "operative" even with that protein. D.I. 517 at p. 38. The question is not whether the vector is "operative," however, but whether it achieves "improved expression." Experimental data showing that the claimed invention was significantly *worse* than the prior art vector is compelling evidence that the single experiment reported in the '688 patent is not sufficient to support the breadth of the claims.

To overcome the fact that its patent discloses only a single mammalian virus polypeptide (HIV protein gp120) in the claimed DNA constructs, Novartis enumerates the polypeptides mentioned in other parts of the specification and cites the Truett Declaration, which merely repeats this same enumeration. But Novartis has already informed this Court that the parts of the

specification, other than the two columns devoted to the single relevant example, "relate[] to inventions not claimed in the '688 Patent but claimed instead in [related applications] claiming diagnostic techniques and potential therapies for HIV and hemophilia," D.I. 80, Novartis's Nov. 18, 2011 Letter to Judge Thynge at 3.

Novartis even attempts to justify the breadth of the polypeptide claim element by suggesting that the '688 patent describes expression of antibodies using the claimed vector. D.I. 517 at pp. 9, 32. In fact, the '688 patent does not disclose the production of antibodies. Rather, the patent discusses the use of HIV polypeptides to prepare or detect antibodies. D.I. 452, at JA00061, 2:51 – 67; JA00062, 3:62 – 4:29; JA00065, 10:59 – 65; JA00067 at 13:62 – 14:4. *See Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1350 (Fed. Cir. 2011) (mere mention of term in specification was insufficient to show possession).

In a similar vein, Novartis places heavy reliance on the assertion that Lonza's proprietary GS Gene Expression System™ (the "GS System") can be used to express a variety of polypeptides. D.I. 517 at p.37. This argument erroneously conflates the GS System with the '688 patent. Because cell lines created using the GS System do not contain "vectors" or "isolated nucleic acid molecules," and because their elements are not arranged as required by the claims of the patent, they do not provide any evidence supporting the written description of the '688 patent. Further, evidence pertaining to yields from GS-based cell lines is entirely immaterial, as Dr. Bebbington, a lead inventor of the GS System, explained:

> [N]umerous elements contribute to the GS System's high yields, including: selection of highly expressing cell lines via the glutamine synthetase selection system, the hCMV enhancer/promoter region and complete 5' UTR, which includes additional DNA beyond the intron DNA claimed in the '688 patent, the double-gene arrangement in the vector for expression of antibody heavy and light chains, and the proprietary medium used for growth of the cells.

Ex. 8, Supplemental Expert Report of Christopher Bebbington, Ph.D., at ¶13.

4.      **The '688 Patent's Specification Does Not Support Claim 1's Broad Genus of "Non-Human Mammalian Host Cell[s]"**

Novartis spends much of its brief attempting to run away from the publications of named inventor Barbara Chapman. In addition to the Chapman Article, discussed in the previous section, Dr. Chapman also co-authored a publication that demonstrated that expression levels for the claimed vectors varied widely in different cell types, and sometimes did not work at all. *See* Ex. 2; D.I. 484 at pp. 16 – 17. In particular, the Mikkelsen Article demonstrated that the claimed vectors produced "no expression" in certain cell types (liver, parotid gland). Ex. 2 at 165 – 166. The article is fatal to Novartis's argument concerning the broad genus of "non-human mammalian host cells" in claim 1 and its dependent claims, but Novartis spends only one paragraph addressing it. D.I. 517, at pp. 39 – 40. In that paragraph, however, Novartis concedes the essential point: that the authors were unable to detect expression in certain cell types. *Id.* This finding confirmed the finding in the earlier Chapman Article that "no host/vector combination is likely to be universal for good glycoprotein expression . . . ." Ex. 1 at p. 3985.

Dr. Chapman's own publications confirm that the patent's account of a single successful experiment in a single cell type for transient expression is "not an adequate substitute for describing a variety of materials constituting the genus and showing that one has invented a genus and not just a species." *Ariad*, 598 F.3d at 1350.

Rather than confront the Mikkelsen Article directly, Novartis reverts to its invention story. It argues that, once its inventors "unexpectedly discovered" that their expression system worked in COS cells (specially engineered monkey cells), it was clear that "the system was not limited to native host [*i.e.,* human] cells." D.I. 517 at p. 12. Novartis then asserts that, based on this single experiment, "[i]t was then predictable that the expression system would work in other

11

non-human mammalian host cells." *Id.* Even if Novartis's account were accurate, Novartis has provided no factual basis whatsoever why the skilled artisan, surprised to find the vector working in COS cells, would expect it to work in *all* non-human mammalian host cells. Novartis cannot argue *both* that it was surprising to achieve polypeptide expression using HCMV in non-human cells, *and* that the skilled artisan would conclude from a single example of such expression that the claimed invention would work across *all* non-human mammalian cells, with *all* polypeptides. The Mikkelsen article demonstrates that such a conclusion would have been completely unwarranted.[3]

### 5.      Novartis's Legal Authorities Do Not Support Novartis's Position

Novartis's reliance on *Amgen* and *Invitrogen* is unavailing because both of those rulings were based on evidentiary showings demonstrating that the disclosures of the patents at issue in those cases were adequate. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1331 (Fed. Cir. 2003); *Invitrogen Corp. v. Clontech Labs, Inc.*, 429 F.3d 1052, 1071-72 (Fed. Cir. 2005). In *Amgen*, the Federal Circuit affirmed the district court's ruling sustaining the validity of challenged claims after a bench trial because the patentee's expert had testified that the disclosure could be predictably applied across the claimed genus. 314 F.3d at 1331. In *Invitrogen*, the Federal Circuit affirmed the district court's denial of summary judgment of lack of written description, ruling that "the undisputed evidence was entirely one sided" and showed that there was an established correlation between structure and function. 429 F.3d at 1071-72.

---

[3] Novartis is similarly inconsistent in its reliance on a prior art article by Foecking to support its written description argument. On the one hand, Novartis argues that Foecking is irrelevant to the obviousness of the claimed invention because the vectors under study in that article did not contain HCMV intron A. Ex. 9, Rebuttal Report of Joseph Sodroski, M.D. at ¶ 191. Given that Foecking does not include intron A, why would that publication teach a person of ordinary skill in the art that the claimed plasmids would work with a range of polypeptides and cell types?

Here, on the other hand, the undisputed evidence is entirely one-sided, but in the other direction. Dr. Sodroski testified that expression from the claimed vectors would have been unpredictable and would require trial and error. Ex. 3, Sodroski Dep. Tr. at 32:11-17; 70:13-19; 135:14 – 24. And, as discussed above, the inventors' own publications show that unpredictability.

Novartis also attempts to draw an analogy between Example 16 of the PTO Guidelines ("Example 16") and the asserted claims of the '688 patent (D.I. 517, at 24 – 26). However, Example 16 is not remotely like the claims of the '688 patent. The claim in Example 16 is a method claim, and the facts provided in the Example establish that the subject matter of the exemplary claim was already known to be cell-type unspecific at the time of the patent application. Like the unsuccessful patentee in *Centocor*, however, Novartis relies on an "unduly broad characterization of the [PTO] guidelines" to defend its broad claims. 636 F.3d at 1352 (rejecting claims as invalid for lack of written description despite analogy to example from PTO guidelines). Here, on the other hand, Dr. Sodroski, Novartis's expert, confirmed that the use of vectors to express in mammalian cells required "trial and error" because there is no universal expression system. Ex. 3, Sodroski Dep. Tr. at 135:14 – 24.[4]

Finally, Novartis argues that its deposit of the pCMV6ARV120tpa plasmid satisfies the written description requirement as articulated in *Enzo Biochem, Inc. v. Gen Probe., Inc.*, 323 F.3d 956 (Fed. Cir. 2002). In *Enzo*, the Federal Circuit held that a deposit "constitutes an adequate description *of the deposited material*." *Id.* at 965 (emphasis added). And indeed, the

---

[4] Far closer to the claims at issue is claim 1 of Example 15 of the PTO Guidelines, which claims a broad genus of polypeptides based on a single disclosed example. As the guidelines explain, the exemplary claim fails because the specification "does not describe any other species or subgenera within the genus sufficiently to show possession of those species or subgenera." Ex. 10, PTO Guidelines, at 54.

deposit would support a claim drawn to expressing the deposited material—gp120—in pCMV6a. However, the Federal Circuit has explained that deposits support *genus* claims such as the claims at issue here only if the deposits "are representative of the scope of the genus claims, *i.e.*, if they indicate that the patentee has invented species sufficient to constitute the genera." *Id.* at 967. Because the polypeptide in pCMV6ARV120tpa is the same single polypeptide described in the specification, the deposit adds nothing to the written description. Further, the specification states that the host cell used for the deposit was *E. coli*, which is a bacterial cell that does not belong to the claimed genus of "non-human mammalian host cell." D.I. 452 at JA00098. Thus, the deposit cannot rescue the claims from invalidity.

### B.     The '688 Patent Is Indefinite

Citing District of Delaware Local Rule 7.1.2, Novartis argues that the Court cannot consider Defendants' claim construction briefs in support of its indefiniteness argument. The dispute arises because Defendants cited their claim construction briefs in their motion for summary judgment of invalidity (D.I. 483), as permitted under Local Rule 7.1.2. *See* D.I. 483 ("The grounds for summary judgment of invalidity based on indefiniteness are set forth in Defendants' Claim Construction Brief and supporting papers, filed on August 9, 2013, and any Sur-Reply submissions.").

Defendants were correct in presenting their indefiniteness arguments during claim construction briefing. Had they failed to do so, Novartis would inevitably have argued that they waived the issue because it should have been argued during claim construction. This is because "[i]ndefiniteness *is* a matter of claim construction ...." *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008) (emphasis added); *accord, Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998) ("A determination of claim

indefiniteness is a legal conclusion that *is drawn from the court's performance of its duty as the construer of patent claims*.") (emphasis added).

Certainly there was no prejudice to Novartis or to the Court in Defendants' briefing the issue in connection with claim construction. Novartis responded fully to Defendants' arguments in its claim construction briefing, and so the issue has been properly joined before the Court.

### C.    Novartis is Not Entitled to Summary Judgment of No Anticipation

The Court should deny Novartis's cross-motion for summary judgment of no anticipation. As discussed below, the issues raised by Novartis's motion present triable factual issues that cannot be resolved at summary judgment.

Further, Novartis's motion seeks judgment concerning hypothetical defenses that neither defendant has asserted. For example, neither Defendant has argued that the work of Dr. Bebbington anticipates any of the claims. Thus, Novartis is not entitled to any judgment on this issue, which is not properly before the Court. *Zimmer Tech., Inc. v. Howmedica Osteonics Corp.*, 476 F. Supp. 2d 1024, 1037 (N.D. Ind. 2007). Defendants have also made obviousness arguments based on the references as to which Novartis seeks summary judgment of no anticipation. Novartis's motion does not seek any judgment of non-obviousness.

### 1.    The Boshart Reference

Novartis argues that the Boshart Reference fails to anticipate claim 17. In making the argument, Novartis discusses the opinions of *two* experts who have opined that the reference *does* anticipate claim 17 and argues that those experts are wrong. Thus, Novartis affirmatively argues that there is a dispute of fact. The Court need read no further to deny Novartis's motion.

Novartis argues that the Patent Office considered the Boshart reference during prosecution and, as with written description, suggests that this determination should be given

deference. As discussed above in section II.A.2.a, however, the PTO's consideration of the Boshart reference is not entitled to deference in this proceeding. Further, the examiner never applied the Boshart reference to claim 17, even though he used it to reject nearly identical claims as anticipated—after which Chiron (later Novartis) cancelled those similar claims. D.I. 452 at JA00472-473; JA00539; JA00553.

Novartis also asserts that Boshart shows only transcriptional enhancement, not expression. This argument is contradicted by Novartis's expert, who testified that the Boshart article *does* address expression:



Novartis's argument that a reference must actually report polypeptide expression to demonstrate the required "operabl[e] link[age]" also fails. Novartis apparently misreads the claim, which is drawn to DNA sequences, not to polypeptide expression. Claim 17 requires nothing more than two operably linked pieces of DNA: an "enhanced promoter" and a polypeptide coding sequence. There is no dispute that the Boshart reference discloses both of the recited pieces of DNA, and two experts have opined that it also shows the requisite operable linkage. Ex. 3, Sodroski Dep. Tr. 229:22-24, 230:19-231:6 ████████████

████████████████████████████████████████

██████████████████████████████; Ex. 11, Expert Report of Michael Levine, Ph.D. at ¶ 92 & Tab C at 32; Ex. 12, Expert Report of Edward Mocarski, Ph.D. ¶ 155. Thus, even without more, Novartis's motion fails.

Further, the regulatory sequences required by the claim (the "enhanced promoter"—which, whatever it means, includes the core promoter—and the intron) function in the transcription (DNA-to-RNA) step of expression, not during the translation (RNA-to-protein) step. The promoter and intron are not involved in translation because they are not part of the mRNA transcript at all. The promoter is a signal for the initiation of the transcript but is not part of it; the intron is spliced out before translation. Ex. 13, Expert Report of Joseph Sodroski, M.D. ¶¶ 31-32.

Thus, because there is compelling evidence that the Boshart reference does anticipate claim 17, Novartis's motion for summary judgment of no anticipation fails.

### 2.     The Gorman '939 Patent and Dr. Gorman's Work[5]

Factual disputes preclude granting summary judgment of no anticipation as to United States Patent No. 5,024,939 (the "Gorman '939 patent") and Dr. Gorman's prior invention as established in testimony and documents.

Novartis asserts that Gorman did not use the full intron that it argues is required by the claims of the patent in suit. However, the Gorman '939 patent discloses the pF8CIS plasmid vector, which contains a chimeric HCMV IE1 intron A that is functionally equivalent to the HCMV intron claimed in the '688 patent. Ex. 14, Expert Report of Dr. Cornelia Gorman at

---

[5] Biogen Idec has not made the contention that the Gorman '939 patent anticipates this claim. Therefore, even if Novartis prevails in its arguments on this issue, Biogen contends that Novartis is not entitled to any judgment against Biogen Idec on this issue. *Zimmer Tech.*, 476 F. Supp. 2d at 1037.

¶¶56, 78.  Both the wild-type first HCMV intron and Gorman's chimeric intron contain the same functional splice donor and acceptor sites – the essential portions of the intron.  *Id.*; Ex. 15, Gorman '939 patent at 20:60 – 65, 21:3 – 9.

Novartis quotes Dr. Levine and Dr. Gorman out of context to support the incorrect assertion that the percent of the HCMV IE1 intron by size that Gorman included in her chimeric intron has any functional significance.  D.I. 517 at pp. 49 – 50.  Dr. Levine's testimony refutes the assertion:

> Q:   And so Doctor Gorman used less than 10 percent of the hCMV intron that is proximate to the 3 prime end of the hCMV promoter in her constructs; correct?
>
> A:   10 percent by size, but not necessarily 10 percent by function, in my opinion

Ex. 16, Levine Dep. Tr., at 136:3 – 9 (internal objection omitted).  Indeed, United States Patent No. 6,893,840, a Chiron/Novartis patent, confirms that the same HCMV intron fragments used by Dr. Gorman enhance polypeptide expression levels.  Ex. 3, Sodroski Dep. Tr. at 76:4 – 81:17. Novartis has not sought any construction of the term "intron" that would exclude Gorman's chimeric intron.  At minimum, factual disputes about whether Gorman's intron is the claimed intron require jury resolution.

Moreover, even if the full-length wild-type intron is required, Gorman still anticipates the claims.  Gorman's patent incorporates the Stenberg reference (mistakenly referred to as the "Sternberg" reference).  Ex. 15, D.I. 452 at the Gorman '939 patent, at col. 16, l. 64 – col. 17, l.1; Ex. 17, Stenberg, "Structural Analysis of the Major Immediate Early Gene of Human Cytomegalovirus," *J. of Virol.*, 49(1):190 – 199 (1984).  Stenberg includes the full-length natural intron.  Ex. 17 at 197 – 198.

As illustrated below, the pF8CIS vector described in the '939 patent contains all of the elements claimed in the '688 patent. Ex. 15, at col 17, l.5 – col. 18:l.27; col.25, l.58 – 61; Figs. 1(a) – 1(c) (pF8CIS includes the hCMV enhancer/promoter, hybrid hCMV-Ig intron, Factor VIII gene, SV40 polyadenylation site and transcription site, and bacterial origin of replication);  See Ex. __, The Gorman Expert Report at ¶53 (The pF8CIS plasmid contains the following elements: "(1) SV40 origin of replication ("SV40 ori"); (2) SV40 polyadenylation signal ("SV40 polyA"); (3) a transcription regulatory region from human cytomegalovirus immediate early region HCMV IEI ("HCMV"), including the HCMV enhancer and promoter; (4) chimeric first HCMV intron; (5) gene for expression of Factor VIII recombinant protein; (6) selectable marker (ampicillin); and (7) bacterial origin of replication."); Ex. 18, The June 24, 2013 Gorman Dep. Tr. at 164:13 – 165:25 (affirming that the elements claimed in the '688 patent are also in pF8CIS).[6] The '939 patent discloses that the pF8CIS vector contains the SV40 origin of replication.  *See* Ex. 15, col. 13, l. 8 – 27 (the pF8CIS, a parent vector, was modified to create derivative vectors: pCIS4hGH "has the entire SV40 early promoter-origin-DHFR region *removed*," pCIS5hGH, "has the SV40 origin *remaining*" from the pF8CIS vector) (emphasis added).  Dr. Gorman's testimony confirms this:

> Q. When you say these plasmids include the SV40 origin, which plasmids are you referring to?
>
> A. So the plasmids that would have been included in this experiment would have included the SV40.
>
> ...

---

[6] Novartis states that "the Gorman '939 Patent does not describe any vector with an SV40 origin of replication." D.I. 517 at 16.  However, Novartis never explains the basis for this assertion, which is contradicted by its expert in any event. *See*, Ex. 3, Sodroski Dep. Tr. at 76:4 – 81:17. In any event, Novartis's conclusory and unsupported assertion on this point is not sufficient to meet its initial burden under Fed. R. Civ. P. 56(c)(1).

> Q. So can I infer from that then that the pF[8]cis vector also
>    contains the SV40 origin of replication?
>
> A. Yes you can.

Ex. 19, The Feb. 15, 2013 Gorman Dep. Tr. at 116:4 – 22 (internal objection omitted);

*See*, Ex. 18, The June 24, 2013 Gorman Dep. Tr. at 164:13 – 165:25; 214:7 - 25.

These facts are more than enough to deny summary judgment.

### 3.   The Spaete & Mocarski References[7]

There are two pieces of prior art that resulted from Drs. Spaete & Mocarski's 1985 work using HCMV to express protein. One is a 1985 prior art article, Spaete & Mocarski. Ex. 20. Spaete & Mocarski, "Regulation of Cytomegalovirus Gene Expression: α and β Promoters Are trans Activated by Viral Functions in Permissive Human Fibroblasts," *J. of Virol.*, 56(1):135 – 143, at 136 (1985) ("Spaete & Mocarski"). The other is the prior art vector pON239, which was on sale and actually sold in 1986, more than one year before the alleged priority date of the '688 patent. Ex. 21 ("the "Stanford License").

In early 1985, Dr. Richard Spaete, a post-doctoral student, prepared plasmid pON239 while working in Dr. Edward Mocarski's Stanford laboratory. Plasmid pON239 contained the following elements: (1) an upstream SV40 origin of replication, (2) an HCMV regulatory region, including the DNA from HCMV IE1 region and intron A, and (3) a downstream SV40 polyadenylation region, wherein the HCMV regulatory region was, according to Novartis's definition, interposed between the SV40 origin of replication and the SV40 polyadenylation region. Ex. 12, Expert Report of Prof. Edward Mocarski at ¶¶125, 202. Plasmid pON239 was

---

[7] Biogen Idec contends that the Spaete & Mocarski Article anticipates claim 4 under certain constructions of that claim but makes no other contention of anticipation based on Spaete & Mocarski. Alexion contends that the article and the pON239 vector anticipate all claims but claim 17.

constructed to include a gene called lacZ to drive expression of the beta-galactosidase

polypeptide via the HCMV regulatory region. *Id.*; Ex. 20, Spaete & Mocarski at 136 – 137.

> c.    There are factual disputes about whether the Spaete &
>        Mocarski art discloses "non-human mammalian" host cells

Novartis argues that the Spaete & Mocarski Art cannot anticipate claims 1, 2, 6 and 8

because there is no showing that they taught the use of non-human mammalian host cells. D.I.

517 at p. 51. However, Dr. Mocarski did not testify—as Novartis argues—that the Spaete &

Mocarski article was "limited to" human cells. Rather, he confirmed that it "used" human cells.

Moreover, Dr. Mocarski immediately explained:

> Q: Which are different from nonhuman mammalian host cells,
> correct?
>
> A: Human fibroblasts have a lot of things in common with other
> mammalian cells, so it's very hard to say human fibroblasts are not
> nonhuman mammalian cells because so much of their behavior is
> common down even to yeast.

Ex. 22, Mocarski Dep. Tr., at 138:6 – 16.

Second, the pON239 vector is not limited to expression in human cells. It is a vector.

The Stanford License, dated August 1, 1985 (prior to issuance of the '688 patent), which

provides a non-exclusive license to use the pON239 vector "for the development of products for

public use and benefit," does not require that pON239 be used only in human cells. Ex. 21 at 1.

Indeed, although the HCMV virus itself was believed to infect and replicate only in

human cells, it was also known that its immediate early regulatory sequences functioned in non-

human mammalian host cells, such as the mouse cells described in the prior art Boshart

reference, which information was specifically included as an Addendum of Proof in the Spaete &

Mocarski reference. Ex. 20, Spaete & Mocarski at 142. Because the jury could find that the

Spaete & Mocarski reference and pON239 are not strictly limited to non-human mammalian cells, summary judgment of no anticipation should be denied.

>        d.     There are factual disputes about whether the Spaete &
>               Mocarski art discloses "the SV40 polyadenylation region
>               present in pSV7d"

Novartis's argument that the Spaete & Mocarski art does not disclose "the SV40 polyadenylation sequence present in plasmid pSV7d" (1) demonstrates that Novartis is not entitled to summary judgment of no anticipation and (2) reinforces Defendants' argument that the claim term is indefinite. The Court should not credit Novartis's result-oriented treatment of claim 4.

Even after writing four briefs about claim 4, Novartis still has not offered any evidence of the specific polyadenylation sequence required by the claim, a step it must take to obtain summary judgment that the Spaete & Mocarski art does not anticipate claim 4. D.I. 454 at pp. 19 - 20; D.I. 477 at 14 – 15; D.I. 517 at 52; D.I. 533 at 26. Nor has Novartis ever identified the sequence, length, or termini of the relevant fragments within the biological deposits on which it relies to argue that the claim is definite. Because Novartis has never provided any sequence information other than two conflicting 240-base-pair sequences identified in its interrogatory answers—answers that Novartis now disavows in favor of a shorter sequence—Novartis is not entitled to summary judgment of no anticipation of claim 4.

Novartis's argument on this point does, however, illuminate the reasons why it now argues that a 163-base-pair sequence is "the SV40 polyadenylation sequence present in plasmid pSV7d." Novartis's initial expert report—seeking to demonstrate infringement—relied on a 45-base-pair "minimal" SV40 polyadenylation sequence as all that the claim required. Ex. 13, Expert Report of Joseph Sodroski, M.D. ¶¶ 175, 252, 286, 290. However, after Novartis realized

that its 45-base-pair sequence was present in the Spaete & Mocarski reference and pON239 art,

Novartis shifted to a 163-base-pair sequence at its expert's deposition by issuing a "correction"

to its expert's prior report (Ex. 23, Correction to Expert Report of Joseph Sodroski), with the

hope that the larger sequence was not contained in pON239.  Yet it developed no proof on this

point.  Novartis cannot, therefore demonstrate the sequence's absence as it must do to prevail on

summary judgment.

e.      There are factual disputes about whether the Spaete &
        Mocarski art discloses "mammalian" polypeptides

Novartis alleges that claims 13, 14 and 17 cannot be anticipated by the collective

disclosures in the Spaete & Mocarski art because the Spaete & Mocarski reference discloses only

expression of a bacterial polypeptide.  This is directly contrary to Novartis's argument in defense

of written description that the claimed HCMV elements work for many diverse polypeptides.

D.I. 517 at pp. 2, 8 ("It is predictable that if a given arrangement of regulatory elements works

for one polypeptide coding sequence, it will work for many other coding sequences.").  Indeed,

claim 4 includes "all" polypeptides, and portions of the '688 patent specification that Novartis

tries to rely upon to establish the breadth of the asserted claims include the same beta-

galactosidase gene discussed in the Spaete & Mocarski article.  See, D.I. 452, JA00080 col. 39,

ln. 1-8; 22-24; Ex. 20 at 136.  At minimum, factual disputes exist concerning whether the Spaete

& Mocarski article discloses expression of "mammalian" polypeptides, especially given

Novartis's written description arguments that the single '688 patent example discloses all

polypeptides.

Further, the Stanford license does not limit the licensee's use of the pON239 plasmid.

Ex. 21.  Because any reader of the Spaete & Mocarski reference and the pON239 licensees were

free to use pON239 to express "mammalian" or "heterologous mammalian virus" genes, and

23

because plasmid pON239 otherwise undisputedly contains all of the other claimed plasmid elements, the sale of pON239 anticipates the asserted claims of the '688 patent. These facts are more than sufficient to deny Novartis's motion for summary judgment of no anticipation.

> ### 4. Dr. Bebbington's References and Dr. Bebbington's Work Do Not Support Summary Judgment of No Anticipation

In arguing that Bebbington's work does not anticipate the '688 patent claims, Novartis takes on a straw man. D.I. 517 at p. 56. Neither defendant has contended that Dr. Bebbington's work to create Lonza's GS System, or the resulting patents, constitute prior art even though the work predated the purported invention date of the claims of the '688 patent. Rather, Defendants contend that, under Novartis's infringement theories, Dr. Bebbington's work constitutes a simultaneous invention, which is evidence of obviousness. Since neither defendant has argued anticipation based on Bebbington, the Court has no jurisdiction; any ruling on the point would be an advisory opinion. *Zimmer Tech.*, 476 F. Supp. 2d at 1037.

## III. CONCLUSION

Defendants' motion for summary judgment of invalidity for all asserted claims of the '688 patent should be granted, and Novartis's cross-motion of no anticipation of the '688 patent should be denied.

Respectfully submitted,

Dated: September 26, 2013

/s/ Brian E. Farnan
Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300

*Counsel for Alexion Pharmaceuticals, Inc.*

*Of Counsel:*

Gerald J. Flattmann, Jr.
David M. Conca
Paul Hastings LLP
Park Avenue Tower
75 E. 55th Street
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

SEITZ ROSS ARONSTAM & MORITZ LLP

*Of Counsel:*

/s/ Benjamin J. Schladweiler
Collins J. Seitz, Jr. (Bar No. 2237)
Benjamin J. Schladweiler (Bar No. 4601)

Donald R. Ware
Claire Laporte
Jeremy A. Younkin
Sarah S. Burg
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
dware@foleyhoag.com
claporte@foleyhoag.com
jyounkin@foleyhoag.com
sburg@foleyhoag.com

100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
cseitz@seitzross.com
bschladweiler@seitzross.com

*Counsel for Defendant Biogen Idec Inc.*

*Counsel for Defendant Biogen Idec Inc.*

25